# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MIODRAG KUKRIKA, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>   vs.<br><br>   Porsche Cars N.A., Inc.<br><br>        Defendant. | Case No:<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**DEMAND FOR JURY TRIAL** |

Rosemary M. Rivas
(*Pro hac vice* forthcoming)
David Stein
(*Pro hac vice* forthcoming)
Rosanne L. Mah
(*Pro hac vice* forthcoming)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
Ashley C. Brown
Georgia Bar No. 287373
CAPLAN COBB LLC
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com
abrown@caplancobb.com

*Attorneys for Plaintiff Miodrag Kukrika and the Putative Class*

Plaintiff Miodrag Kukrika, individually and on behalf of all others similarly situated, brings this class action lawsuit against Defendant Porsche Cars, N.A., Inc. ("Porsche" or "Defendant") and alleges as follows:

**INTRODUCTION**

1.      This case arises from Defendant's failure to disclose or adequately repair a dangerous and widespread defect in the 800V lithium-ion batteries equipped in Porsche's Taycan electric vehicles (EVs), model years 2020-2024.[1]

2.      The defect causes the batteries to lose power and worse, short circuit, thereby creating the risk of a fire (hereinafter, "Battery Defect"). The Battery Defect presents an unreasonable safety risk to drivers and passengers of the Class Vehicles and to people in residential homes and other structures where the vehicles are parked or near. Porsche has been aware of the Battery Defect for more than four years, at least since news outlets reported in February 2020 that a Porsche Taycan parked in a residential garage in Florida caught fire, resulting in significant damage to the home and a complete loss of the car. Porsche investigated the incident and since then,  has

---

[1] The models are: Taycan, Taycan 4S, Taycan Turbo S, Taycan 4 Cross Turismo, Taycan 4S Cross Turismo, Taycan S Cross Turismo, Taycan GTS, Taycan GTS Sport Turismo, Taycan Turbo S Cross Turismo, Taycan Turbo Cross Turismo, and Taycan Turbo.

learned about several other fires and about numerous owner complaints about the Battery Defect.

3.      Porsche began piecemeal recalls in December 2023 of certain Taycan vehicles, culminating in the most recent recall announced in September 2024 involving 27,527 Class Vehicles. Unfortunately, the recalls do not address the root cause of the defect, and Porsche has not agreed to affirmatively repair or replace all the defective batteries. Rather than identifying a repair or replacement of all the defective batteries, the recalls instruct Taycan owners to limit charging to 80% capacity, resulting in a reduction of the advertised range that Taycan owners paid for and requiring owners to charge the Class Vehicles more frequently.

4.      As a supposed final remedy, Porsche proposes to have dealers install a software update. But that update will not be available until sometime during the first quarter of 2025; Porsche has not provided an exact date. The software update will purportedly allow Porsche to monitor data from the Class Vehicles for anomalies in the battery, and if one is detected, the dashboard will display a warning message and limit the charging capacity of the battery until it can be inspected and repaired if necessary. Apart from the failure to address the serious risk of fire posed by the Battery Defect *now*, inspecting and repairing the batteries can take months, as Plaintiff's experience shows.

5.     But even if the software update can successfully discover all data anomalies and predict a problem—which is an open question that won't be answered, at best, for months—Porsche admits that the batteries may have problems in the future. Taycan owners who do not have the software update receive no warnings if the battery modules experience a short circuit, as customer complaints described herein show.

6.     Taycan owners trusted and relied on the Porsche brand and the company's representations and are left with a ticking time bomb. Porsche has left its customers with two terrible choices: an owner can decide to stop driving their Taycan for which they paid over $100,000, or they can continue driving the Taycan at the risk of losing power while driving on a highway or, even worse, experiencing a fire. To date, Porsche has been unable to develop, implement, or deliver an adequate repair to fully address the Battery Defect in all the Class Vehicles.

7.     Apart from failing to offer a concrete timeline for addressing the Battery Defect in all the Class Vehicles, Porsche has not offered to provide any compensation for the significant limitations placed on the Class Vehicles, and in fact, it is unclear if Porsche's purported remedy will fully resolve the Battery Defect. Plaintiff and Class members are left with Class Vehicles that cannot function as advertised; cannot be charged to the advertised range; require more frequent and less convenient charging times and locations; and that may spontaneously lose power

while driving, or worse, spontaneously catch fire, thereby posing significant risk of harm to owners or lessees and their passengers, to people and to property nearby, and to the Class Vehicles themselves.

8.      Due to Porsche's omissions and active concealment of material facts, Plaintiff and Class members have suffered out of pocket losses, including, but not limited to, overpayment for the Class Vehicles at the point of sale, and Plaintiff and Class members have been deprived of the benefit of their bargain. Additionally, the undisclosed Battery Defect has diminished the value of the Class Vehicles.

9.      Plaintiff Kukrika, individually and on behalf of all others similarly situated, brings claims against Porsche for fraudulent omission/concealment, negligent omission/concealment, and breach of implied warranty, and seeks all available monetary relief, including damages and all appropriate equitable relief.

**PARTIES**

10.      Plaintiff Miodrag Kukrika is a resident and citizen of Pennsylvania. Plaintiff Kukrika bought a new 2020 Taycan 4S on June 26, 2020, for approximately $120,000 from Autohaus Lancaster, an authorized Porsche dealership.

11.      Defendant Porsche Cars N.A., Inc. is a citizen of, and incorporated in, Delaware and maintains its headquarters and principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

12.    The amount in controversy in this matter exceeds $5,000,000, as each member of the proposed Class of thousands may be entitled to thousands of dollars in damages, exclusive of interest and costs.  Plaintiff and Porsche are citizens of different states.  Further, Plaintiff identifies a national class, which will result in at least one Class member belonging to a different state.  Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

13.    Porsche is subject to personal jurisdiction in this Court because it is headquartered here, and because it engages in substantial, continuous, systematic, and non-isolated business activity within the state of Georgia.

14.    Venue is proper in this District under 28 U.S.C. § 1391 because Porsche is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiff's claims emanated from this District.

## FACTUAL ALLEGATIONS

### A.    Background

15.    Porsche markets and sells the Taycan, its first fully electric sports car. The Taycan is available in various models: Taycan, Taycan 4, Taycan 4S, Taycan GT, Taycan GTS, Taycan Turbo, and Taycan Turbo S.

16.    The Taycan was originally announced as a concept car—Mission E—in 2015. Between September 2019 and September 2024, Porsche sold a total of 32,198 Taycan vehicles in the United States. This includes 130 vehicles sold in 2019[2]; 4,414 sold in 2020[3]; 9,419 sold in 2021[4]; 7,271 sold in 2022[5]; 7,570 sold in 2023[6]; and 3,394 sold in 2024 through October.[7]

17.    Porsche marketed its first all-electric vehicle as providing "characteristic Porsche performance and connectivity with everyday usability."[8] According to Michael Steiner, Member of the Executive Board of Porsche AG— Research and Development: "We promised a true Porsche for the age of electric

---

[2] *See* https://newsroom.porsche.com/en_US/2021/company/porsche-cars-north-america-retail-sales-fourth-quarter-year-end-2020-23328.html?utm_source (last visited Nov. 25, 2024).

[3] *See id.*

[4] *See* https://newsroom.porsche.com/en_US/2023/company/porsche-cars-north-america-retail-sales-fourth-quarter-year-end-2022-30900.html?utm_source (last visited Nov. 25, 2024).

[5] *See id.*

[6] *See* https://newsroom.porsche.com/en_US/2024/company/porsche-reports-US-retail-sales-for-2023.html?utm_source (last visited Nov. 25, 2024).

[7] *See* https://newsroom.porsche.com/en_US/2024/company/Porsche-Q3-2024-US-retail-sales-37478.html?utm_source (last visited Nov. 25, 2024).

[8] *See World Premier of the Porsche Taycan,* available at https://newsroom.porsche.com/en_US/products/world-premiere-porsche-taycan-sports-car-sustainable-19176.html (last visited Nov. 27, 2024).

mobility – a fascinating sports car that not only excites in terms of its technology and driving dynamics, but also sparks a passion in people all over the world, just like its legendary predecessors have done. Now we are delivering on this promise."

18.     Porsche advertised the Taycan as the first production vehicle with a battery architecture of 800 volts instead of the typical 400 volts for electric vehicles. Higher battery voltage means greater energy and charging power. The Taycan's 800-volt battery was designed to offer drivers the advantage of recharging the battery using direct current from the high-power charging network for a range of 100 kilometers in just over five minutes.

19.     According to Porsche: "The charging time for five to 80 percent SoC (state of charge) is 22.5 minutes for charging under ideal conditions, and the maximum charging power (peak) is 270 kW. The overall capacity of the Performance Battery Plus is 93.4 kWh. Taycan drivers can comfortably charge their cars with up to eleven kW of alternating current (AC) at home."[9]

20.     Porsche advertised that in "just five minutes, the [Taycan] can be charged to enable a range of up to 100km (WLTP) under optimum conditions and is always ready for whatever its driver has planned throughout the day: driving."[10]

---

[9] *See id.*

21.    According to Porsche: "As well as design and performance, the focus is on comfort and range. If required, the car can plan an efficient route, and make long-distance journeys more comfortable. Speed charging options reduce downtime – you can charge your car on the road to achieve a range of up to 100 km in just five minutes (WLTP) under optimum conditions, using the 800-volt architecture."[11]

22.    Porsche also represented that the "key to the Taycan is its powerful Performance Battery based on the latest lithium-ion-technology—both energetic and static."[12] Porsche integrated the Performance Battery flush with the underbody, with the entire vehicle built around it.[13]

23.    The Performance Battery consists of pouch cells, "chemically optimized for maximum performance with a long range: 33 modules with a total

---

[10] *See The New Taycan, Soul Electrified,* available at https://www.auto-brochures.com/makes/Porsche/Taycan/Porsche_int%20Taycan_2020-2.pdf (last visited Nov. 25, 2024).

[11] *Id.*

[12] *See id.*

[13] *See id.*

of 396 cells are available in the large version (Performance Battery Plus) and 28

models with a total of 336 cells in the more compact variant[.]"[14]

24.    "The effect" of basing the Performance Battery on 800-volt

technology instead of the standard 400 volts, according to Porsche, was "improved

charging and drive performance with small cable cross-sections, which has a

positive impact on overall weight. The cooling systems ensure that the drive is

optimally supplied with energy in any situation. And an extremely robust battery

frame ensures maximum safety in the event of an accident."[15] Porsche also touted

that this "new battery technology" at the heart of the Taycan has "many

advantages for you and your Taycan: high performance combined with long

range."[16]

25.    Porsche represented the first Taycan models as having the following

ranges:

| MODEL | RANGE (WLTP)(km/miles) | Range (long distance) (km) |
|---|---|---|
| Taycan Turbo S Performance Battery+ | 388-412 (or 241-256 miles) | 340 (or 211 miles) |
| Taycan Turbo Performance Battery+ | 381-450 (or 237-280 miles) | 370 (or 230 miles) |

---

[14] *See id.*

[15] *Id.*

[16] *See id.*

| | | |
|---|---|---|
| Taycan 4S Performance Battery+ | 386-463 (or 240-288 miles) | 365 (or 227 miles) |
| Taycan 4S Performance Battery | 333-407 (or 207-253 miles) | 320 (or 204 miles) |

26.    Porsche represented additional Taycan models as having the following ranges:

| MODEL | Combined Range (WLTP)(km/miles) | Urban Range (WLTP)(km/miles) |
|---|---|---|
| Taycan (Base) Performance Battery | 371-444 km (or 231-276 miles) | 440-523 km (or 273-325 miles) |
| Taycan (Base) Performance Battery+ | 431-505 km (or 268-314 miles) | 500-568 km (or 311-353 miles) |
| Taycan GTS Performance Battery+ | 439-504 km (or 273-313 miles) | 539-625 km (or 335-388 miles) |
| GTS Sport Turismo Performance Battery+ | 424-490 km (or 263-304 miles) | 524-616 km (or 326-383 miles) |

### B.    The Battery Defect

27.    In an EV, the electric battery is the most important component because it stores the chemical energy and converts it to electricity to power the motor and propel the car. The battery also powers the vehicle's electrical systems when it is not in use, such as the central locking system, the alarm, and other security features. The battery also powers the vehicle's onboard computer and diagnostic systems.

28.    The amount of electrical energy a battery can store is referred to as capacity, which is measured in kilowatt-hours (kWh). The battery's design

influences how fast it can be recharged, and its size and capacity impacts how far the car can travel on a single charge (called "range").

29.    Most batteries in electric vehicles are lithium-ion, which allows for higher energy density, meaning that the lithium-ion battery can store a lot of energy in a small mass. Lithium-ion batteries also have long cycle life, meaning the battery can perform through numerous charge and discharge cycles before it no longer holds a charge.

30.    Lithium-ion    batteries,    however,    have    disadvantages.    EV manufacturers are aware that lithium-ion batteries have a long history of fire issues.[17] Because they can store significant amounts of energy, they can overheat, which can result in a fire or explosion. This is called thermal runaway: when the battery's temperature rapidly and uncontrollably rises, leading to a fire. Overheating can result from short circuiting in a battery cell within the battery's module. External short circuiting occurs when there is unintended direct contact between the positive and negative terminals, thereby allowing energy to flow unimpeded, while internal short circuiting can occur within a single cell due to a

---

[17] *See How Lithium Ion Batteries in EVs Catch Fire*, https://adreesh-ghoshal.medium.com/how-lithium-ion-batteries-in-evs-catch-fire-9d166c5b3af1#:~:text=Batteries%20Age&text=Similarly%2C%20at%20high%20speeds%2C%20discharge,will%20result%20in%20a%20fire (last visited Nov. 25, 2024).

manufacturing defect. The batteries in the Class Vehicles are particularly prone to this problem because they are built on an 800-volt technology versus the standard 400-volts.

31.    The Battery Defect in the Class Vehicles causes a short circuit in the battery module, which increases the risk of a fire, or thermal event.

**C.    Consumer Complaints Reveal the Magnitude of the Battery Defect.**

32.    Below are just a few examples of the numerous complaints Class Vehicle owners and lessees have lodged with the National Highway Transportation Safety Administration ("NHTSA") regarding the Battery Defect:

- 2020 Porsche Taycan: My complaint is that the car will not move. I get in the car to drive and the car displays the following message, "Electrical System Error. Stop vehicle in a safe place." This has happened on numerous occasions (at least 7) since I received the car on February 10, 2021. Mind you I work from home so I don't drive it but once a week. I am quite fortunate that thus far it has only happened in my garage. I took the car to the local Porsche dealership for a software update but that was not the solution. It occurred again after the update. I thought maybe it had something to do with the car charger because it usually occurred a couple days after charging the

car but I haven't charged it in over 2 weeks. (NHTSA ID Number: 11419735, Date Complaint Filed: 6/5/2021).

- <u>2020 Porsche Taycan</u>: Conditions were clear and dry, with an ambient temperature of approximately 86 degrees F. Time of day was approximately 11:41am, Pacific. I was entering the 73 South onramp from Newport Coast Dr. (Newport Beach, CA 92657), somewhere between 60-70mph in Sport Plus mode, under heavy acceleration (but not full throttle). With no other symptoms or indications, the vehicle suddenly lost motive power and presented the error message "Electrical System Error Park Vehicle in Safe Place." At that point, the throttle became completely unresponsive and the AC compressor shut off, though other vehicle systems appeared to work normally. I was able to pull over to the shoulder safely, however sudden and complete loss of motive power is very clearly a safety risk when on a highway. In this case, as in the first time this happened, I shut the vehicle off and attempted to restart several times immediately following the initial error message, but the vehicle would not restart. I let the vehicle sit for approximately 10-15 minutes with the power off. At that point, the vehicle was able to be restarted and driven. This is the 3rd time I've received such an error and the 3rd time I've had

the vehicle brought in for service for the same issue since August 2nd. Porsche Cars North America is apparently aware of the issue and has updated my vehicle software and replaced a voltage converter approximately one month ago. Unfortunately, the vehicle seems to still be exhibiting the problem. (NHTSA ID Number: 11433960, Date Complaint Filed: 9/21/2021).

- 2020 Porsche Taycan: While driving the car suddenly lost power and displayed "electrical malfunction" please park in safe place. I was powerless and stranded in the middle of a 3 lane road. Car was towed to Porsche and they have had the car for 2 days- with no solution in site. (NHTSA ID Number: 11435775, Date Complaint Filed: 10/6/2021).

- 2020 Porsche Taycan: I got an "Electrical System Error. Park vehicle in a safe place" while I was on the freeway. I had to exit the freeway and shut down the vehicle and the error went away. I am hesitant to drive the vehicle, I am in the process of having the vehicle flat bedded to my dealer. (NHTSA ID Number: 11462128, Date Complaint Filed: 4/5/2022).

- 2020 Porsche Taycan: While driving normally on a highway, the car suddenly reported **"Electrical System Error, Stop vehicle in a safe**

**place"**, which is followed by a complete loss of power, even pressed on acceleration pedal. I immediately pulled over to the side of the highway, the car slowed down quickly and stopped. The car was unable to restart ever since. After 1-2 hours, the vehicle's power was completely lost. (NHTSA ID Number: 11418935, Date Complaint Filed: 5/27/2021).

- 2020 Porsche Taycan: Car displayed the following message: Electrical system error Park vehicle in a safe place. (NHTSA ID Number: 11497123, Date Complaint Filed: 12/12/2022).

- 2020 Porsche Taycan: I was driving in the fast/lane of the freeway, and suddenly the car flashed red "Electrical System Error" "Park Vehicle in Safe Place". The car immediately started to decelerate on its own and I didn't have time to go over to the right so had to move into the left shoulder of the freeway. I was stuck in the middle of the freeway, with cars driving fast coming around a bend of the freeway behind me having to swerve out of the way. Cops finally came to give me cover from behind.  Dealership still trying to figure out what the issue is. (NHTSA ID Number: 11509850, Date Complaint Filed: 3/2/2023).

- <u>2020 Porsche Taycan</u>: I discharged the battery to 7% then recharged to 100% using my home charger. When I got into the car, I had an error message stating: 'electrical system error park vehicle in a safe place'. The message disappeared later that day and I was able to drive the car to the dealer. (NHTSA ID Number: 11586725, Date Complaint Filed: 5/3/2024).

- <u>2021 Porsche Taycan</u>: This has happened more than once now. I got in the car and as soon as it attempted to start up, I received the following error: "ELECTRICAL SYSTEM ERROR" I was not able to put the car in R or D. There was no other option to start the car. My car is 2 weeks old with less than 750 miles. Porsche has experienced a lot of these problems over the last 12+ months, yet this issue has not been resolved or acknowledged by Porsche. I am afraid for my safety because if this happens on the road or in traffic, there will be no way of moving this car out of the way. (NHTSA ID Number: 11422463, Date Complaint Filed: 6/26/2021).

- <u>2021 Porsche Taycan</u>: WHILE DRIVING ON A HIGHWAY AT ABOUT 60 MPH, THE A **WARNING MESSAGE APPEARED STATING "ELECTRICAL SYSTEM ERROR / PARK VEHICLE IN A SAFE PLACE."** FORTUNATELY WAS ABLE

16

TO MANEUVER VEHICLE TO THE SHOULDER BEFORE LOSING RESPONSIVENESS. VEHICLE THEN WENT INTO PARK STATUS WITH NO ABILITY TO DRIVE. THEN RECEIVED MESSAGE THAT 12V BATTERY IS LOW. VERY UNSAFE BECAUSE VEHICLE SUDDENLY LOST POWER IN A HIGH-SPEED DRIVING SITUATION. (NHTSA ID Number: 11404336, Date Complaint Filed: 3/22/2021).

- 2021 Porsche Taycan: The car has 130 miles, right at the dealer parking lot, as I was about to set out a message appeared "electric system error" I was not able to drive further. If I had been on a freeway this would have been bad. (NHTSA ID Number: 11427688, Date Complaint Filed: 8/4/2021).

- 2021 Porsche Taycan: While driving my Porsche Taycan 2021 (5000 miles) Nov. 4th, 2022, at highway speeds on I-15 to Vegas, the instrument cluster started flashing "Electric System Error" and instructed me to park in safe place immediately and call Roadside Assistance. I had to park on the hard shoulder and wait for a tow truck. It was scary as there were big rigs passing my every 10-20 seconds. Car was towed to the Porsche dealer in Vegas. Upon inspection it was found that the "High Voltage Converter" had

malfunctioned and had to be replaced. This is very concerning that a critical EV component can fail in new car, which had done just over 5000 miles. Dealer replaced the component and now the vehicle is running fine but I am very skeptical to take the car out on long drives. (NHTSA ID Number: 11496955, Date Complaint Filed: 12/11/2022).

- 2021 Porsche Taycan: The contact owns a 2021 Porsche Taycan. The contact stated that while driving 20 MPH, the vehicle began to shudder and then stalled as the "electrical system error, park vehicle in a safe place" warning message illuminated on the instrument panel. The vehicle failed again soon after restart. The contact was able to drive the vehicle to his home. The contact then called the local dealer and the vehicle was towed to the dealer. The next day, the contact received notification of NHTSA Campaign Number: 21V486000 (Engine and Engine Cooling, Electrical System) which was linked to the failure. Despite several attempts to repair the vehicle under the recall, the vehicle was not repaired. The vehicle remained in the dealer possession. The contact was recently informed by the dealer that a German engineer would be sent their location to repair the vehicle. The manufacturer was not notified of the failure.

The vehicle was not repaired. The failure mileage was 1,234. (NHTSA ID Number: 11429897, Date Complaint Filed: 8/20/2021).

- 2021 Porsche Taycan: Got into the car like every morning but car displayed a warning "Electrical System Error, Park vehicle in safe place" Car would not start (NHTSA ID Number: 11431568, Date Complaint Filed: 9/3/2021).

- 2022 Porsche Taycan: I received a red error stating that there was an electrical system error and I couldn't operate my vehicle on Oct 18 when the vehicle was parked at home. I had to tow the vehicle to the dealer and when they inspected it, they couldn't find anything wrong with it. I brought the vehicle back home and then less than a month later on November 7 I got the same error when the vehicle was parked at home. I had to tow the vehicle again to the dealer. And at this time they told me that there is an issue with the high voltage battery. They have not given me a loaner, and I am without a vehicle. I do not know when the issue will be resolved. (NHTSA ID Number: 11559618, Date Complaint Filed: 12/11/2023).

- 2022 Porsche Taycan: While charging was in progress using Porsche's app at a charging station of Electrify America, the charging process suddenly stopped, when I switched from the app to an email

app. And since the charging station displayed "Please unplug", I was unplugging a charging cable from a Taycan's charging port, then there was an explosion at the port with an ear-splitting bang and a large spark. The car dashboard then displayed "Electrical system error" and was totally unmovable, so it was towed to a dealer on 6/18/2022. The dealer contacted the manufacturer, but the car is still not repaired even though 40+ days have passed, which is unreasonable. I found the below article and suspect whether it's related with the "inexpensive onboard charger":   - An excerpt from: https://www.teslarati.com/porsche-whistleblower-taycan-battery-charger-fires-coverup/    "Porsche uses an inexpensive onboard charger that does not control the process well, the whistleblower explained to me in detail. Fires have occurred in the Taycan battery, the source explained, due to the problem described." (NHTSA ID Number: 11476601, Date Complaint Filed: 7/29/2022).

- 2022 Porsche Taycan: I was driving at high speed on the freeway when, suddenly and without warning, the vehicle lost all power. A message reading "Electrical System Error Park Vehicle in a Safe Place". I was able to glide across five lanes in rush hour traffic to the

breakdown lane. (NHTSA ID Number: 11507680, Date Complaint Filed: 2/16/2023).

- <u>2024 Porsche Taycan</u>: Car lost power and two messages appeared "Electrical system error Park vehicle in a safe place" "Engine control error Park vehicle in a safe place." (NHTSA ID Number: 11584315, Date Complaint Filed: 4/21/2024).

33.    The NHTSA complaints are also viewable online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls.

34.    Class Vehicle owners have also posted complaints about the Battery Defect online:

- <u>2020 Porsche Taycan</u>: "So my 2020 black-on-black Taycan 4S is indeed a precision driving instrument, but its electrical/software systems are dismal failures. It is not unusual that manufacturers that classically create marvelous hardware are unable to achieve the same with software. This is clearly a problem with Porsche AG. At 41K miles, my car is on its 3rd high voltage heater (each repair took 2 weeks apiece) and recently upon returning from vacation, I received the warning message "Electrical system error...Park vehicle in a safe place." Tried a number of solutions proposed by those with similar experiences in this forum, but no luck. The car sat paralyzed in in my

garage with the battery charged to 85%. After my dealership's diligent week of searching and data accumulation, the Porsche people in Germany asked that the main battery be returned, and a new one will be sent in exchange. Wait time? Two months. So added up, that's 3 months without my car and paying the usual hefty lease payments when wants a Porsche. Yes they offered a Macan loaner, but I turned it down…"

- 2020 Porsche Taycan: I too got the "red circle of death" error on my 2020 4S. Towed it to dealer, they had to send diagnostics to Germany for assessment. Assessments came back and the battery specialist is to arrive on the 16th to repair - replace 7 cells/modules. That doesn't sit well with me, as the remainder of the modules are of the old design and it is only a matter of time until they too fail. We all know this can happen at any time, the NHTSA site is full of horror stories where Taycans lose power in the middle of traffic, on the highway...it really takes away from enjoying the car. Anyone have any success with pushing for a full replacement instead of repair? I contacted my dealer as well as a rep at Porsche NA, both are playing hot potato with the issue and saying it's out of their hands. I can't wrap my head around how Porsche is OK with having their customers play Russian

roulette with this Band Aid fix and faulty brake lines to boot...

- <u>2022 Porsche Taycan</u>: my S. Vermont based '22 Taycan CT4 was ordered and purchased over in Nashua, NH. and it currently sits dead over at New Country Porsche in Clifton Park, NY (my closest dealer) with battery issues. They are projecting early Nov for next repair attempt. They tried for a month, back in Feb/Mar as well - via a tow-away - eventually replacing the LV battery - which didn't solve the dreaded and constant "Electrical System Error" problems. Diagnostics, parts, software, and availability of trained/skilled technicians all seem to be contributing to the issue resolution delays. In my opinion, Porsche should just replace our faulty Taycans with new ones or buy them back outright. Our cars will likely never be the same, nor be reliable, nor worth much on the market after they mess with the very high-tech batteries, their cases (air/water contamination) - and the controls/software integrations. They are not much more than Chevy Bolts now... the faulty ones anyway.

**D.    Defendant's Knowledge of the Defect**

35.    On information and belief, Porsche knew or should have known about the Battery Defect in the Class Vehicles at least as early as February 2020, and became aware of it through a number of sources, including: (1) Porsche's own

pre-sale durability testing on its vehicles and all of its components, including the electric batteries; (2) consumer complaints filed with the NHTSA, including consumer complaints reported directly to Porsche; (3) warranty claims, dealership repair records, and part sales with Porsche; (4) public reports regarding battery issues with Class Vehicles, including reports of fires; and (5) safety recalls and technical service bulletins issued by Porsche regarding the Battery Defect and attempts to fix the defect.

36.    As a renowned designer and manufacturer of luxury vehicles, Porsche conducts extensive pre-sale durability testing on its vehicles and components to ensure they are free from defects and meet the company's rigorous specifications. This includes testing the 800V lithium-ion batteries installed in the Taycan, Porsche's first consumer electric vehicle. According to Florian Stahl, the current head of Taycan testing, the Taycan was required to "undergo the same rigorous testing programme" as Porsche's traditional combustion-engine vehicles.

37.    In its vehicle development, Porsche emphasizes its commitment to "exhaustive testing," stating that "from the smallest component to the complete vehicle, testing is an integral part of project work."[18] This philosophy is backed

---

[18] *See* https://www.porscheengineering.com/peg/en/services/competence/testing/ (last visited Nov. 25, 2024).

by a network of advanced testing facilities, including the Nardò Technical Center in southern Italy, which features a 12.6-kilometer circular test track, and the Porsche Development Center in Weissach, Germany.[19] The Weissach facility serves as the hub for Porsche's future vehicle development and, in 2019, was equipped with new testing benches specifically designed for evaluating electronics, including the high-voltage batteries in the Taycan.[20]

38.    During   the   Taycan's   development,   Porsche   conducted   a comprehensive testing program, including computer simulations, benchmarking, and extensive real-world trials.[21] According to Stefan Weckbach, the head of Taycan development, the vehicle underwent over 6 million kilometers of driving across the globe.[22] This testing included extreme temperature exposure ranging

---

[19] *See* https://newsroom.porsche.com/en/2022/company/porsche-nardo-technical-center-ntc-proving-ground-anniversary-10-years-28257.html; https://www.automotivetestingtechnologyinternational.com/news/test-facilities/a-glimpse-inside-porsches-rd-center.html (last visited Nov. 25, 2024).

[20] *See* https://newsroom.porsche.com/en_US/2021/company/porsche-development-centre-weissach-christophorus-397-23433.html (last visited Nov. 25, 2024).

[21] https://www.porsche.com/uk/aboutporsche/e-performance/~report~/testing-of-the-new-porsche-taycan-has-entered-the-final-stage/uk~en~e-performance-testdrive/#:~:text=%E2%80%9CAfter%20carrying%20out%20computer%20simulations,year%2C%20we%20will%20have%20covered (last visited Nov. 25, 2024).

[22] *Id.*

from -31°F to 122°F.[23] And specific attention was given to testing the Taycan battery, including its charging process under extreme conditions, reflecting the challenges of Porsche's transition into electric vehicle production.[24] Porsche also tested the Taycan battery on over 100,000 various charging technologies across the globe.[25]

39.    Porsche also subjected the Taycan to traditional performance tests at its Nardò Technical Center. One such test involved pushing the vehicle to complete 2,128 miles in 24 hours, showcasing its capabilities under sustained high-performance conditions.[26] With these extensive efforts, concerns regarding the design and durability of the Taycan's battery system should have been revealed to Porsche.

40.    In fact, the Battery Defect is the type of defect that Porsche's pre-sale durability testing would reveal because the Battery Defect is a manufacturing defect present in the vehicles before they leave the plant and are ever driven.

---

[23] *See id.*

[24] *See id.*

[25] *See id.*

[26] https://www.motor1.com/news/366038/porsche-taycan-nardo-endurance-run/ (last visited Nov. 25, 2024).

41.    Defendant is also required by law to regularly monitor the NHTSA databases and analyze NHTSA complaints, to identify potential safety defects in their vehicles and to determine whether recalls should be issued. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Defendant has knowledge of all NHTSA complaints.

42.    On information and belief, Porsche's customer service departments, warranty departments, among other personnel, regularly monitor customer complaints posted to NHTSA's public database, including their respective websites, and the internet; regularly monitor and respond to customer calls concerning vehicle issues, including component defects; and collect and analyze field data, including but not limited to, repair requests made at Porsche dealerships and service centers, technical reports prepared by its engineers and authorized technicians that have investigated vehicles for which warranty coverage is requested, and/or identified defect trends, warranty claims data, and part sales reports.

43.    For warranty repairs, Porsche requires its dealerships and service centers to provide them with detailed reports of problems and fixes that describe the complaint, cause, and correction. Porsche also requires its dealerships and service centers to save the broken or defective part for purposes of conducting an audit on the dealership and service centers should the need arises, or otherwise

confirm the warranty repair. Defendant will not pay the dealerships and service centers for repairs if the complaint, cause, and correction are not described in detail. Accordingly, dealerships and service centers keep detailed and accurate records and information about warranty repairs.

44. On information and belief, the customers service departments, warranty departments, and other departments, such as engineering and safety at Porsche, interact with each other and discuss potential issues or defects in the Class Vehicles because they share designs and components.

45. In February 2020, shortly after Porsche launched the Taycan, one of the first Porsche Taycans on the market caught fire in a residential garage in Florida, causing damage to both the EV and the structure. Calvin Kim, a spokesperson for Porsche, told *Car and Driver:* "We were made aware of an incident at a residential address where one of our cars was parked overnight on the 16th of February. The formal investigation has begun and we remain ready to assist if called upon."[27]

46. News reports also indicate that another Taycan went up in flames in Australia in October 2021. The vehicle, a 2021 Taycan Cross Turismo that cost

---

[27] *See* [Porsche Taycan Goes up in Flames in Florida Garage](link) (last visited Nov. 25, 2024).

the owner $350,000, was brand new when the fire erupted. The fire was sealed in the lithium-ion battery and firefighters had difficulty extinguishing it. Porsche was advised of the incident.[28]

47.    According to a "Part 573 Safety Recall Report," submitted on March 20, 2024, to the NHTSA pursuant to 49 C.F.R. § 573, Porsche had become aware of a single vehicle battery fire that occurred shortly after charging in 2021. It is not clear if the report is related to the October 2021 incident in Australia. Nevertheless, the report indicates that Porsche investigated the incident and "began obtaining comparable undamaged batteries from the field for analysis."[29] The report also indicates that in "2023, Porsche became aware of further instances of battery fires in Taycan vehicles after charging."[30]

48.    In 2023, Volkswagen was sued in Germany based on a fire that erupted in 2022 on a massive cargo ship—the *Felicity Ace*—near the Azores archipelago in the Atlantic Ocean. The cargo ship ultimately sank with thousands

---

[28] *See Porsche Fire a Challenge for CFA Crews,*
https://www.mpnews.com.au/2021/10/18/porsche-fire-a-challenge-for-cfa-crews/, last visited Nov. 25, 2024).

[29] *See* https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24V215-9738.PDF (last visited Nov. 25, 2024).

[30] *See id.*

of cars on board. According to that lawsuit, the fire originated from the lithium-ion battery of a Porsche model.[31] The only Porsche EV available at the time was the Taycan.

49.    Porsche should have also known about the Battery Defect because the battery's defective components were supplied by LG Energy Solution WROCLAW sp. z o.o., a subsidiary of LG Energy Solution, Ltd., which through its subsidiaries, manufactured the defective batteries at issue in the Chevy Bolt electric vehicles. Consumers who bought the Chevy Bolts with defective batteries file the action titled, *In re Chevrolet Bolt EV Battery Litig.,* Case No. 2:20-13256-TGB-CI, which recently settled for $150 million. With respect to the Chevy Bolts, the first in a series of recalls involving defective batteries was announced on November 13, 2020.

50.    Through the channels, methods, sources and incidents described herein, Porsche knew about the Battery Defect and its potential danger at least as early as February 2020.

---

[31] *See Volkswagen Faces Pair of Lawsuits Over Claim Porsche EVE Battery Sparked Ship Fire,*
*https://www.insurancejournal.com/news/international/2024/03/05/763499.htm*
(last visited Nov. 25, 2024).

### E.    Porsche's Recalls

51.    Porsche has issued several recalls relating to the Battery Defect in the Class Vehicles.

52.    On December 12, 2023, Porsche announced Recall No. 23V840000. Pursuant to the recall, Porsche recalled certain 2021-2023 Porsche Taycan, 2021-2022 Taycan 4S, Taycan Turbo S, Taycan Turbo, Taycan 4 Cross Turismo, Taycan 4S Cross Turismo, Taycan Turbo Cross Turismo, 2022 Taycan GTS, and Taycan GTS Sport Turismo vehicles, stating that the "high-voltage battery may experience a short circuit within the battery modules." According to Porsche, a "short circuit in the battery increases the risk of a fire." Letters were mailed on June 14, 2024. For this recall, Porsche promised to inspect and repair the high-voltage battery by replacing modules as necessary.

53.    On March 19, 2024, Porsche announced two other recalls: Recall No. 24V215000 and Recall No. 24V217000. Pursuant to Recall No. 24V21500, Porsche recalled certain 2021-2023 Taycan, Taycan 4 Cross Turismo, 2020-2023 Taycan 4S, Taycan Turbo S, 2021-2022 Taycan 4S Cross Turismo, 2022 Taycan Turbo S Cross Turismo, 2022-2023 Taycan GTS, 2023 Taycan GTS Sport Turismo, and 2020-2021 Taycan Turbo vehicles, stating that the "high-voltage battery may experience a short circuit within the battery modules" (Recall No.

24V215000). According to the recall, a "short circuit in the battery increases the risk of a fire." Porsche mailed out owner notification letters on October 8, 2024.

54.    Pursuant to Recall No. 24V2170000, Porsche recalled certain 2021-2024 Taycan, 2020-2024 Taycan 4S, Taycan Turbo, 2021-2023 Taycan 4 Cross Turismo, 2022-2023 Taycan 4S Cross Turismo, Taycan Turbo S Cross Turismo, 2023 Taycan Turbo Cross Turismo, 2022-2024 Taycan GTS, Taycan GTS Sport Turismo, and 2020-2023 Taycan Turbo S vehicles, stating that the "high-voltage battery may experience a short circuit within the battery modules." According to the recall, a "short circuit in the battery increases the risk of a fire." Porsche mailed out owner notification letters on October 9, 2024. For the recalls announced on March 19, 2024, Porsche advised owners to only charge their vehicles to a maximum of 80% battery capacity, unless a repair to replace any high-voltage battery modules is completed. Porsche, however, did not promise to affirmatively replace the Defective Battery or replace its battery modules.

55.    On September 30, 2024, Porsche announced two more recalls: Recall Nos. 24V732000 and 24V731000. Pursuant to these recalls, Porsche recalled certain 2020-2024 Taycan vehicles, stating that the "high-voltage battery may experience a short circuit within the battery module." According to the recalls, a "short circuit in the battery increases the risk of a fire." Porsche said it would mail out owner notification letters on November 29, 2024. These recalls expanded and

replaced previous recall numbers 23V-840, 24V-215, and 24V-217 (the recalls announced in December 2023 and March 2024).

56.    The latest recalls involve 27,720 Taycan vehicles sold in the United States. Unfortunately, the recalls, like the prior ones announced in December 2023 and March 2024, do not involve affirmatively replacing the Defective Battery or a definitive repair or replacement of battery modules in all the Class Vehicles now or on a specific date. Moreover, owners are advised to only charge their vehicles to a maximum of 80% battery capacity until a software update can be installed, which is not expected until some unknown date in the first quarter of 2025. This limitation will result in a reduction of the advertised range and also require owners to charge their Class Vehicles more frequently at inconvenient times and locations.

57.    The software update will purportedly allow Porsche to monitor the Class Vehicles for anomalies in the battery, and if one is detected, the dashboard will display a warning message and limit the charging capacity of the battery until it can be inspected and repaired if necessary. But even if the software update successfully discovers any and all data anomalies, Porsche admits that the batteries may have problems in the future. Taycan owners who do not have the software update receive no warnings if the battery modules experience a short circuit, as customer complaints show.

**F.    Fraudulent Omission/Concealment Allegations**

58.    At this time, Plaintiff is unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Porsche responsible for making false and misleading statements regarding the Class Vehicles and failing to disclose information Porsche knew regarding the Battery Defect to Plaintiff and other members of the putative class. Defendant is in possession of all of this information.

59.    Plaintiff's claims arise out of Defendant's fraudulent omission/active concealment of the Battery Defect from Plaintiff and other members of the putative class, despite Defendant's representations about performance, safety, and range.

60.    Plaintiff, at all relevant times, including at the time Plaintiff and Class members purchased their Class Vehicles, alleges that Defendant knew, or was at least reckless in not knowing, of the Battery Defect; Defendant had a duty to disclose the Battery Defect based upon its exclusive knowledge, the significant safety risks the Battery Defect created, and the fact that the Battery Defect related to an intrinsic and important quality of these electrical vehicles that neither Plaintiff nor other members of the putative class could have discovered through the exercise of ordinary prudence and caution; and Defendant never disclosed the Battery Defect to Plaintiff and Class members at any time or place in any manner prior to any of the recalls, as alleged herein.

61.    Defendant also actively concealed the Battery Defect by misrepresenting either directly or through its agents working at authorized Porsche dealerships to Plaintiff and members of the putative Class who presented their vehicles for repair the nature, cause, and scope of the issues they had encountered with the batteries in their Class Vehicles.

62.    Plaintiff and members of the putative Class reasonably relied upon Defendant's knowing, affirmative, and/or active concealment of the Battery Defect when they decided to purchase or lease Class Vehicles.

63.    Plaintiff makes the following, additional specific concealment/omission-based allegations with as much specificity as possible through reasonable investigation and absent discovery into information available exclusively only to Defendant:

**Who**: Defendant actively concealed and failed to disclose the Battery Defect to Plaintiff and Class members by omitting it from all advertising and marketing materials, its website, and brochures, while at the same time promoting the safety, reliability, durability, performance, and range of the Class Vehicles, as alleged herein. Plaintiff is unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decision-making.

**What**: Defendant concealed, omitted, and failed to disclose that the Class Vehicles contain the Battery Defect, the attendant safety risks, and the actual fire incidents, as alleged herein. Defendant concealed and omitted the Battery Defect while making representations about the safety, reliability, durability, performance, long range, and other attributes of the Class Vehicles, as alleged herein.

**When**: Defendant concealed, omitted, and failed to disclose material information regarding the Battery Defect at all times while making representations about the safety, reliability, durability, performance, and long range of the Class Vehicles on an ongoing basis, from at least 2019, and continuing to the present. Defendant still has not disclosed the truth about the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Porsche dealerships or called Defendant's respective customer service and warranty departments complaining of the Battery Defect or inquiring about the Battery Defect, Defendant's authorized dealerships have denied any knowledge of an adequate repair for the Battery Defect. At least in these interactions with Plaintiff and members of the Class, Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships acted as Porsche's agents in that they failed to disclose information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information it provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

**Where:** Defendant concealed and omitted material information regarding the true nature of the Battery Defect in every form of communication they had with Plaintiff and Class members, and made representations about the safety, reliability, durability, performance, and long range of the Class Vehicles. Plaintiff is aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Battery Defect in the Class Vehicles prior to the recalls. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendant's websites. There are many sources through which Defendant could have disclosed the Battery Defect, including, but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendant made no such disclosures.

**How:** Defendant concealed and omitted the Battery Defect from Plaintiff and Class members and made misrepresentations about the safety, reliability, durability, performance, and long range of the Class Vehicles, including as described herein. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times, even though Defendant knew about the Battery Defect and knew that information about the Battery Defect would be important to a reasonable

consumer, and Defendant promised in its marketing materials that Class Vehicles have qualities that they do not have.

**Why:** Defendant actively concealed and omitted material information about the Battery Defect in the Class Vehicles for the purpose of inducing Plaintiff and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles, and made representations about the safety, reliability, durability, performance, and long range of the Class Vehicles. Had Defendant disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiff and Class members (indeed, all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

### G.    PLAINTIFF'S EXPERIENCE

64.    Plaintiff bought a new 2020 Taycan 4S for over $120,000 on June 26, 2020 from Autohaus Lancaster, an authorized Porsche dealership in Pennsylvania.

65.    Before buying the 2020 Taycan 4S, Plaintiff spoke with the salesperson at the dealership about the Taycan's attributes. The salesperson and the dealership never disclosed the Battery Defect to him, either because Porsche withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff, acted as

Porsche's agents in that they failed to disclose information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information it provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

66.   If Plaintiff had known about the Battery Defect before buying the 2020 Taycan 4S, Plaintiff would not have bought it or would have paid less for it.

67.   On or around June 9, 2024, after charging the 2020 Taycan 4S, Plaintiff began driving the car and then suddenly received a message on the dashboard stating there was an electrical error and that the car should be parked in a safe place. On June 11, 2024, Porsche arranged for the vehicle to be taken away on a flatbed to its facilities in Lancaster and was told the battery had eight cells that had malfunctioned.

68.   Porsche reportedly replaced the cells and then tested the car, including by driving it for about four days. The same problem occurred. As of the filing of this complaint, Porsche has not returned the vehicle to Plaintiff.

## H.   TOLLING OF THE STATUTES OF LIMITATIONS

69.   **Discovery Rule.** Plaintiff's and Class members' claims accrued upon discovery of the Battery Defect in their Class Vehicles that created the risk of an electrical fire. While Defendant knew, and concealed, the facts that the Class Vehicles have the Battery Defect that creates a significant risk of electrical fire,

Plaintiff and Class members could not and did not discover these facts sooner through reasonable diligent investigation.

70. **Active Concealment Tolling**. Any statutes of limitations are tolled by Defendant's knowing and active concealment of the Battery Defect in the Class Vehicles, as described above. Defendant kept Plaintiff and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiff. The details of Defendant's efforts to conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff could not reasonably have discovered the Battery Defect in their Class Vehicles. Because Defendant actively concealed, and continued to actively conceal, the Battery Defect in the Class Vehicles, it is estopped from relying on any statute of limitations defense and/or all statutes of limitations for the claims of Plaintiff and the putative Class members have been tolled.

71. **Estoppel**. Defendant was and is under a continuous duty to disclose to Plaintiff and all Class members the true character, quality, and nature of the Battery Defect in the Class Vehicles. At all relevant times, and continuing to this day, Defendant knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Battery Defect in the Class Vehicles. The details of Defendant's efforts to conceal the above-described unlawful conduct are in their

possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. Plaintiff reasonably relied upon Defendant's active concealment. Based on the foregoing, Defendant is estopped from relying upon any statutes of limitation in defense of this action.

72.    **Equitable Tolling**. Defendant took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with the Battery Defect. The details of Defendant's efforts to conceal the above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiff and Class members, and await discovery. When Plaintiff learned about this material information, he exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing his claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLASS ACTION ALLEGATIONS

73.    Pursuant to Rule 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of himself, and a Class defined as follows: All persons in the United States who own, owned, lease, and/or leased a Class Vehicle ("Nationwide Class").

74.    Excluded from the proposed Class are Defendant; any affiliate, parent, or subsidiary of Defendant; any entities in which Defendant has a

controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff or the judge's family; any individuals who have personal injury claims resulting from the Battery Defect and alleged misconduct; and anyone who purchased a Class Vehicle for the purpose of resale.

75.    Plaintiff reserves the right to revise the class definition after having an opportunity to conduct discovery and further investigation.

76.    Members of the proposed Class are readily ascertainable because the class definition is based upon objective criteria.

77.    **Numerosity**. Defendant has sold many thousands of Class Vehicles throughout the United States. Members of the proposed Class likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

78.    **Commonality and Predominance**. Common questions of law and fact exist as to all proposed Class members and predominate over questions affecting only individual class members. These common questions include, but are not limited to:

a. Whether Porsche sold the Class Vehicles with the Battery Defect;

b. Whether Porsche knew about the Battery Defect in the Class Vehicles when placing them in the U.S. stream of commerce;

c. When Porsche became aware of the Battery Defect in the Class Vehicles;

d. Whether Porsche had a duty to disclose the Battery Defect in the Class Vehicles;

e. Whether Plaintiff and Class members overpaid for the Class Vehicles due to the Battery Defect;

f. Whether Porsche is liable to Plaintiff and Class members for fraudulent concealment and omissions;

g. Whether Porsche is liable to Plaintiff and Class members for negligent misrepresentation and omissions; and

h. Whether Porsche is liable to Plaintiff and Class members for breach of the implied warranty of merchantability.

79. **Typicality**. Plaintiff's claims are typical of the claims of the proposed class(es). Plaintiff and the members of the proposed Class all purchased or leased the Class Vehicles with the Battery Defect that are at risk for an electrical fire, giving rise to substantially the same claims. As illustrated by consumer

complaints, some of which have been excerpted above, each Class Vehicle included in the proposed class definition suffers from the Battery Defect that Plaintiff complains about.

80.    **Adequacy**. Plaintiff is an adequate representative of the proposed Class because his interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiff has retained counsel who are competent and experienced in complex class action litigation and will prosecute this action vigorously on Class members' behalf.

81.    **Superiority**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Battery Defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

82.    In the alternative, the proposed Class may be certified because:

a.    the prosecution of separate actions by the individual members of the proposed class(es) would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant;

b.    the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c.    Defendant has acted or refused to act on grounds generally applicable to the proposed Class, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

## CAUSES OF ACTION

## COUNT I – FRAUDULENT CONCEALMENT AND OMISSION

83.    Plaintiff hereby realleges and incorporates by reference, as though fully set forth herein, the allegation contained in Paragraphs 1 through 72.

84.    Plaintiff's claim for fraudulent concealment and omission arises from Defendant's affirmative representations about the safety, reliability, durability, performance, long range, and quality of the Class Vehicles, and simultaneous concealment and omission of the Battery Defect, as more specifically outlined below and described more fully throughout this Complaint.

85.    **What and When.** In its advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendant made representations about the safety, reliability, durability, performance, long range, and quality, and other attributes of the Class Vehicles and the batteries in those vehicles to Plaintiff and the Class members.

86.    In these advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, representations at the point of sale (including warranties), and in all other communications made to the public, Plaintiff, and putative Class Members regarding the Class vehicles, Defendant actively concealed and omitted mention of material information about the Battery Defect to Plaintiff and the Class members.

87.    Defendant was aware of the Battery Defect, the safety risks posed by the Battery Defect, actual fire incidents that had already occurred as a result of the Battery Defect, and the affect the Battery Defect would have on the value and safety of Class Vehicles, yet it actively concealed and failed to disclose that information to Plaintiff and members of the putative Class.

88.    Defendant had a duty to disclose to Plaintiff and members of the

putative Class information about the Battery Defect, which posed a serious safety risk to them and their property, which Defendant had superior knowledge regarding, and which related to intrinsic qualities of the Class Vehicles (namely, the batteries of these electrical vehicles) and which could not have been discovered by the exercise of ordinary prudence and caution.

89.    Defendant's omission of, failure to disclose, and active concealment of material information about the Battery Defect was uniform with respect to Plaintiff and the members of the putative Class, and the information Defendant withheld went to the central aspect of the Class Vehicles.

90.    Defendant concealed and omitted this material information regarding the Battery Defect at all times and on an ongoing basis—from at least 2019 and continuing to the present. To this day, Defendant still has not fully disclosed the truth about or the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Porsche dealerships (which information was conveyed to Porsche) or called Defendant's customer service and warranty departments complaining or inquiring about the Battery Defect, Defendant and its authorized dealerships denied any knowledge about the Battery Defect or of any adequate repair that would correct the Battery Defect.

91.    **Who.** Upon information and belief, these knowing misrepresentations and omissions and active concealment occurred as a result of

actions by decisionmakers at Defendant whose identities are currently not known to Plaintiff and members of the Class and whose identities could not be discovered by Plaintiff. These decisionmakers also caused all spokespersons authorized to speak on behalf of Defendant (including its customer service and salespersons at Defendant's authorized dealerships and all others who participated in and facilitated the sale of any Class Vehicles to Plaintiff and Class members) to make the misrepresentations and omissions identified above about the Class Vehicles to Plaintiff and members of the proposed Class.

92.    **Where:** Defendant concealed and omitted material information regarding the true nature of the Battery Defect in every form of communication it had with (or directed to) Plaintiff and Class members regarding the performance, safety, range, reliability, quality, and other attributes of the Class Vehicles. Information regarding the Battery Defect is not disclosed in any sales documents, displays, advertisements, other public communications, warranties, owner's manuals, or on Defendant's websites. There are many avenues through which Defendant could have disclosed the Battery Defect, including, but not limited to, (1) point-of-sale communications and disclosure documents; (2) the owner's manual for Class Vehicles; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendant did not make any disclosure regarding the Battery Defect.

93.    **How:** Defendant concealed and omitted mention of the Battery Defect from Plaintiff and Class members and made representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times, even though Defendant knew about the Battery Defect. Defendant also knew that information about the Battery Defect would be important to any reasonable consumer and that Plaintiff and Class Members would reasonably rely upon its promises in its marketing materials, sales materials, and other statements that Class Vehicles have qualities and attributes that they do not have in which Defendant omitted, concealed, and failed to disclose the Battery Defect. Had Defendant disclosed the Battery Defect, Plaintiff and Class members would have reviewed or learned about the Battery Defect, and they would not have purchased or leased the Class Vehicles, or they would have paid less, and would not have paid a premium.

94.    **Why:** Defendant actively concealed and omitted material information about the Battery Defect with the intent to deceive Plaintiff and the Class members and with the intent to induce Plaintiff and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles or purchasing Class Vehicles for a lower price. Had Defendant disclosed the truth,

for example, in their advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

95.    Defendant actively concealed and suppressed these materials facts about the Battery Defect, in whole or in part, in order to maintain a market for the vehicles, to protect its profits, and to avoid costly recalls that could expose Defendant to liability and harm Defendant's commercial reputation. Defendant did so at the expense of and by creating serious safety risks to Plaintiff the class members.

96.    Plaintiff and Class members did, in fact, rely on Defendant's omissions and concealment by purchasing or leasing Class Vehicles at the prices they paid, believing that their vehicles did not have a Battery Defect that would impair the performance, safety, range, reliability, quality, and value of the Class Vehicles.

97.    Plaintiff and Class members reasonably and justifiably relied on Defendant's misrepresentations and omissions in deciding to purchase or lease Class Vehicles. Defendant and its agents were the sole parties to the sales transaction that possessed knowledge about the existence and risk of the Battery Defect in its own vehicles. Any consumer, in making the decision of whether to

purchase any Class Vehicle, had no choice but to rely on what Defendant communicated to them and to the public about the vehicle's performance, safety, range, reliability, and quality.

98.    Plaintiff and the Class members could not have discovered the truth behind Defendant's misrepresentations and omissions through the exercise of reasonable diligence because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer. Detection of such a defect would require specialized knowledge and skill the average consumer does not have, as well as specialized and costly equipment to which Plaintiff and the Class do not have access. Plaintiff and Class members thus had no way of learning the facts that Defendant concealed or failed to disclose about the Battery Defect in the Class Vehicles.

99.    Moreover, no reasonable consumer would have expected vehicles permissibly sold in the United States would contain a serious safety defect known to the entity that markets those vehicles that poses such a significant risk of harm to person and property.

100.    Defendant's misrepresentations and omissions proximately caused damages to Plaintiff and Class members.

101.    Defendant's misrepresentations and omissions proximately caused Plaintiff and class members to suffer loss in at least the following ways: out of

pocket losses, including but not limited to, overpayment for the Class Vehicles at the point of sale; reduction in the value the Class Vehicle; complete loss of their ability to use the Class Vehicle; loss of the ability to use the Class Vehicle in the way, or to the extent, advertised and promised by Defendant, including but not limited to reduced range and the need for more frequent charging; and being subject to the risk of sudden fire, loss of power, and electrical malfunction while driving.

### COUNT II – NEGLIGENT MISREPRESENTATION/OMISSION

102.  Plaintiff hereby realleges and incorporates by reference, as though fully set forth herein, the allegation contained in Paragraphs 1 through 72.

103.  Plaintiff's claim for negligent misrepresentation arises from Defendant's affirmative representations about the safety, reliability, durability, performance, long range, and quality of the Class Vehicles, and simultaneous negligent or reckless omission of and failure to disclose information regarding the Battery Defect to Plaintiff and Class Members, as more specifically outlined below and described more fully throughout this Complaint.

104.  **What and When.** In its advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendant made

representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles to Plaintiff and the Class members.

105.   In these advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendant, at the very least, negligently and recklessly omitted and/or failed to disclose material information about the Battery Defect to Plaintiff and the Class members.

106.   Defendant was aware of the Battery Defect, the safety risks posed by the Battery Defect, actual fire incidents that had already occurred as a result of the Battery Defect, and the affect the Battery Defect would have on the value and safety of Class Vehicles, and yet failed to disclose that information to Plaintiff and members of the putative Class.

107.   Defendant had a duty to disclose to Plaintiff and members of the putative Class information about the Battery Defect, which posed a serious safety risk to them and their property, which Defendant had superior knowledge regarding, and which related to intrinsic qualities of the Class Vehicles (namely, the batteries of these electrical vehicles) and which could not have been discovered by the exercise of ordinary prudence and caution.

108.   Defendant's omission, failure to disclose, and active concealment of material information about the Battery Defect was uniform with respect to Plaintiff and the members of the putative Class, and the information Defendant withheld went to the central aspect of the Class Vehicles.

109.   Defendant, at the very least, negligently and recklessly omitted material information regarding the Battery Defect at all times and on an ongoing basis—from at least 2019 and continuing to the present. To this day, Defendant still has not fully disclosed the truth about or the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Porsche dealerships or called Defendant's customer service and warranty departments complaining or inquiring about the Battery Defect, Defendant's authorized dealerships (acting as agents for Defendant and conveying information only as directed by Defendant) have negligently or recklessly denied any knowledge of the Battery Defect or of any adequate repair that would correct the Battery Defect.

110.   **Who.** These negligent or reckless misrepresentations and omissions were made by Defendant as a result of actions by decisionmakers at Defendant whose identities are currently not known to Plaintiff and members of the Class and whose identities could not be discovered by Plaintiff. These decisionmakers also caused all spokespersons authorized to speak on behalf of Defendant (including its customer service and salespersons at Defendant's authorized

dealerships and all others who participated in and facilitated the sale of any Class Vehicles to Plaintiff and Class members) to make the misrepresentations and omissions identified above about the Class Vehicles to Plaintiff and members of the putative Class.

111.  **Where:** Defendant negligently or recklessly omitted material information regarding the true nature of the Battery Defect in all communications it had with (or directed to) Plaintiff and Class members about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles. Information about the Battery Defect is not sufficiently disclosed in any sales documents, displays, advertisements, other public communications, warranties, owner's manuals, or on Defendant's websites. There are many avenues through which Defendant could have disclosed the Battery Defect, including, but not limited to, (1) point-of-sale communications and disclosure documents; (2) the owner's manual for Class Vehicles; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendant did not avail itself of these means of communications.

112.  **How:** Defendant negligently or recklessly omitted from information about the Battery Defect from statements to Plaintiff and Class members and made representations about the safety, reliability, durability, performance, long range,

quality, and other attributes of the Class Vehicles that, without disclosure of the Battery Defect, were actively misleading. Defendant omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiff and Class members at all times, even though Defendant knew about the Battery Defect and knew, or reasonably should have known, that information about the Battery Defect would be important to any reasonable consumer. Defendant also knew that complete and accurate information about the battery, including the existence and scope of the Battery Defect, would be important to any reasonable consumer and that Plaintiff and Class Members would reasonably rely upon its promises in its marketing materials, sales materials, and other statements that Class Vehicles have qualities and attributes that they do not have in which Defendant omitted, concealed, and failed to disclose the Battery Defect.

113.  **Why:** Defendant negligently or recklessly failed to disclose material information about the Battery Defect to induce Plaintiff and Class members to buy to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles or purchasing Class Vehicles for a lower price. Had Defendant disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiff and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

114.    Defendant negligently or recklessly failed to disclose these material facts about the Battery Defect, in whole or in part, in order to maintain a market for the vehicles, to protect its profits, and to avoid costly recalls that could expose Defendant to liability and harm Defendant's commercial reputation. Defendant did so at the expense of and by creating serious risks to the safety of Plaintiff and the Class members.

115.    Plaintiff and Class members did, in fact, rely on Defendant's inadequate disclosures by purchasing or leasing Class Vehicles, at the prices they paid, believing that their vehicles would not have a Battery Defect that would impair the safety, reliability, durability, performance, long range, quality, and value of their Class Vehicles.

116.    Plaintiff and Class members reasonably and justifiably relied on Defendants' negligent or reckless misrepresentations and omissions in deciding to purchase or lease Class Vehicles. Defendant and its agents were the sole parties to the sales transaction that possessed knowledge about the existence and risk of the Battery Defect in its own vehicles. Any consumer, in making the decision of whether to purchase any Class Vehicle had no choice but to rely on what Defendant communicated to them and to the public about the vehicle's performance, safety, range, reliability, and quality.

117.    Plaintiff and the Class members could not have discovered the truth

behind Defendant's misrepresentations and omissions though the exercise of reasonable diligence because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer. Detection of such a defect would require specialized knowledge and skill the average consumer does not have, as well as specialized and costly equipment to which Plaintiff and the Class members do not have access. Plaintiff and Class members thus had no way of learning the facts that Defendant concealed or failed to disclose about the Battery Defect in the Class Vehicles.

118.   Moreover, no reasonable consumer would have expected vehicles permissibly sold in the United States would contain a serious safety defect known to the entity that markets those vehicles that poses such a significant risk of harm to person and property.

119.   Defendant's negligent or reckless misrepresentations and omissions proximately caused damages to Plaintiff and Class members.

120.   Defendant's misrepresentations and omissions proximately caused Plaintiff and class members to suffer loss in at least the following ways: complete loss of their ability to use the Class Vehicle; loss of the ability to use the Class Vehicle in the way, or to the extent, advertised and promised by Defendant; reduction in the value the Class Vehicle; and being subject to the risk of sudden fire, loss of power, and electrical malfunction while driving.

## COUNT III - BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

121. Plaintiff hereby realleges and incorporates by reference, as though fully set forth herein, the allegation contained in Paragraphs 1 through 72.

122. Porsche breached its implied warranty of merchantability by failing to provide merchantable goods. Plaintiff and the Class Members have suffered damages as a result of Porsche's breach of this warranty.

123. The Class Vehicles are "goods," Defendant Porsche is a "merchant," "seller," and "lessor" of the Class Vehicles, and Plaintiff and Class Members who purchased and leased the Class Vehicles are "buyers" and "lessees."

124. The Class Vehicles were not merchantable, and as such Porsche breached the implied warranty of merchantability, because at the time of sale and all times thereafter:

    a. The Class Vehicles would not pass without objection in the automotive trade because of the Battery Defect;

    b. The Battery Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

    c. The Class Vehicles and the batteries therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Battery Defect; and

    d. The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

125. Plaintiff and other Class members timely provided Porsche notice of the Battery Defect in their Class Vehicles—and Porsche was on notice of the Battery Defect since at least February of 2020—and Porsche had an opportunity to cure the Battery Defect that it failed to cure.

126. In the alternative, notice and an opportunity to cure has been waived as a result of Porsche's active concealment of the Battery Defect, its superior knowledge of the Battery Defect, and its failure despite that knowledge to take adequate action to address the Battery Defect.

127. Plaintiff and Class members have had sufficient direct dealings with either Porsche or its agents to establish privity of contract.

128. Plaintiff and Class members are in privity with Porsche with respect to the Class Vehicles by reason of warranties Porsche agreed to with respect to the Class Vehicles.

129. Privity was also established when Porsche made direct representations to Plaintiff and Class members regarding the safety of Class Vehicles and extended an express warranty to Plaintiff and Class members, who were end users of the Class Vehicles.

130. Alternatively, privity is not required because Plaintiff and Class members are intended third-party beneficiaries of contracts between Porsche and its agents and dealerships, and specifically, of the implied warranties.

131. Alternatively, privity is not required because the Class Vehicles are dangerous instrumentalities due to the Battery Defect.

132. Porsche knew that the Class Vehicles were defective and posed safety risks, and that the Class Vehicles would continue to pose safety risks after the warranties purportedly expired. Porsche failed to disclose the defect to Plaintiff and other Class members. Therefore, Porsche's enforcement of any durational limitations on warranties is inequitable and unlawful.

133. Any attempt by Porsche to limit or disclaim the implied warranty in a manner that would exclude coverage of the Battery Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Porsche's concealment of material facts. Porsche knew at the time of sale that the Battery Defect existed and that the warranty may expire before a reasonable consumer would notice or observe the defect. Thus, any such effort by Porsche to disclaim, or otherwise limit, its liability for the Battery Defect would be inequitable, ineffective, and unlawful.

134. As a direct and proximate result of Porsche's breach of the implied warranty of merchantability, Plaintiff and Class members received goods that are

unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs associated with returning their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determine at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendant and in favor of Plaintiff and the Class, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiff as the representatives of the Class, and Plaintiff's counsel as counsel for the Class;

B.    Injunctive and equitable relief in the form of a comprehensive program to adequately repair or replace the batteries in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

C.    Any other appropriate injunctive and equitable relief;

D.    An order awarding compensatory damages for economic loss, overpayment, and out-of-pocket costs in an amount to be determined at trial;

E.    An order awarding restitution, disgorgement, punitive damages, treble damages, and exemplary damages, as permitted under applicable law;

F.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded, as required by applicable law;

G.    An award of costs, expenses and attorneys' fees as permitted by law; and

H.    Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted this 29th day of November, 2024.

*/s/ T. Brandon Waddell*
Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
Ashley C. Brown
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600

Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com
abrown@caplancobb.com


Rosemary M. Rivas
(*Pro hac vice* forthcoming)
David Stein
(*Pro hac vice* forthcoming)
Rosanne L. Mah
(*Pro hac vice* forthcoming)
GIBBS LAW GROUP LLP
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com