# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| MIODRAG KUKRIKA, CEWYON CHANDLER-WARD, TIMOTHY WILLIAMS, JOSHUA PALEFSKY, and GREGG LANEZ, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> Porsche Cars N.A., Inc., <br><br> Defendant. | Case No: 1:24-cv-05492-ELR <br><br> **<u>AMENDED CLASS ACTION COMPLAINT</u>** <br><br> **DEMAND FOR JURY TRIAL** |

Rosemary M. Rivas
(*admitted pro hac vice*)
David Stein
(*admitted pro hac vice*)
Rosanne L. Mah
(*admitted pro hac vice*)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
Ashley C. Brown
Georgia Bar No. 287373
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com
abrown@caplancobb.com

[Additional counsel on signature page]

*Attorneys for Plaintiffs Miodrag Kukrika, CeWyon Chandler-Ward, Timothy Williams, Joshua Palefsky, and Gregg Lanez and the Putative Class*

Plaintiffs Miodrag Kukrika, CeWyon Chandler-Ward, Timothy Williams, Joshua Palefsky, and Gregg Lanez, individually and on behalf of all others similarly situated, bring this class action lawsuit against Defendant Porsche Cars, N.A., Inc. ("Porsche" or "Defendant") and allege as follows:

## INTRODUCTION

1.      This case arises from Defendant's failure to disclose or adequately repair a dangerous and widespread defect in the 800V lithium-ion batteries equipped in Porsche's Taycan electric vehicles (EVs), model years 2020-2024.[1]

2.      The defect causes the batteries to lose power and worse, short circuit, thereby creating the risk of a fire (hereinafter, "Battery Defect"). The Battery Defect presents an unreasonable safety risk to drivers and passengers of the Class Vehicles and to people in residential homes and other structures where the vehicles are parked or nearby. Porsche has been aware of the Battery Defect for more than four years, at least since news outlets reported in February 2020 that a Porsche Taycan parked in a residential garage in Florida caught fire, resulting in significant damage to the home and a complete loss of the car. Porsche investigated the incident and since then, has

---

[1] The models are: Taycan, Taycan 4S, Taycan Turbo S, Taycan 4 Cross Turismo, Taycan 4S Cross Turismo, Taycan S Cross Turismo, Taycan GTS, Taycan GTS Sport Turismo, Taycan Turbo S Cross Turismo, Taycan Turbo Cross Turismo, and Taycan Turbo.

learned about several other fires and about numerous owner complaints about the Battery Defect.

3.    Porsche began piecemeal recalls in December 2023 of certain Taycan vehicles, culminating in the most recent recall announced in September 2024 involving 27,527 Class Vehicles. Unfortunately, the recalls do not address the root cause of the defect, and Porsche has not agreed to affirmatively repair or replace all the defective batteries. Rather than identifying a repair or replacement of all the defective batteries, the recalls instruct Taycan owners to limit charging to 80% capacity, resulting in a reduction of the advertised range that Taycan owners paid for and requiring owners to charge the Class Vehicles more frequently.

4.    As a supposed final remedy, Porsche proposes to have dealers install a software update. But that update will not be available until sometime during the first quarter of 2025; as of the filing of this complaint, Porsche has not provided an exact date. The software update will purportedly allow Porsche to monitor data from the Class Vehicles for anomalies in the battery, and if one is detected, the dashboard will display a warning message and limit the charging capacity of the battery until it can be inspected and repaired if necessary. Apart from the failure to address the serious risk of fire posed by the Battery Defect *now*, inspecting and repairing the batteries can take months, as Plaintiffs' experience shows.

5.     But even if the software update can successfully discover all data anomalies and predict a problem—which is an open question that won't be answered, at best, for months—Porsche admits that the batteries may have problems in the future. Taycan owners who do not have the software update receive no warnings if the battery modules experience a short circuit, as customer complaints described herein show.

6.     Taycan owners trusted and relied on the Porsche brand and the company's representations and omissions, and are left with a ticking time bomb. Porsche has left its customers with two terrible choices: an owner can decide to stop driving their Taycan for which they paid over $100,000, or they can continue driving the Taycan at the risk of losing power while driving on a highway or, even worse, experiencing a fire. To date, Porsche has been unable to develop, implement, or deliver an adequate repair to fully address the Battery Defect in all the Class Vehicles.

7.     Apart from failing to offer a concrete timeline for addressing the Battery Defect in all the Class Vehicles, Porsche has not offered to provide any compensation for the significant limitations placed on the Class Vehicles, and in fact, it is unclear if Porsche's purported remedy will fully resolve the Battery Defect. Plaintiffs and Class members are left with Class Vehicles that cannot function as advertised; cannot be charged to the advertised range; require more frequent and less convenient charging times and locations; and that may spontaneously lose power while driving, or worse, spontaneously catch fire, thereby posing significant risk of harm to owners or lessees

and their passengers, to people and to property nearby, and to the Class Vehicles themselves.

8.     Due to Porsche's omissions and active concealment of material facts, Plaintiffs and Class members have suffered out of pocket losses, including, but not limited to, overpayment for the Class Vehicles at the point of sale, and Plaintiffs and Class members have been deprived of the benefit of their bargain. Additionally, the undisclosed Battery Defect has diminished the value of the Class Vehicles.

9.     Plaintiffs, individually and on behalf of all others similarly situated, bring claims against Porsche for fraudulent omission/concealment, negligent omission/concealment, breach of implied warranty, breach of express warranty, violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and violation of the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* Plaintiffs seek all available monetary relief, including damages, and all appropriate equitable relief.

**PARTIES**

10.     Plaintiff Miodrag Kukrika is a resident and citizen of Pennsylvania. Plaintiff Kukrika bought a new 2020 Taycan 4S on June 26, 2020, for approximately $120,000 from Autohaus Lancaster, an authorized Porsche dealership.

11.     Plaintiff CeWyon Chandler-Ward is a resident and citizen of Georgia. Plaintiff Chandler-Ward bought a new 2022 Taycan, which was delivered on

January 29, 2022, for approximately $115,000 from Porsche Atlanta Perimeter, an authorized Porsche dealership.

12. Plaintiff Timothy Williams is a resident and citizen of California. Plaintiff Williams bought a certified pre-owned 2020 Taycan in June 2024 for $90,000 from Porsche Ontario, an authorized Porsche dealership.

13. Plaintiff Joshua Palefsky is a resident and citizen of California. Plaintiff Palefsky leased a new 2023 Taycan on June 28, 2024, which he bought outright for $84,457.02 on November 9, 2024, from Porsche Marin, an authorized Porsche dealership.

14. Plaintiff Gregg Lanez is a resident and citizen of New Jersey. Plaintiff Lanez bought a new 2020 Taycan 4S on September 5, 2020, for approximately $140,000, from Jack Daniels Porsche in Upper Saddle River, New Jersey, an authorized Porsche dealership.

15. Defendant Porsche Cars N.A., Inc. is a citizen of, and incorporated in, Delaware and maintains its headquarters and principal place of business in Atlanta, Georgia.

## JURISDICTION AND VENUE

16. The amount in controversy in this matter exceeds $5,000,000, as each member of the proposed Class of thousands may be entitled to thousands of dollars in damages, exclusive of interest and costs. Plaintiff and Porsche are citizens of

different states. Further, Plaintiff identifies a national class, which will result in at least one Class member belonging to a different state. Therefore, both elements of diversity jurisdiction under the Class Action Fairness Act of 2005 ("CAFA") are present, and this Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2).

17. Porsche is subject to personal jurisdiction in this Court because it is headquartered here, and because it engages in substantial, continuous, systematic, and non-isolated business activity within the state of Georgia.

18. Venue is proper in this District under 28 U.S.C. § 1391 because Porsche is headquartered in this District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims emanated from this District.

## FACTUAL ALLEGATIONS

### A. Background

19. Porsche markets and sells the Taycan, its first fully electric sports car. The Taycan is available in various models: Taycan, Taycan 4, Taycan 4S, Taycan GT, Taycan GTS, Taycan Turbo, and Taycan Turbo S.

20. The Taycan was originally announced as a concept car—Mission E— in 2015. Between September 2019 and September 2024, Porsche sold a total of 32,198 Taycan vehicles in the United States. This includes 130 vehicles sold in

2019[2]; 4,414 sold in 2020[3]; 9,419 sold in 2021[4]; 7,271 sold in 2022[5]; 7,570 sold in 2023[6]; and 3,394 sold in 2024 through October.[7]

21.    Porsche    marketed    its    first    all-electric    vehicle    as    providing "characteristic Porsche performance and connectivity with everyday usability."[8] According to Michael Steiner, Member of the Executive Board of Porsche AG— Research and Development: "We promised a true Porsche for the age of electric mobility – a fascinating sports car that not only excites in terms of its technology

---

[2] *See* https://newsroom.porsche.com/en_US/2021/company/porsche-cars-north-america-retail-sales-fourth-quarter-year-end-2020-23328.html?utm_source (last visited Feb. 19, 2025).

[3] *See id.*

[4] *See* https://newsroom.porsche.com/en_US/2023/company/porsche-cars-north-america-retail-sales-fourth-quarter-year-end-2022-30900.html?utm_source (last visited Feb. 19, 2025).

[5] *See id.*

[6] *See* https://newsroom.porsche.com/en_US/2024/company/porsche-reports-US-retail-sales-for-2023.html?utm_source (last visited Feb. 19, 2025).

[7] *See* https://newsroom.porsche.com/en_US/2024/company/Porsche-Q3-2024-US-retail-sales-37478.html?utm_source (last visited Feb. 19, 2025).

[8] *See World Premier of the Porsche Taycan,* available at https://newsroom.porsche.com/en_US/products/world-premiere-porsche-taycan-sports-car-sustainable-19176.html (last visited Feb. 19, 2025).

and driving dynamics, but also sparks a passion in people all over the world, just like its legendary predecessors have done. Now we are delivering on this promise."

22.     Porsche advertised the Taycan as the first production vehicle with a battery architecture of 800 volts instead of the typical 400 volts for electric vehicles. Higher battery voltage means greater energy and charging power. The Taycan's 800-volt battery was designed to offer drivers the advantage of recharging the battery using direct current from the high-power charging network for a range of 100 kilometers in just over five minutes.

23.     According to Porsche: "The charging time for five to 80 percent SoC (state of charge) is 22.5 minutes for charging under ideal conditions, and the maximum charging power (peak) is 270 kW. The overall capacity of the Performance Battery Plus is 93.4 kWh. Taycan drivers can comfortably charge their cars with up to eleven kW of alternating current (AC) at home."[9]

24.     Porsche advertised that in "just five minutes, the [Taycan] can be charged to enable a range of up to 100km (WLTP) under optimum conditions and is always ready for whatever its driver has planned throughout the day: driving."[10]

---

[9] *See id.*

[10] *See The New Taycan, Soul Electrified,* available at https://www.auto-brochures.com/makes/Porsche/Taycan/Porsche_int%20Taycan_2020-2.pdf (last visited Feb. 19, 2025).

25.     According to Porsche: "As well as design and performance, the focus is on comfort and range. If required, the car can plan an efficient route, and make long-distance journeys more comfortable. Speed charging options reduce downtime – you can charge your car on the road to achieve a range of up to 100km in just five minutes (WLTP) under optimum conditions, using the 800-volt architecture."[11]

26.     Porsche also represented that the "key to the Taycan is its powerful Performance Battery based on the latest lithium-ion-technology—both energetic and static."[12] Porsche integrated the Performance Battery flush with the underbody, with the entire vehicle built around it.[13]

27.     The Performance Battery consists of pouch cells, "chemically optimized for maximum performance with a long range: 33 modules with a total of 396 cells are available in the large version (Performance Battery Plus) and 28 modules with a total of 336 cells in the more compact variant[.]"[14]

28.     "The effect" of basing the Performance Battery on 800-volt technology instead of the standard 400 volts, according to Porsche, was "improved charging and

---

[11] *Id.*

[12] *See id.*

[13] *See id.*

[14] *See id.*

drive performance with small cable cross-sections, which has a positive impact on overall weight. The cooling system ensures that the drive is optimally supplied with energy in any situation. And an extremely robust battery frame ensures maximum safety in the event of an accident."[15] Porsche also touted that this "new battery technology" at the heart of the Taycan has "many advantages for you and your Taycan: high performance combined with long range."[16]

29. Porsche represented the first Taycan models as having the following ranges:

| MODEL | RANGE (WLTP)(km/miles) | Range (long distance)(km) |
|---|---|---|
| Taycan Turbo S Performance Battery+ | 388-412 (or 241-256 miles) | 340 (or 211 miles) |
| Taycan Turbo Performance Battery+ | 381-450 (or 237-280 miles) | 370 (or 230 miles) |
| Taycan 4S Performance Battery+ | 386-463 (or 240-288 miles) | 365 (or 227 miles) |
| Taycan 4S Performance Battery | 333-407 (or 207-253 miles) | 320 (or 204 miles) |

30. Porsche represented additional Taycan models as having the following ranges:

---

[15] *Id.*

[16] *See id.*

| MODEL | Combined Range (WLTP)(km/miles) | Urban Range (WLTP)(km/miles) |
|---|---|---|
| Taycan (Base) Performance Battery | 371-444 km (or 231-276 miles) | 440-523 km (or 273-325 miles) |
| Taycan (Base) Performance Battery+ | 431-505 km (or 268-314 miles) | 500-568 km (or 311-353 miles) |
| Taycan GTS Performance Battery+ | 439-504 km (or 273-313 miles) | 539-625 km (or 335-388 miles) |
| GTS Sport Turismo Performance Battery+ | 424-490 km (or 263-304 miles) | 524-616 km (or 326-383 miles) |

**B.     The Battery Defect**

31.     In an EV, the electric battery is the most important component because it stores the chemical energy and converts it to electricity to power the motor and propel the car. The battery also powers the vehicle's electrical systems when it is not in use, such as the central locking system, the alarm, and other security features. The battery also powers the vehicle's onboard computer and diagnostic systems.

32.     The amount of electrical energy a battery can store is referred to as capacity, which is measured in kilowatt-hours (kWh). The battery's design influences how fast it can be recharged, and its size and capacity impacts how far the car can travel on a single charge (called "range").

33.     Most batteries in electric vehicles are lithium-ion, which allows for higher energy density, meaning that the lithium-ion battery can store a lot of energy in a small mass. Lithium-ion batteries also have long cycle life, meaning the battery

can perform through numerous charge and discharge cycles before it no longer holds a charge.

34.    Lithium-ion batteries, however, have disadvantages. EV manufacturers are aware that lithium-ion batteries have a long history of fire issues.[17] Because they can store significant amounts of energy, they can overheat, which can result in a fire or explosion. This is called thermal runaway: when the battery's temperature rapidly and uncontrollably rises, leading to a fire. Overheating can result from short circuiting in a battery cell within the battery's module. External short circuiting occurs when there is unintended direct contact between the positive and negative terminals, thereby allowing energy to flow unimpeded, while internal short circuiting can occur within a single cell due to a manufacturing defect. The batteries in the Class Vehicles are particularly prone to this problem because they are built on an 800-volt technology versus the standard 400-volts.

35.    The Battery Defect in the Class Vehicles causes the modules to fail or short circuit. If even just one module fails, the entire Performance Battery bricks and

_____

[17] *See How Lithium Ion Batteries in EVs Catch Fire*, https://adreesh-ghoshal.medium.com/how-lithium-ion-batteries-in-evs-catch-fire-9d166c5b3af1#:~:text=Batteries%20Age&text=Similarly%2C%20at%20high%20speeds%2C%20discharge,will%20result%20in%20a%20fire (last visited Feb. 19, 2025).

the Taycan will cease to function. And a short circuit in the battery module increases the risk of a fire or thermal event.

**C.    Consumer Complaints Reveal the Magnitude of the Battery Defect.**

36.    Below are just a few examples of the numerous complaints Class Vehicle owners and lessees have lodged with the National Highway Transportation Safety Administration ("NHTSA") regarding the Battery Defect:

- 2020 Porsche Taycan: My complaint is that the car will not move. I get in the car to drive and the car displays the following message, "Electrical System Error. Stop vehicle in a safe place." This has happened on numerous occasions (at least 7) since I received the car on February 10, 2021. Mind you I work from home so I don't drive it but once a week. I am quite fortunate that thus far it has only happened in my garage. I took the car to the local Porsche dealership for a software update but that was not the solution. It occurred again after the update. I thought maybe it had something to do with the car charger because it usually occurred a couple days after charging the car but I haven't charged it in over 2 weeks. (NHTSA ID Number: 11419735, Date Complaint Filed: 6/5/2021).

- 2020 Porsche Taycan: Conditions were clear and dry, with an ambient temperature of approximately 86 degrees F. Time of day was

approximately 11:41am, Pacific. I was entering the 73 South onramp from Newport Coast Dr. (Newport Beach, CA 92657), somewhere between 60-70mph in Sport Plus mode, under heavy acceleration (but not full throttle). With no other symptoms or indications, the vehicle suddenly lost motive power and presented the error message "Electrical System Error Park Vehicle in Safe Place." At that point, the throttle became completely unresponsive and the AC compressor shut off, though other vehicle systems appeared to work normally. I was able to pull over to the shoulder safely, however sudden and complete loss of motive power is very clearly a safety risk when on a highway. In this case, as in the first time this happened, I shut the vehicle off and attempted to restart several times immediately following the initial error message, but the vehicle would not restart. I let the vehicle sit for approximately 10-15 minutes with the power off. At that point, the vehicle was able to be restarted and driven. This is the 3rd time I've received such an error and the 3rd time I've had the vehicle brought in for service for the same issue since August 2nd. Porsche Cars North America is apparently aware of the issue and has updated my vehicle software and replaced a voltage converter approximately one month ago. Unfortunately, the vehicle

seems to still be exhibiting the problem. (NHTSA ID Number: 11433960, Date Complaint Filed: 9/21/2021).

- 2020 Porsche Taycan: While driving the car suddenly lost power and displayed "electrical malfunction" please park in safe place. I was powerless and stranded in the middle of a 3 lane road. Car was towed to Porsche and they have had the car for 2 days- with no solution in site. (NHTSA ID Number: 11435775, Date Complaint Filed: 10/6/2021).

- 2020 Porsche Taycan: I got an "Electrical System Error. Park vehicle in a safe place" while I was on the freeway. I had to exit the freeway and shut down the vehicle and the error went away. I am hesitant to drive the vehicle, I am in the process of having the vehicle flat bedded to my dealer. (NHTSA ID Number: 11462128, Date Complaint Filed: 4/5/2022).

- 2020 Porsche Taycan: While driving normally on a highway, the car suddenly reported **"Electrical System Error, Stop vehicle in a safe place"**, which is followed by a complete loss of power, even pressed on acceleration pedal. I immediately pulled over to the side of the highway, the car slowed down quickly and stopped. The car was unable to restart ever since. After 1-2 hours, the vehicle's power was

completely lost. (NHTSA ID Number: 11418935, Date Complaint Filed: 5/27/2021).

- 2020 Porsche Taycan: Car displayed the following message: Electrical system error Park vehicle in a safe place. (NHTSA ID Number: 11497123, Date Complaint Filed: 12/12/2022).

- 2020 Porsche Taycan: I was driving in the fast/lane of the freeway, and suddenly the car flashed red "Electrical System Error" "Park Vehicle in Safe Place". The car immediately started to decelerate on its own and I didn't have time to go over to the right so had to move into the left shoulder of the freeway. I was stuck in the middle of the freeway, with cars driving fast coming around a bend of the freeway behind me having to swerve out of the way. Cops finally came to give me cover from behind. Dealership still trying to figure out what the issue is. (NHTSA ID Number: 11509850, Date Complaint Filed: 3/2/2023).

- 2020 Porsche Taycan: I discharged the battery to 7% then recharged to 100% using my home charger. When I got into the car, I had an error message stating: 'electrical system error park vehicle in a safe place'. The message disappeared later that day and I was able to drive

the car to the dealer. (NHTSA ID Number: 11586725, Date Complaint Filed: 5/3/2024).

- 2021 Porsche Taycan: This has happened more than once now. I got in the car and as soon as it attempted to start up, I received the following error: "ELECTRICAL SYSTEM ERROR" I was not able to put the car in R or D. There was no other option to start the car. My car is 2 weeks old with less than 750 miles. Porsche has experienced a lot of these problems over the last 12+ months, yet this issue has not been resolved or acknowledged by Porsche. I am afraid for my safety because if this happens on the road or in traffic, there will be no way of moving this car out of the way. (NHTSA ID Number: 11422463, Date Complaint Filed: 6/26/2021).

- 2021 Porsche Taycan: WHILE DRIVING ON A HIGHWAY AT ABOUT 60 MPH, THE A **WARNING MESSAGE APPEARED STATING "ELECTRICAL SYSTEM ERROR / PARK VEHICLE IN A SAFE PLACE."** FORTUNATELY WAS ABLE TO MANEUVER VEHICLE TO THE SHOULDER BEFORE LOSING RESPONSIVENESS. VEHICLE THEN WENT INTO PARK STATUS WITH NO ABILITY TO DRIVE. THEN RECEIVED MESSAGE THAT 12V BATTERY IS LOW. VERY

UNSAFE BECAUSE VEHICLE SUDDENLY LOST POWER IN A HIGH-SPEED DRIVING SITUATION. (NHTSA ID Number: 11404336, Date Complaint Filed: 3/22/2021).

- 2021 Porsche Taycan: The car has 130 miles, right at the dealer parking lot, as I was about to set out a message appeared "electric system error" I was not able to drive further. If I had been on a freeway this would have been bad. (NHTSA ID Number: 11427688, Date Complaint Filed: 8/4/2021).

- 2021 Porsche Taycan: While driving my Porsche Taycan 2021 (5000 miles) Nov. 4th, 2022, at highway speeds on I-15 to Vegas, the instrument cluster started flashing "Electric System Error" and instructed me to park in safe place immediately and call Roadside Assistance. I had to park on the hard shoulder and wait for a tow truck. It was scary as there were big rigs passing my every 10-20 seconds. Car was towed to the Porsche dealer in Vegas. Upon inspection it was found that the "High Voltage Converter" had malfunctioned and had to be replaced. This is very concerning that a critical EV component can fail in new car, which had done just over 5000 miles. Dealer replaced the component and now the vehicle is running fine but I am very skeptical to take the car out on long drives.

(NHTSA ID Number: 11496955, Date Complaint Filed: 12/11/2022).

- 2021 Porsche Taycan: The contact owns a 2021 Porsche Taycan. The contact stated that while driving 20 MPH, the vehicle began to shudder and then stalled as the "electrical system error, park vehicle in a safe place" warning message illuminated on the instrument panel. The vehicle failed again soon after restart. The contact was able to drive the vehicle to his home. The contact then called the local dealer and the vehicle was towed to the dealer. The next day, the contact received notification of NHTSA Campaign Number: 21V486000 (Engine and Engine Cooling, Electrical System) which was linked to the failure. Despite several attempts to repair the vehicle under the recall, the vehicle was not repaired. The vehicle remained in the dealer possession. The contact was recently informed by the dealer that a German engineer would be sent their location to repair the vehicle. The manufacturer was not notified of the failure. The vehicle was not repaired. The failure mileage was 1,234. (NHTSA ID Number: 11429897, Date Complaint Filed: 8/20/2021).

- 2021 Porsche Taycan: Got into the car like every morning but car displayed a warning "Electrical System Error, Park vehicle in safe

place" Car would not start (NHTSA ID Number: 11431568, Date Complaint Filed: 9/3/2021).

- 2022 Porsche Taycan: I received a red error stating that there was an electrical system error and I couldn't operate my vehicle on Oct 18 when the vehicle was parked at home. I had to tow the vehicle to the dealer and when they inspected it, they couldn't find anything wrong with it. I brought the vehicle back home and then less than a month later on November 7 I got the same error when the vehicle was parked at home. I had to tow the vehicle again to the dealer. And at this time they told me that there is an issue with the high voltage battery. They have not given me a loaner, and I am without a vehicle. I do not know when the issue will be resolved. (NHTSA ID Number: 11559618, Date Complaint Filed: 12/11/2023).

- 2022 Porsche Taycan: While charging was in progress using Porsche's app at a charging station of Electrify America, the charging process suddenly stopped, when I switched from the app to an email app. And since the charging station displayed "Please unplug", I was unplugging a charging cable from a Taycan's charging port, then there was an explosion at the port with an ear-splitting bang and a large spark. The car dashboard then displayed "Electrical system

error" and was totally unmovable, so it was towed to a dealer on 6/18/2022. The dealer contacted the manufacturer, but the car is still not repaired even though 40+ days have passed, which is unreasonable. I found the below article and suspect whether it's related with the "inexpensive onboard charger":  - An excerpt from: https://www.teslarati.com/porsche-whistleblower-taycan-battery-charger-fires-coverup/   "Porsche uses an inexpensive onboard charger that does not control the process well, the whistleblower explained to me in detail. Fires have occurred in the Taycan battery, the source explained, due to the problem described." (NHTSA ID Number: 11476601, Date Complaint Filed: 7/29/2022).

- 2022 Porsche Taycan: I was driving at high speed on the freeway when, suddenly and without warning, the vehicle lost all power. A message reading "Electrical System Error Park Vehicle in a Safe Place". I was able to glide across five lanes in rush hour traffic to the breakdown lane. (NHTSA ID Number: 11507680, Date Complaint Filed: 2/16/2023).

- 2024 Porsche Taycan: Car lost power and two messages appeared "Electrical system error Park vehicle in a safe place" " Engine control error Park vehicle in a safe place." (NHTSA ID Number: 11584315,

Date Complaint Filed: 4/21/2024).

37.     The NHTSA complaints are also viewable online and searchable by NHTSA ID Number at https://www.nhtsa.gov/recalls.

38.     Class Vehicle owners have also posted complaints about the Battery Defect online:

- 2020 Porsche Taycan: "So my 2020 black-on-black Taycan 4S is indeed a precision driving instrument, but its electrical/software systems are dismal failures. It is not unusual that manufacturers that classically create marvelous hardware are unable to achieve the same with software. This is clearly a problem with Porsche AG. At 41K miles, my car is on its 3rd high voltage heater (each repair took 2 weeks apiece) and recently upon returning from vacation, I received the warning message "Electrical system error...Park vehicle in a safe place." Tried a number of solutions proposed by those with similar experiences in this forum, but no luck. The car sat paralyzed in in my garage with the battery charged to 85%. After my dealership's diligent week of searching and data accumulation, the Porsche people in Germany asked that the main battery be returned, and a new one will be sent in exchange. Wait time? Two months. So added up, that's 3 months without my car and paying the usual hefty lease

payments when wants a Porsche. Yes they offered a Macan loaner, but I turned it down…"

- 2020 Porsche Taycan: I too got the "red circle of death" error on my 2020 4S. Towed it to dealer, they had to send diagnostics to Germany for assessment. Assessments came back and the battery specialist is to arrive on the 16th to repair - replace 7 cells/modules. That doesn't sit well with me, as the remainder of the modules are of the old design and it is only a matter of time until they too fail. We all know this can happen at any time, the NHTSA site is full of horror stories where Taycans lose power in the middle of traffic, on the highway...it really takes away from enjoying the car. Anyone have any success with pushing for a full replacement instead of repair? I contacted my dealer as well as a rep at Porsche NA, both are playing hot potato with the issue and saying it's out of their hands. I can't wrap my head around how Porsche is OK with having their customers play Russian roulette with this Band Aid fix and faulty brake lines to boot...

- 2022 Porsche Taycan: my S. Vermont based '22 Taycan CT4 was ordered and purchased over in Nashua, NH. and it currently sits dead over at New Country Porsche in Clifton Park, NY (my closest dealer) with battery issues. They are projecting early Nov for next repair

attempt. They tried for a month, back in Feb/Mar as well - via a tow-away - eventually replacing the LV battery - which didn't solve the dreaded and constant "Electrical System Error" problems. Diagnostics, parts, software, and availability of trained/skilled technicians all seem to be contributing to the issue resolution delays. In my opinion, Porsche should just replace our faulty Taycans with new ones or buy them back outright. Our cars will likely never be the same, nor be reliable, nor worth much on the market after they mess with the very high-tech batteries, their cases (air/water contamination) - and the controls/software integrations. They are not much more than Chevy Bolts now... the faulty ones anyway.

### D. Defendant's Knowledge of the Defect

39. On information and belief, Porsche knew or should have known about the Battery Defect in the Class Vehicles at least as early as February 2020, and became aware of it through a number of sources, including: (1) Porsche's own pre-sale durability testing on its vehicles and all of its components, including the electric batteries; (2) consumer complaints filed with the NHTSA, including consumer complaints reported directly to Porsche; (3) warranty claims, dealership repair records, and part sales with Porsche; (4) public reports regarding battery issues with Class Vehicles, including reports of fires; and (5) safety recalls and technical service

bulletins issued by Porsche regarding the Battery Defect and attempts to fix the defect.

40.     As a renowned designer and manufacturer of luxury vehicles, Porsche conducts extensive pre-sale durability testing on its vehicles and components to ensure they are free from defects and meet the company's rigorous specifications. This includes testing the 800V lithium-ion batteries installed in the Taycan, Porsche's first consumer electric vehicle. According to Florian Stahl, the current head of Taycan testing, the Taycan was required to "undergo the same rigorous testing programme" as Porsche's traditional combustion-engine vehicles.

41.     In its vehicle development, Porsche emphasizes its commitment to "exhaustive testing," stating that "from the smallest component to the complete vehicle, testing is an integral part of project work."[18] This philosophy is backed by a network of advanced testing facilities, including the Nardò Technical Center in southern Italy, which features a 12.6-kilometer circular test track, and the Porsche Development Center in Weissach, Germany.[19] The Weissach facility serves as the

---

[18] *See* https://www.porscheengineering.com/peg/en/services/competence/testing/ (last visited Nov. 25, 2024).

[19] *See* https://newsroom.porsche.com/en/2022/company/porsche-nardo-technical-center-ntc-proving-ground-anniversary-10-years-28257.html; https://www.automotivetestingtechnologyinternational.com/news/test-facilities/a-glimpse-inside-porsches-rd-center.html (last visited Feb. 19, 2025).

hub for Porsche's future vehicle development and, in 2019, was equipped with new testing benches specifically designed for evaluating electronics, including the high-voltage batteries in the Taycan.[20]

42. During the Taycan's development, Porsche conducted a comprehensive testing program, including computer simulations, benchmarking, and extensive real-world trials.[21] According to Stefan Weckbach, the head of Taycan development, the vehicle underwent over 6 million kilometers of driving across the globe.[22] This testing included extreme temperature exposure ranging from -31°F to 122°F.[23] And specific attention was given to testing the Taycan battery, including its charging process under extreme conditions, reflecting the challenges of Porsche's transition into electric vehicle production.[24] Porsche also purportedly tested the Taycan battery on over 100,000 various charging technologies across the globe.[25]

_____

[20] *See* https://newsroom.porsche.com/en_US/2021/company/porsche-development-centre-weissach-christophorus-397-23433.html (last visited Feb. 19, 2025).

[21] https://www.porsche.com/uk/aboutporsche/e-performance/~report~/testing-of-the-new-porsche-taycan-has-entered-the-final-stage/uk~en~e-performance-testdrive/#:~:text=%E2%80%9CAfter%20carrying%20out%20computer%20simulations,year%2C%20we%20will%20have%20covered (last visited Nov. 25, 2024).

[22] *Id.*

[23] *See id.*

[24] *See id.*

43.     Porsche also purportedly subjected the Taycan to traditional performance tests at its Nardò Technical Center. One such test involved pushing the vehicle to complete 2,128 miles in 24 hours, showcasing its capabilities under sustained high-performance conditions.[26] With these extensive efforts, concerns regarding the design and durability of the Taycan's battery system should have been revealed to Porsche.

44.     In fact, the Battery Defect is the type of defect that Porsche's pre-sale durability testing would reveal because the Battery Defect is a manufacturing defect present in the vehicles before they leave the plant and are ever driven.

45.     Defendant is also required by law to regularly monitor the NHTSA databases and analyze NHTSA complaints, to identify potential safety defects in their vehicles and to determine whether recalls should be issued. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Defendant has knowledge of all NHTSA complaints.

46.     Porsche's customer service departments, warranty departments, among other personnel, regularly monitor customer complaints posted to NHTSA's public database, including their respective websites, and the internet; regularly monitor and

---

[25] *See id.*

[26] https://www.motor1.com/news/366038/porsche-taycan-nardo-endurance-run/ (last visited Feb. 19, 2025).

respond to customer calls concerning vehicle issues, including component defects; and collect and analyze field data, including but not limited to, repair requests made at Porsche dealerships and service centers, technical reports prepared by its engineers and authorized technicians that have investigated vehicles for which warranty coverage is requested, and/or identified defect trends, warranty claims data, and part sales reports.

47.     For warranty repairs, Porsche requires its dealerships and service centers to provide them with detailed reports of problems and fixes that describe the complaint, cause, and correction. Porsche also requires its dealerships and service centers to save the broken or defective part for purposes of conducting an audit on the dealership and service centers should the need arise, or otherwise confirm the warranty repair. Defendant will not pay the dealerships and service centers for repairs if the complaint, cause, and correction are not described in detail. Accordingly, dealerships and service centers keep detailed and accurate records and information about warranty repairs.

48.     On information and belief, the customers service departments, warranty departments, and other departments, such as engineering and safety at Porsche, interact with each other and discuss potential issues or defects in the Class Vehicles because they share designs and components.

49.     In February 2020, shortly after Porsche launched the Taycan, one of the first Porsche Taycans on the market caught fire in a residential garage in Florida, causing damage to both the EV and the structure. Calvin Kim, a spokesperson for Porsche, told *Car and Driver:* "We were made aware of an incident at a residential address where one of our cars was parked overnight on the 16th of February. The formal investigation has begun and we remain ready to assist if called upon."[27]

50.     News reports also indicate that another Taycan went up in flames in Australia in October 2021. The vehicle, a 2021 Taycan Cross Turismo that cost the owner $350,000, was brand new when the fire erupted. The fire was sealed in the lithium-ion battery and firefighters had difficulty extinguishing it. Porsche was advised of the incident.[28]

51.     According to a "Part 573 Safety Recall Report," submitted on March 20, 2024, to the NHTSA pursuant to 49 C.F.R. § 573, Porsche had become aware of a single vehicle battery fire that occurred shortly after charging in 2021. It is not clear if the report is related to the October 2021 incident in Australia. Nevertheless,

---

[27] *See Porsche Taycan Goes up in Flames in Florida Garage,* https://www.caranddriver.com/news/a30986407/porsche-taycan-ev-fire-garage-florida/ (last visited Feb. 19, 2025).

[28] *See Porsche Fire a Challenge for CFA Crews,* https://www.mpnews.com.au/2021/10/18/porsche-fire-a-challenge-for-cfa-crews/ (last visited Feb. 19, 2025).

the report indicates that Porsche investigated the incident and "began obtaining comparable undamaged batteries from the field for analysis."[29] The report also indicates that in "2023, Porsche became aware of further instances of battery fires in Taycan vehicles after charging."[30]

52.    In 2023, Volkswagen was sued in Germany based on a fire that erupted in 2022 on a massive cargo ship—the *Felicity Ace*—near the Azores archipelago in the Atlantic Ocean. The cargo ship ultimately sank with thousands of cars on board. According to that lawsuit, the fire originated from the lithium-ion battery of a Porsche model.[31] The only Porsche EV available at the time was the Taycan.

53.    Porsche should have also known about the Battery Defect because the battery's defective components were supplied by LG Energy Solution WROCLAW sp. z o.o., a subsidiary of LG Energy Solution, Ltd., which through its subsidiaries, manufactured the defective batteries at issue in the Chevy Bolt electric vehicles. Consumers who bought the Chevy Bolts with defective batteries file the action titled,

---

[29] *See* https://static.nhtsa.gov/odi/rcl/2024/RCLRPT-24V215-9738.PDF (last visited Feb. 19, 2025).

[30] *See id.*

[31] *See Volkswagen Faces Pair of Lawsuits Over Claim Porsche EVE Battery Sparked Ship Fire,* https://www.insurancejournal.com/news/international/2024/03/05/763499.htm (last visited Feb. 19, 2025).

*In re Chevrolet Bolt EV Battery Litig.,* Case No. 2:20-13256-TGB-CI, which recently settled for $150 million. With respect to the Chevy Bolts, the first in a series of recalls involving defective batteries was announced on November 13, 2020.

54.     Through the channels, methods, sources and incidents described herein, Porsche knew about the Battery Defect and its potential danger at least as early as February 2020.

### E.     Porsche's Recalls

55.     Porsche has issued several recalls relating to the Battery Defect in the Class Vehicles.

56.     On December 12, 2023, Porsche announced Recall No. 23V840000. Pursuant to the recall, Porsche recalled certain 2021-2023 Porsche Taycan, 2021-2022 Taycan 4S, Taycan Turbo S, Taycan Turbo, Taycan 4 Cross Turismo, Taycan 4S Cross Turismo, Taycan Turbo Cross Turismo, 2022 Taycan GTS, and Taycan GTS Sport Turismo vehicles, stating that the "high-voltage battery may experience a short circuit within the battery modules." According to Porsche, a "short circuit in the battery increases the risk of a fire." Letters were mailed on June 14, 2024. For this recall, Porsche promised to inspect and repair the high-voltage battery by replacing modules as necessary.

57.     On March 19, 2024, Porsche announced two other recalls: Recall No. 24V215000 and Recall No. 24V217000. Pursuant to Recall No. 24V21500, Porsche

recalled certain 2021-2023 Taycan, Taycan 4 Cross Turismo, 2020-2023 Taycan 4S, Taycan Turbo S, 2021-2022 Taycan 4S Cross Turismo, 2022 Taycan Turbo S Cross Turismo, 2022-2023 Taycan GTS, 2023 Taycan GTS Sport Turismo, and 2020-2021 Taycan Turbo vehicles, stating that the "high-voltage battery may experience a short circuit within the battery modules" (Recall No. 24V215000). According to the recall, a "short circuit in the battery increases the risk of a fire." Porsche mailed out owner notification letters on October 8, 2024.

58.    Pursuant to Recall No. 24V2170000, Porsche recalled certain 2021-2024 Taycan, 2020-2024 Taycan 4S, Taycan Turbo, 2021-2023 Taycan 4 Cross Turismo, 2022-2023 Taycan 4S Cross Turismo, Taycan Turbo S Cross Turismo, 2023 Taycan Turbo Cross Turismo, 2022-2024 Taycan GTS, Taycan GTS Sport Turismo, and 2020-2023 Taycan Turbo S vehicles, stating that the "high-voltage battery may experience a short circuit within the battery modules." According to the recall, a "short circuit in the battery increases the risk of a fire." Porsche mailed out owner notification letters on October 9, 2024. For the recalls announced on March 19, 2024, Porsche advised owners to charge their vehicles to a maximum of 80% battery capacity, unless a repair to replace any high-voltage battery modules is completed. Porsche, however, did not promise to affirmatively replace the Defective Battery or replace its battery modules.

59.     On September 30, 2024, Porsche announced two more recalls: Recall Nos. 24V732000 and 24V731000. Pursuant to these recalls, Porsche recalled certain 2020-2024 Taycan vehicles, stating that the "high-voltage battery may experience a short circuit within the battery module." According to the recalls, a "short circuit in the battery increases the risk of a fire." Porsche said it would mail out owner notification letters on November 29, 2024. These recalls expanded and replaced previous recall numbers 23V-840, 24V-215, and 24V-217 (the recalls announced in December 2023 and March 2024).

60.     The latest recalls involve 27,720 Taycan vehicles sold in the United States. Unfortunately, the recalls, like the prior ones announced in December 2023 and March 2024, do not involve affirmatively replacing the Defective Battery or a definitive repair or replacement of battery modules in all the Class Vehicles now or on a specific date. Moreover, owners are advised to only charge their vehicles to a maximum of 80% battery capacity until a software update can be installed, which is not expected until some unknown date in the first quarter of 2025. This limitation will result in a reduction of the advertised range and also require owners to charge their Class Vehicles more frequently at inconvenient times and locations. The limitation on charging will likely be permanent. The recalls do not address or compensate owners for the reduced range of their Class Vehicles due to this limitation on charging.

61. The software update will purportedly allow Porsche to monitor the Class Vehicles for anomalies in the battery, and if one is detected, the dashboard will display a warning message and limit the charging capacity of the battery until it can be inspected and repaired if necessary. But even if the software update successfully discovers any and all data anomalies, Porsche admits that the batteries may have problems in the future. Taycan owners who do not have the software update receive no warnings if the battery modules experience a short circuit, as customer complaints show.

**F.     Fraudulent Omission/Concealment Allegations**

62. At this time, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Porsche responsible for making false and misleading statements regarding the Class Vehicles and failing to disclose information Porsche knew regarding the Battery Defect to Plaintiffs and other members of the putative Class. Defendant is in possession of all of this information.

63. Plaintiffs' claims arise out of Defendant's fraudulent omission/active concealment of the Battery Defect from Plaintiffs and other members of the putative Class, despite Defendant's representations about performance, safety, and range.

64. Plaintiffs, at all relevant times, including at the time Plaintiffs and Class members purchased their Class Vehicles, allege that Defendant knew, or was at least reckless in not knowing, of the Battery Defect; Defendant had a duty to disclose the

Battery Defect based upon its exclusive knowledge, the significant safety risks the Battery Defect created, and the fact that the Battery Defect related to an intrinsic and important quality of these electrical vehicles that neither Plaintiffs nor other members of the putative Class could have discovered through the exercise of ordinary prudence and caution; and Defendant never disclosed the Battery Defect to Plaintiffs and Class members at any time or place in any manner prior to any of the recalls, as alleged herein.

65. Defendant also actively concealed the Battery Defect by misrepresenting either directly or through its agents working at authorized Porsche dealerships to Plaintiffs and members of the putative Class who presented their vehicles for repair the nature, cause, and scope of the issues they had encountered with the batteries in their Class Vehicles.

66. Plaintiffs and members of the putative Class reasonably relied upon Defendant's knowing, affirmative, and/or active concealment of the Battery Defect when they decided to purchase or lease Class Vehicles.

67. Plaintiffs makes the following, additional specific concealment/omission-based allegations with as much specificity as possible through reasonable investigation and absent discovery into information available exclusively only to Defendant:

**Who**: Defendant actively concealed and failed to disclose the Battery Defect to Plaintiffs and Class members by omitting it from all advertising and marketing materials, its website, and brochures, while at the same time promoting the safety, reliability, durability, performance, and range of the Class Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decision-making.

**What**: Defendant concealed, omitted, and failed to disclose that the Class Vehicles contain the Battery Defect, the attendant safety risks, and the actual fire incidents, as alleged herein. Defendant concealed and omitted the Battery Defect while making representations about the safety, reliability, durability, performance, long range, and other attributes of the Class Vehicles, as alleged herein.

**When**: Defendant concealed, omitted, and failed to disclose material information regarding the Battery Defect at all times while making representations about the safety, reliability, durability, performance, and long range of the Class Vehicles on an ongoing basis, from at least 2019, and continuing to the present. Defendant still has not disclosed the truth about the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Porsche dealerships or called Defendant's respective customer service and warranty departments complaining of the Battery Defect or inquiring about the Battery Defect, Defendant's authorized dealerships have denied any knowledge of an adequate

repair for the Battery Defect. At least in these interactions with Plaintiffs and members of the Class, Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships acted as Porsche's agents in that they failed to disclose information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information it provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

**Where:** Defendant concealed and omitted material information regarding the true nature of the Battery Defect in every form of communication it had with Plaintiffs and Class members, and made representations about the safety, reliability, durability, performance, and long range of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Battery Defect in the Class Vehicles prior to the recalls. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendant's websites. There are many sources through which Defendant could have disclosed the Battery Defect, including, but not limited to, (1) point of sale communications; (2) the owner's manual; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendant made no such disclosures.

**How:** Defendant concealed and omitted the Battery Defect from Plaintiffs and Class members and made misrepresentations about the safety, reliability, durability, performance, and long range of the Class Vehicles, including as described herein. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiffs and Class members at all times, even though Defendant knew about the Battery Defect and knew that information about the Battery Defect would be important to a reasonable consumer, and Defendant promised in its marketing materials that Class Vehicles have qualities that they do not have.

**Why:** Defendant actively concealed and omitted material information about the Battery Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles, and made representations about the safety, reliability, durability, performance, and long range of the Class Vehicles. Had Defendant disclosed the truth, for example, in its advertisements or other materials or communications, Plaintiffs and Class members (indeed, all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

## G. PLAINTIFFS' EXPERIENCE

<u>Plaintiff Miodrag Kukrika</u>

68.     Plaintiff Kukrika bought a new 2020 Taycan 4S for over $120,000 on June 26, 2020, from Autohaus Lancaster, an authorized Porsche dealership in Pennsylvania.

69.     Before buying the 2020 Taycan 4S, Plaintiff Kukrika spoke with the salesperson at the dealership about the Taycan's features. The salesperson and the dealership never disclosed the Battery Defect to him or that the Battery Defect would materially affect his vehicle's capabilities or advertised features, either because Porsche withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff Kukrika, acted as Porsche's agents and failed to disclose material information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information it provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

70.     If Plaintiff Kukrika had known about the Battery Defect before buying the 2020 Taycan 4S, Plaintiff Kukrika would not have bought it or would have paid less for it.

71.     On or around June 9, 2024, after charging the 2020 Taycan 4S, Plaintiff Kukrika began driving the car and then suddenly received a message on the dashboard stating there was an electrical error and that the car should be parked in a safe place. On June 11, 2024, Porsche arranged for the vehicle to be taken away on a flatbed to its facilities in Lancaster and was told the battery had eight cells that had malfunctioned.

72.     Porsche reportedly replaced the cells and then tested the car, including by driving it for about four days. The same problem occurred. Porsche retained possession of the car until it returned the vehicle to Plaintiff Kukrika on December 18, 2024. When Porsche returned the vehicle to Plaintiff Kukrika, Porsche told him to charge the vehicle only to 80%. Porsche has not provided information on what repairs, if any, were performed.

73.     At the time Plaintiff Kukrika sought repair or replacement of the battery in his vehicle, his vehicle had been driven fewer than 100,000 miles.

74.     Plaintiff Kukrika's vehicle is also subject to the ARB7 recall. The notice for the ARB7 recall states: "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Porsche has decided that a defect, which relates to motor vehicle safety, exists in certain 2020-2024 Porsche Taycan vehicles." The notice further states that, "Porsche recently determined that individual

battery cell modules within the high-voltage battery in your vehicle may experience a short circuit. This can result in a battery fire."

Plaintiff CeWyon Chandler-Ward

75. Plaintiff Chandler-Ward bought a new 2022 Taycan, which was delivered on January 29, 2022, for approximately $115,000 from Porsche Atlanta Perimeter, an authorized Porsche dealership in Atlanta, Georgia.

76. Before purchasing the 2022 Taycan, Plaintiff Chandler-Ward researched and reviewed the representations and promotional materials about the 2022 Taycan on the Internet, including the Porsche website, regarding the 2022 Taycan's advertised features. Porsche never disclosed the Battery Defect to Plaintiff Chandler-Ward in any of its representations or promotional materials. Moreover, the salesperson and the dealership never disclosed the Battery Defect to her or that the Battery Defect would materially affect his vehicle's capabilities or advertised features, either because Porsche withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff Chandler-Ward, acted as Porsche's agents and failed to disclose material information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information they provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

77. If Plaintiff Chandler-Ward had known about the Battery Defect before buying the 2022 Taycan, Plaintiff Chandler-Ward would not have bought it or would have paid less for it.

78. Plaintiff Chandler-Ward's vehicle is subject to the ARB7 recall. The notice for the ARB7 recall states: "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Porsche has decided that a defect, which relates to motor vehicle safety, exists in certain 2020-2024 Porsche Taycan vehicles." The notice further states that "Porsche recently determined that individual battery cell modules within the high-voltage battery in your vehicle may experience a short circuit. This can result in a battery fire."

79. Plaintiff Chandler-Ward scheduled an appointment with Porsche Atlanta Perimeter to address the Battery Defect. The dealership informed Plaintiff Chandler-Ward that it could not address the Battery Defect; the dealership also could not provide any specific dates as to when it would be able to do so.

80. Plaintiff Chandler-Ward's vehicle had been driven fewer than 100,000 miles when she sought repair or replacement of her vehicle's battery.

Plaintiff Timothy Williams

81. Plaintiff Williams bought a certified pre-owned 2020 Taycan in June 2024 for approximately $90,000 from Porsche Ontario, an authorized dealership in California.

82.     Before buying the 2020 Taycan, Plaintiff Williams researched and reviewed the representations and promotional materials about the 2020 Taycan on the Internet, including the Porsche website, regarding the 2020 Taycan's advertised features. Porsche never disclosed the Battery Defect to Plaintiff Williams in any of its representations or promotional materials. Moreover, the salesperson and the dealership never disclosed the Battery Defect to him or that the Battery Defect would materially affect his vehicle's capabilities or advertised features, either because Porsche withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff Williams, acted as Porsche's agents and failed to disclose material information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information it provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

83.     Plaintiff Williams's vehicle is subject to the ARB6 recall. The notice for the ARB6 recall states: "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Porsche has decided that a defect, which relates to motor vehicle safety, exists in certain 2020-2024 Porsche Taycan vehicles." The notice further states that "Porsche recently determined that individual battery cell modules within the high-voltage battery in your vehicle may experience

a short circuit. This can result in a battery fire." The notice additionally states that "Porsche recommends you set the charge settings so that the battery is charged up to a maximum of 80%."

84.     Plaintiff Williams contacted the Porsche dealership where he bought his 2020 Taycan to address the Battery Defect. The dealership informed Plaintiff Williams that it could not address the Battery Defect; the dealership also could not provide any specific dates as to when it would be able to do so.

85.     Plaintiff Williams's vehicle had been driven fewer than 100,000 miles at the time he sought repair or replacement of his vehicle's battery.

Plaintiff Joshua Palefsky

86.     Plaintiff Palefsky leased a new 2023 Taycan on June 28, 2024, which he bought outright for $84,457.02 on November 9, 2024, from Porsche Marin, an authorized dealership in California.

87.     Before leasing the new 2023 Taycan, Plaintiff Palefsky researched and reviewed the representations and promotional materials about the 2023 Taycan on the Internet, including the Porsche website, regarding the Taycan's advertised features. Plaintiff Palefsky also spoke with the salesperson about the Taycan's features. Porsche never disclosed the Battery Defect to Plaintiff Palefsky in any of its representations or promotional materials. Moreover, the salesperson and the dealership never disclosed the Battery Defect to him or that the Battery Defect

would materially affect his vehicle's capabilities or advertised features, either because Porsche withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff Palefsky, acted as Porsche's agents and failed to disclose material information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information they provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

88.     If Plaintiff Palefsky had known about the Battery Defect before leasing and eventually purchasing the 2023 Taycan, Plaintiff Palefsky would not have leased or bought it or would have paid less for the lease and eventual purchase.

89.     Plaintiff Palefsky's vehicle is subject to the ARB6 recall. The notice for the ARB6 recall states: "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Porsche has decided that a defect, which relates to motor vehicle safety, exists in certain 2020-2024 Porsche Taycan vehicles." The notice further states that "Porsche recently determined that individual battery cell modules within the high-voltage battery in your vehicle may experience a short circuit. This can result in a battery fire." The notice additionally states that "Porsche recommends you set the charge settings so that the battery is charged up to a maximum of 80%."

90. Plaintiff Palefsky's vehicle is also subject to the ARB7 recall. The notice for the ARB7 recall states: "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Porsche has decided that a defect, which relates to motor vehicle safety, exists in certain 2020-2024 Porsche Taycan vehicles." The notice further states that "Porsche recently determined that individual battery cell modules within the high-voltage battery in your vehicle may experience a short circuit. This can result in a battery fire."

91. Plaintiff Palefsky contacted the Porsche dealership where he bought his 2023 Taycan to address the Battery Defect. The dealership informed Plaintiff Palefsky that it could not address the Battery Defect; the dealership also could not provide any specific dates as to when it would be able to do so.

92. Plaintiff Palefsky's vehicle had been driven fewer than 100,000 miles at the time he sought repair or replacement of his vehicle's battery.

Plaintiff Gregg Lanez

93. Plaintiff Lanez is a resident and citizen of New Jersey. Plaintiff Lanez bought a new 2020 Taycan 4S on September 5, 2020, for approximately $140,000, from Jack Daniels Porsche in Upper Saddle River, New Jersey, an authorized Porsche dealership.

94. Before purchasing the 2020 Taycan 4S, Plaintiff Lanez researched and reviewed the representations and promotional materials about the 2020 Taycan 4S

on the Internet, including the Porsche website, regarding the 2020 Taycan 4S's advertised features. Porsche never disclosed the Battery Defect to Plaintiff Lanez in any of its representations or promotional materials. Moreover, the salesperson and the dealership never disclosed the Battery Defect to him, either because Porsche withheld the Battery Defect from the dealership or did not authorize it to disclose the Battery Defect. Defendant's authorized Porsche dealerships and the personnel who worked at those dealerships, including those who interacted with Plaintiff, acted as Porsche's agents and failed to disclose information regarding the Battery Defect at Porsche's direction or based upon Porsche's control of the information they provided to them and permitted them to disclose regarding the batteries of Class Vehicles.

95.     If Plaintiff Lanez had known about the Battery Defect before buying the 2020 Taycan 4S, Plaintiff Lanez would not have bought it or would have paid less for it.

96.     Plaintiff Lanez's vehicle is subject to the ARB7 recall. The notice for the ARB7 recall states: "This notice is sent to you in accordance with the National Traffic and Motor Vehicle Safety Act. Porsche has decided that a defect, which relates to motor vehicle safety, exists in certain 2020-2024 Porsche Taycan vehicles." The notice further states that "Porsche recently determined that individual

battery cell modules within the high-voltage battery in your vehicle may experience a short circuit. This can result in a battery fire."

97.    Plaintiff Lanez scheduled an appointment with Jack Daniels Porsche to address the Battery Defect. The dealership informed Plaintiff Lanez that it could not address the Battery Defect; the dealership also could not provide any specific dates as to when it would be able to do so.

98.    Plaintiff Lanez's vehicle had been driven fewer than 100,000 miles when he sought repair or replacement of his vehicle's battery.

## H.    TOLLING OF THE STATUTES OF LIMITATIONS

99.    **Discovery Rule**. Plaintiffs' and Class members' claims accrued upon discovery of the Battery Defect in their Class Vehicles that created the risk of an electrical fire. While Defendant knew, and concealed, the facts that the Class Vehicles have the Battery Defect that creates a significant risk of electrical fire, Plaintiffs and Class members could not and did not discover these facts sooner through reasonable diligent investigation.

100.    **Active Concealment Tolling**. Any statutes of limitations are tolled by Defendant's knowing and active concealment of the Battery Defect in the Class Vehicles, as described above. Defendant kept Plaintiffs and all Class members ignorant of vital information essential to the pursuit of their claim, without any fault or lack of diligence on the part of Plaintiffs. The details of Defendant's efforts to

conceal its above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiffs could not reasonably have discovered the Battery Defect in their Class Vehicles. Because Defendant actively concealed, and continued to actively conceal, the Battery Defect in the Class Vehicles, it is estopped from relying on any statute of limitations defense and/or all statutes of limitations for the claims of Plaintiffs and the putative Class members have been tolled.

101. **Estoppel**. Defendant was and is under a continuous duty to disclose to Plaintiffs and all Class members the true character, quality, and nature of the Battery Defect in the Class Vehicles. At all relevant times, and continuing to this day, Defendant knowingly, affirmatively, and actively concealed the true character, quality, and nature of the Battery Defect in the Class Vehicles. The details of Defendant's efforts to conceal the above-described unlawful conduct are in their possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. Plaintiffs reasonably relied upon Defendant's active concealment. Based on the foregoing, Defendant is estopped from relying upon any statutes of limitation in defense of this action.

102. **Equitable Tolling**. Defendant took active steps to conceal the fact that it wrongfully, improperly, illegally, and repeatedly manufactured, marketed, distributed, sold, and leased Class Vehicles with the Battery Defect. The details of

Defendant's efforts to conceal the above-described unlawful conduct are in its possession, custody, and control, to the exclusion of Plaintiffs and Class members, and await discovery. When Plaintiffs learned about this material information, they exercised due diligence by thoroughly investigating the situation, retaining counsel, and pursuing their claims. Should such tolling be necessary, therefore, all applicable statutes of limitation are tolled under the doctrine of equitable tolling.

## CLASS ACTION ALLEGATIONS

103. Pursuant to Rule 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves, and a Class defined as follows: All persons in the United States who own, owned, lease, and/or leased a Class Vehicle ("Nationwide Class").

104. Pursuant to Rule 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiffs Williams and Palefsky bring this action on behalf of themselves, and a Subclass defined as follows: All persons in California who own, owned, lease, and/or leased a Class Vehicle ("California Subclass").

105. Pursuant to Rule 23(a), (b)(2), and/or (b)(3), and/or (c)(4) of the Federal Rules of Civil Procedure, Plaintiff Chandler-Ward brings this action on behalf of herself, and a Subclass defined as follows: All persons in Georgia who own, owned, lease, and/or leased a Class Vehicle ("Georgia Subclass").

106. Excluded from the proposed Classes are Defendant; any affiliate, parent, or subsidiary of Defendant; any entities in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse; members of the judge's staff or the judge's family; any individuals who have personal injury claims resulting from the Battery Defect and alleged misconduct; and anyone who purchased a Class Vehicle for the purpose of resale.

107. Plaintiffs reserve the right to revise the class definitions after having an opportunity to conduct discovery and further investigation.

108. Members of the proposed Classes are readily ascertainable because the class definition is based upon objective criteria.

109. **Numerosity**. Defendant has sold many thousands of Class Vehicles throughout the United States. Members of the proposed Classes likely number in the thousands and are thus too numerous to practically join in a single action. Class members may be notified of the pendency of this action by mail, supplemented by published notice (if deemed necessary or appropriate by the Court).

110. **Commonality and Predominance**. Common questions of law and fact exist as to all members of the proposed Classes and predominate over questions

affecting only individual Class members. These common questions include, but are not limited to:

a.   Whether Porsche sold the Class Vehicles with the Battery Defect;

b.   Whether Porsche knew about the Battery Defect in the Class Vehicles when placing them in the U.S. stream of commerce;

c.   When Porsche became aware of the Battery Defect in the Class Vehicles;

d.   Whether Porsche had a duty to disclose the Battery Defect in the Class Vehicles;

e.   Whether Plaintiffs and Class members overpaid for the Class Vehicles due to the Battery Defect;

f.   Whether Porsche is liable to Plaintiffs and Class members for fraudulent concealment and omissions;

g.   Whether Porsche is liable to Plaintiffs and Class members for negligent misrepresentation and omissions; and

h.   Whether Porsche is liable to Plaintiffs and Class members for breach of the implied warranty of merchantability.

111.   **Typicality**. Plaintiffs' claims are typical of the claims of the proposed Classes. Plaintiffs and the members of the proposed Classes all purchased or leased

the Class Vehicles with the Battery Defect that are at risk for an electrical fire, giving rise to substantially the same claims. As illustrated by consumer complaints, some of which have been excerpted above, each Class Vehicle included in the proposed class definition suffers from the Battery Defect that Plaintiffs complain about.

112. **<u>Adequacy</u>**. Plaintiffs are adequate representatives of the proposed Classes because their interests do not conflict with the interests of the members of the Classes they seek to represent. Plaintiffs have retained counsel who are competent and experienced in complex class action litigation and will prosecute this action vigorously on Class members' behalf.

113. **<u>Superiority</u>**. A class action is superior to other available means for the fair and efficient adjudication of this dispute. The injury suffered by each Class member, while meaningful on an individual basis, is not of such magnitude as to make the prosecution of individual actions against Defendant economically feasible. Even if Class members themselves could afford such individualized litigation, the court system could not. In addition to the burden and expense of managing many actions arising from the Battery Defect, individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the legal and factual issues of the case. By contrast, a class action presents far fewer management

difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

114. In the alternative, the proposed Classes may be certified because:

a. the prosecution of separate actions by the individual members of the proposed class(es) would create a risk of inconsistent adjudications, which could establish incompatible standards of conduct for Defendant;

b. the prosecution of individual actions could result in adjudications, which as a practical matter, would be dispositive of the interests of non-party class members or which would substantially impair their ability to protect their interests; and

c. Defendant has acted or refused to act on grounds generally applicable to the proposed Classes, thereby making appropriate final and injunctive relief with respect to the members of the proposed Class as a whole.

## CAUSES OF ACTION

## COUNT I – FRAUDULENT CONCEALMENT AND OMISSION

115. Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

116. Plaintiffs' claim for fraudulent concealment and omission arises from Defendant's affirmative representations about the safety, reliability, durability, performance, long range, and quality of the Class Vehicles, and simultaneous

concealment and omission of the Battery Defect, as more specifically outlined below and described more fully throughout this Complaint.

117. **What and When.** In its advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendant made representations about the safety, reliability, durability, performance, long range, and quality, and other attributes of the Class Vehicles and the batteries in those vehicles to Plaintiffs and the Class members.

118. In these advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, representations at the point of sale (including warranties), and in all other communications made to the public, Plaintiffs, and putative Class Members regarding the Class Vehicles, Defendant actively concealed and omitted mention of material information about the Battery Defect to Plaintiffs and the Class members.

119. Defendant was aware of the Battery Defect, the safety risks posed by the Battery Defect, actual fire incidents that had already occurred as a result of the Battery Defect, and the affect the Battery Defect would have on the value, safety, advertised features, and functionality of the Class Vehicles, yet it actively concealed

and failed to disclose that information to Plaintiffs and members of the putative Class.

120. Defendant had a duty to disclose to Plaintiffs and members of the putative Class information about the Battery Defect, which posed a serious safety risk to them and their property, which affected the value, safety, advertised features, and functionality of the Class Vehicles, which Defendant had superior knowledge regarding, and which related to intrinsic qualities of the Class Vehicles (namely, the batteries of these electrical vehicles) and which could not have been discovered by the exercise of ordinary prudence and caution.

121. Defendant's omission of, failure to disclose, and active concealment of material information about the Battery Defect was uniform with respect to Plaintiffs and the members of the putative Class, and the information Defendant withheld went to the central aspect of the Class Vehicles.

122. Defendant concealed and omitted this material information regarding the Battery Defect at all times and on an ongoing basis—from at least 2019 and continuing to the present. To this day, Defendant still has not fully disclosed the truth about or the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Porsche dealerships (which information was conveyed to Porsche) or called Defendant's customer service and warranty departments complaining or inquiring about the Battery Defect, Defendant and its

authorized dealerships denied any knowledge about the Battery Defect or of any adequate repair that would correct the Battery Defect.

123. **Who.** Upon information and belief, these knowing misrepresentations and omissions and active concealment occurred as a result of actions by decisionmakers at Defendant whose identities are currently not known to Plaintiffs and members of the Class and whose identities could not be discovered by Plaintiffs. These decisionmakers also caused all spokespersons authorized to speak on behalf of Defendant (including its customer service and salespersons at Defendant's authorized dealerships and all others who participated in and facilitated the sale of any Class Vehicles to Plaintiffs and Class members) to make the misrepresentations and omissions identified above about the Class Vehicles to Plaintiffs and members of the proposed Class.

124. **Where:** Defendant concealed and omitted material information regarding the true nature of the Battery Defect in every form of communication it had with (or directed to) Plaintiffs and Class members regarding the performance, safety, range, reliability, quality, and other attributes of the Class Vehicles. Information regarding the Battery Defect is not disclosed in any sales documents, displays, advertisements, other public communications, warranties, owner's manuals, or on Defendant's websites. There are many avenues through which Defendant could have disclosed the Battery Defect, including, but not limited to, (1)

point-of-sale communications and disclosure documents; (2) the owner's manual for Class Vehicles; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendant did not make any disclosure regarding the Battery Defect.

125.    **How:** Defendant concealed and omitted mention of the Battery Defect from Plaintiffs and Class members and made representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles. Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiffs and Class members at all times, even though Defendant knew about the Battery Defect. Defendant also knew that information about the Battery Defect would be important to any reasonable consumer and that Plaintiffs and Class Members would reasonably rely upon its promises in its marketing materials, sales materials, and other statements that Class Vehicles have qualities and attributes that they do not have in which Defendant omitted, concealed, and failed to disclose the Battery Defect. Had Defendant disclosed the Battery Defect, Plaintiffs and Class members would have reviewed or learned about the Battery Defect, and they would not have purchased or leased the Class Vehicles, or they would have paid less, and would not have paid a premium.

126. **Why:** Defendant actively concealed and omitted material information about the Battery Defect with the intent to deceive Plaintiffs and the Class members and with the intent to induce Plaintiffs and Class members to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles or purchasing Class Vehicles for a lower price. Had Defendant disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

127. Defendant actively concealed and suppressed these materials facts about the Battery Defect, in whole or in part, in order to maintain a market for the vehicles, to protect its profits, and to avoid costly recalls that could expose Defendant to liability and harm Defendant's commercial reputation. Defendant did so at the expense of and by creating serious safety risks to Plaintiffs and the Class members.

128. Plaintiffs and Class members did, in fact, rely on Defendant's omissions and concealment by purchasing or leasing Class Vehicles at the prices they paid, believing that their vehicles did not have a Battery Defect that would impair the performance, safety, range, reliability, quality, and value of the Class Vehicles.

129. Plaintiffs and Class members reasonably and justifiably relied on Defendant's misrepresentations and omissions in deciding to purchase or lease Class

Vehicles. Defendant and its agents were the sole parties to the sales transaction that possessed knowledge about the existence and risk of the Battery Defect in its own vehicles. Any consumer, in making the decision of whether to purchase any Class Vehicle, had no choice but to rely on what Defendant communicated to them and to the public about the vehicle's performance, safety, range, reliability, and quality.

130. Plaintiffs and the Class members could not have discovered the truth behind Defendant's misrepresentations and omissions through the exercise of reasonable diligence because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer. Detection of such a defect would require specialized knowledge and skill the average consumer does not have, as well as specialized and costly equipment to which Plaintiffs and the Class do not have access. Plaintiffs and Class members thus had no way of learning the facts that Defendant concealed or failed to disclose about the Battery Defect in the Class Vehicles.

131. Moreover, no reasonable consumer would have expected vehicles permissibly sold in the United States would contain a serious safety defect known to the entity that markets those vehicles that poses such a significant risk of harm to person and property.

132. Defendant's misrepresentations and omissions proximately caused damages to Plaintiffs and Class members.

133. Defendant's misrepresentations and omissions proximately caused Plaintiffs and Class members to suffer losses in at least the following ways: out of pocket losses, including but not limited to, overpayment for the Class Vehicles at the point of sale; reduction in the value the Class Vehicle; complete loss of their ability to use the Class Vehicle; loss of the ability to use the Class Vehicle in the way, or to the extent, advertised and promised by Defendant, including but not limited to reduced range and the need for more frequent charging; and being subject to the risk of sudden fire, loss of power, and electrical malfunction while driving.

## COUNT II – NEGLIGENT MISREPRESENTATION/OMISSION

134. Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

135. Plaintiffs' claim for negligent misrepresentation arises from Defendant's affirmative representations about the safety, reliability, durability, performance, long range, and quality of the Class Vehicles, and simultaneous negligent or reckless omission of and failure to disclose information regarding the Battery Defect to Plaintiffs and Class Members, as more specifically outlined below and described more fully throughout this Complaint.

136. **What and When.** In its advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations

at the point of sale (including warranties), Defendant made representations about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles to Plaintiffs and the Class members.

137. In these advertisements and other marketing materials about the Class Vehicles, public statements about the Class Vehicles, representations about the Class Vehicles during the purchase or leasing process, and representations at the point of sale (including warranties), Defendant, at the very least, negligently and recklessly omitted and/or failed to disclose material information about the Battery Defect to Plaintiffs and the Class members.

138. Defendant was aware of the Battery Defect, the safety risks posed by the Battery Defect, actual fire incidents that had already occurred as a result of the Battery Defect, and the affect the Battery Defect would have on the value, safety, advertised features, and functionality of the Class Vehicles, and yet failed to disclose that information to Plaintiffs and members of the putative Class.

139. Defendant had a duty to disclose to Plaintiffs and members of the putative Class information about the Battery Defect, which posed a serious safety risk to them and their property, which affected the value, safety, advertised features, and functionality of the Class Vehicles, which Defendant had superior knowledge regarding, and which related to intrinsic qualities of the Class Vehicles (namely, the

batteries of these electrical vehicles) and which could not have been discovered by the exercise of ordinary prudence and caution.

140. Defendant's omission, failure to disclose, and active concealment of material information about the Battery Defect was uniform with respect to Plaintiffs and the members of the putative Class, and the information Defendant withheld went to the central aspect of the Class Vehicles.

141. Defendant, at the very least, negligently and recklessly omitted material information regarding the Battery Defect at all times and on an ongoing basis—from at least 2019 and continuing to the present. To this day, Defendant still has not fully disclosed the truth about or the full scope of the Battery Defect in the Class Vehicles. And when consumers brought their vehicles to Porsche dealerships or called Defendant's customer service and warranty departments complaining or inquiring about the Battery Defect, Defendant's authorized dealerships (acting as agents for Defendant and conveying information only as directed by Defendant) have negligently or recklessly denied any knowledge of the Battery Defect or of any adequate repair that would correct the Battery Defect.

142. **Who.** These negligent or reckless misrepresentations and omissions were made by Defendant as a result of actions by decisionmakers at Defendant whose identities are currently not known to Plaintiffs and members of the Class and whose identities could not be discovered by Plaintiffs. These decisionmakers also

caused all spokespersons authorized to speak on behalf of Defendant (including its customer service and salespersons at Defendant's authorized dealerships and all others who participated in and facilitated the sale of any Class Vehicles to Plaintiffs and Class members) to make the misrepresentations and omissions identified above about the Class Vehicles to Plaintiffs and members of the putative Class.

143. **Where:** Defendant negligently or recklessly omitted material information regarding the true nature of the Battery Defect in all communications it had with (or directed to) Plaintiffs and Class members about the safety, reliability, durability, performance, long range, quality, and other attributes of the Class Vehicles. Information about the Battery Defect is not sufficiently disclosed in any sales documents, displays, advertisements, other public communications, warranties, owner's manuals, or on Defendant's websites. There are many avenues through which Defendant could have disclosed the Battery Defect, including, but not limited to, (1) point-of-sale communications and disclosure documents; (2) the owner's manual for Class Vehicles; and/or (3) direct communications to Class members through means such as state vehicle registry lists and e-mail notifications. Defendant did not avail itself of these means of communications.

144. **How:** Defendant negligently or recklessly omitted from information about the Battery Defect from statements to Plaintiffs and Class members and made representations about the safety, reliability, durability, performance, long range,

quality, and other attributes of the Class Vehicles that, without disclosure of the Battery Defect, were actively misleading. Defendant omitted the truth about the existence, scope, and nature of the Battery Defect from Plaintiffs and Class members at all times, even though Defendant knew about the Battery Defect and knew, or reasonably should have known, that information about the Battery Defect would be important to any reasonable consumer. Defendant also knew that complete and accurate information about the battery, including the existence and scope of the Battery Defect, would be important to any reasonable consumer and that Plaintiffs and Class Members would reasonably rely upon its promises in its marketing materials, sales materials, and other statements that Class Vehicles have qualities and attributes that they do not have in which Defendant omitted, concealed, and failed to disclose the Battery Defect.

145. **Why:** Defendant negligently or recklessly failed to disclose material information about the Battery Defect to induce Plaintiffs and Class members to buy to buy and/or lease Class Vehicles, rather than buying or leasing competitors' vehicles or purchasing Class Vehicles for a lower price. Had Defendant disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs and Class members (all reasonable consumers) would have been aware of it and would not have bought or leased the Class Vehicles or would not have paid as much for them.

146. Defendant negligently or recklessly failed to disclose these material facts about the Battery Defect, in whole or in part, in order to maintain a market for the vehicles, to protect its profits, and to avoid costly recalls that could expose Defendant to liability and harm Defendant's commercial reputation. Defendant did so at the expense of and by creating serious risks to the safety of Plaintiffs and the Class members.

147. Plaintiffs and Class members did, in fact, rely on Defendant's inadequate disclosures by purchasing or leasing Class Vehicles, at the prices they paid, believing that their vehicles would not have a Battery Defect that would impair the safety, reliability, durability, performance, long range, quality, and value of their Class Vehicles.

148. Plaintiffs and Class members reasonably and justifiably relied on Defendant's negligent or reckless misrepresentations and omissions in deciding to purchase or lease Class Vehicles. Defendant and its agents were the sole parties to the sales transaction that possessed knowledge about the existence and risk of the Battery Defect in its own vehicles. Any consumer, in making the decision of whether to purchase any Class Vehicle had no choice but to rely on what Defendant communicated to them and to the public about the vehicle's performance, safety, range, reliability, and quality.

149. Plaintiffs and the Class members could not have discovered the truth behind Defendant's misrepresentations and omissions though the exercise of reasonable diligence because a defect *inside* an electric battery is not visible to the consumer and is not detectible by a consumer. Detection of such a defect would require specialized knowledge and skill the average consumer does not have, as well as specialized and costly equipment to which Plaintiffs and the Class members do not have access. Plaintiffs and Class members thus had no way of learning the facts that Defendant concealed or failed to disclose about the Battery Defect in the Class Vehicles.

150. Moreover, no reasonable consumer would have expected vehicles permissibly sold in the United States would contain a serious safety defect known to the entity that markets those vehicles that poses such a significant risk of harm to person and property.

151. Defendant's negligent or reckless misrepresentations and omissions proximately caused damages to Plaintiffs and Class members.

152. Defendant's misrepresentations and omissions proximately caused Plaintiffs and Class members to suffer loss in at least the following ways: complete loss of their ability to use the Class Vehicle; loss of the ability to use the Class Vehicle in the way, or to the extent, advertised and promised by Defendant;

reduction in the value the Class Vehicle; and being subject to the risk of sudden fire, loss of power, and electrical malfunction while driving.

## COUNT III - BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

153.    Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

154.    Porsche breached its implied warranty of merchantability by failing to provide merchantable goods. Plaintiffs and the Class Members have suffered damages as a result of Porsche's breach of this warranty.

155.    The Class Vehicles are "goods," Defendant Porsche is a "merchant," "seller," and "lessor" of the Class Vehicles, and Plaintiffs and Class Members who purchased and leased the Class Vehicles are "buyers" and "lessees."

156.    The Class Vehicles were not merchantable, and as such Porsche breached the implied warranty of merchantability, because at the time of sale and all times thereafter:

a.    The Class Vehicles would not pass without objection in the automotive trade because of the Battery Defect;

b.    The Battery Defect renders the Class Vehicles unsafe to drive and unfit for ordinary purposes;

c.      The Class Vehicles and the batteries therein were inadequately labeled as safe and reliable, and the labeling failed to disclose the Battery Defect; and

d.      The Class Vehicles do not conform to their labeling, which represents that the vehicles are safe and suitable for their intended use.

157.    Plaintiffs and other Class members timely provided Porsche notice of the Battery Defect in their Class Vehicles—and Porsche was on notice of the Battery Defect since at least February of 2020—and Porsche had an opportunity to cure the Battery Defect that it failed to cure.

158.    In the alternative, notice and an opportunity to cure has been waived as a result of Porsche's active concealment of the Battery Defect, its superior knowledge of the Battery Defect, and its failure despite that knowledge to take adequate action to address the Battery Defect.

159.    Plaintiffs and Class members have had sufficient direct dealings with either Porsche or its agents to establish privity of contract.

160.    Plaintiffs and Class members are in privity with Porsche with respect to the Class Vehicles by reason of warranties Porsche agreed to with respect to the Class Vehicles.

161. Privity was also established when Porsche made direct representations to Plaintiffs and Class members regarding the safety of Class Vehicles and extended an express warranty to Plaintiffs and Class members, who were end users of the Class Vehicles.

162. Alternatively, privity is not required because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Porsche and its agents and dealerships, and specifically, of the implied warranties.

163. Alternatively, privity is not required because the Class Vehicles are dangerous instrumentalities due to the Battery Defect.

164. Porsche knew that the Class Vehicles were defective and posed safety risks, and that the Class Vehicles would continue to pose safety risks after the warranties purportedly expired. Porsche failed to disclose the defect to Plaintiffs and other Class members. Therefore, Porsche's enforcement of any durational limitations on warranties is inequitable and unlawful.

165. Any attempt by Porsche to limit or disclaim the implied warranty in a manner that would exclude coverage of the Battery Defect is unconscionable as a matter of law because the relevant purchase transactions were tainted by Porsche's concealment of material facts. Porsche knew at the time of sale that the Battery Defect existed and that the warranty may expire before a reasonable consumer would notice or observe the defect. Thus, any such effort by Porsche to disclaim, or

otherwise limit, its liability for the Battery Defect would be inequitable, ineffective, and unlawful.

166.   As a direct and proximate result of Porsche's breach of the implied warranty of merchantability, Plaintiffs and Class members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs associated with returning their Class Vehicle to a safe condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determine at trial.

## COUNT IV – VIOLATION OF UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES
### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

### (Plaintiffs Williams and Palefsky on behalf of the proposed California Subclass)

167.   Plaintiffs Williams and Palefsky hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

168.   Defendant has violated and continues to violate California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*, which prohibits unlawful, unfair, and fraudulent business acts or practices.

169.   Defendant's acts and practices, as alleged in this complaint, constitute unlawful, unfair, and fraudulent business practices, in violation of the Unfair

Competition Law. In particular, Defendant sold the Class Vehicles to California Subclass members despite the Battery Defect in those vehicles and failed to disclose the Battery Defect and its attendant risks at the point of sale, in advertising materials, or otherwise.

170.    Defendant's business acts and practices are unlawful in that they violate the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*., and other laws as alleged herein.

171.    Defendant's acts and practices also constitute fraudulent practices in that they are likely to deceive a reasonable consumer. As described above, Defendant knowingly concealed and failed to disclose at the point of sale and otherwise that the Class Vehicles have the Battery Defect, endangering the personal safety of drivers and passengers, causing damage to property, and thus requiring repair. Had Defendant disclosed these material facts, Plaintiffs would have learned about them given Plaintiffs' prior research and/or discussions with the dealerships before leasing and/or purchasing the Class Vehicles. Had Defendant disclosed these material facts, Plaintiffs, Class members, and reasonable consumers would not have purchased or leased the Class Vehicles or would have paid significantly less for them.

172.    Defendant's conduct also constitutes unfair business practices for at least the following reasons:

a.   The gravity of harm to Plaintiffs and the proposed California Subclass from Defendant's acts and practices far outweighs any legitimate utility of that conduct;

b.   Defendant's conduct is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to Plaintiffs and the members of the proposed California Subclass; and

c.   Defendant's conduct undermines or violates the stated policies underlying the Consumers Legal Remedies Act—to protect consumers against unfair and sharp business practices and to promote a basic level of honesty and reliability in the marketplace.

173.   As a direct and proximate result of Defendant's business practices, Plaintiffs and the proposed Class members suffered injury in fact and lost money or property, because they purchased and paid for vehicles that they otherwise would not have purchased, or in the alternative, would have paid less for.

174.   Plaintiffs and the proposed California Subclass members are entitled to equitable relief, including restitution to compensate Plaintiffs and the California Subclass as a result of Defendant's unlawful, unfair and deceptive, and fraudulent practices, and an injunction enjoining Defendant's misconduct as alleged herein, directing Defendant to disclose the existence of the Battery Defect to all owners and

lessees of the Class Vehicles, and directing Defendant to provide an adequate repair. Plaintiffs, the California Subclass, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk for bodily injury. Plaintiffs will also suffer irreparable injury if Defendant's misleading practices are not enjoined. They have an interest in buying vehicles in the future, often see marketing for Defendant's vehicles, and will consider purchasing Defendant's vehicles in the future if possible, but have no way of determining whether the vehicles are installed with the Battery Defect.

175.   Plaintiffs bring this Claim on behalf of the California Subclass in the alternative to any Claims brought for legal remedies and expressly allege that for purposes of this Claim they lack adequate remedies at law. Among other things, the restitution that may be available under this claim, including for restitutionary disgorgement of revenues attributable to an increased volume of vehicle sales made possible by the challenged practices, may not be recoverable as damages or otherwise at law. Given the market share held by Defendant, Plaintiffs, individually and as members of the California Subclass, also have no adequate remedy at law for the future unlawful acts, methods, or practices as set forth above absent an injunction. Moreover, Defendant's alleged misconduct is ongoing and therefore damages may not be certain or prompt and thus are an inadequate remedy to address the conduct that the requested injunctions are designed to prevent.

**COUNT V – VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL
REMEDIES ACT
(Cal. Civ. Code § 1750, *et seq.*)**

**(Plaintiffs Williams and Palefsky on behalf of the proposed California
Subclass)**

176.   Plaintiffs Williams and Palefsky hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

177.   Defendant is a "person" within the meaning of Civil Code §§ 1761(c) and 1770 and has provided "goods" within the meaning of Civil Code §§ 1761(a) and 1770.

178.   Plaintiffs and members of the proposed California Subclass are "consumers" within the meaning of Civil Code §§ 1761(d) and 1770 and their purchases or leases of the Class Vehicles constitute a "transaction" within the meaning of Civil Code §§ 1761(e) and 1770.

179.   Defendant's acts and practices, which were intended to result, and which did result, in the sale of Class Vehicles with the Battery Defect, violate § 1770 of the Consumers Legal Remedies Act for at least the following reasons:

   a.   Defendant represents that its vehicles had characteristics, uses, or benefits which they do not have;

   b.   Defendant advertises its goods with intent not to sell them as advertised;

c.    Defendant represents that its vehicles are of a particular standard, quality, or grade when they are not; and

d.    Defendant represents that a transaction conferred or involved rights, remedies, or obligations which they do not.

180.  As described above, Defendant sold the Class Vehicles to Class members but failed to disclose the Battery Defect, its attendant risks, and actual fire incidents at the point of sale, in advertising materials, or otherwise. Defendant intended that Plaintiffs and the members of the proposed Subclass rely on this omission in deciding to purchase their vehicles.

181.  Had Defendant adequately disclosed the Battery Defect and the attendant safety risks at the point of sale and in advertising materials, Plaintiffs, members of the proposed Subclass, and reasonable consumers would have seen, heard, or learned about the disclosure and would not have purchased or leased the Class Vehicles or would have paid significantly less to buy or lease them.

182.  Pursuant to the provisions of California Civil Code § 1782(a), Plaintiffs, on behalf of themselves and the proposed Subclass, at this time, only seek injunctive relief. Plaintiffs will notify Defendant in writing of the CLRA violations alleged herein prior to filing a complaint seeking damages. If Defendant does not exercise its opportunity to provide corrective action pursuant to Section 1782(b)

within the time provided, Plaintiffs will amend this complaint to seek damages and all other available relief.

183.    Pursuant to California Civil Code § 1780, Plaintiffs seek all available injunctive relief. Plaintiffs and the proposed California Subclass members are entitled to an injunction enjoining Defendant's misconduct as alleged herein and directing Defendant to disclose the existence of the Battery Defect to all owners and lessees of the Class Vehicles and directing Defendant to provide an adequate repair. Plaintiffs, the Subclass, and members of the public will suffer irreparable injury if an injunction is not ordered as they are at risk of bodily injury. Plaintiffs will also suffer irreparable injury if Defendant's misleading practices are not enjoined. They have an interest in buying vehicles in the future, often see marketing for Defendant's vehicles, and will consider purchasing Defendant's vehicles in the future if possible, but have no way of determining whether the vehicles are installed with the Battery Defect.

184.    Plaintiffs bring this Claim for injunctive relief on behalf of themselves and the proposed California Subclass members and lack adequate remedies at law. Plaintiffs, Subclass members, and members of the public are at risk of bodily injury, which is not redressed by money damages. Further, Defendant's alleged misconduct is ongoing and therefore damages are not certain or prompt and thus are an

inadequate remedy to address the conduct that the requested injunctions are designed to prevent.

## COUNT VI – VIOLATION OF GEORGIA FAIR BUSINESS PRACTICES ACT, O.C.G.A. § 10-1-390, *et seq.*

### (Plaintiff Chandler-Ward on behalf of the proposed Georgia Subclass)

185.   Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

186.   Porsche is a "person" as defined by the Georgia Fair Business Practices Act ("FBPA"). O.C.G.A. § 10-1-392(a)(24).

187.   Plaintiffs and Georgia Subclass Members are "consumers" within the meaning of the FBPA. O.C.G.A. § 10-1-392(a)(6).

188.   The purchase of Class Vehicles by Plaintiffs and Class Members constituted "consumer transactions" as defined by the FBPA. O.C.G.A. § 10-1-392(a)(10).

189.   Plaintiff CeWyon Chandler-Ward is a Georgia citizen who purchased a 2022 Porsche Taycan from an authorized Porsche dealership in Atlanta, Georgia.

190.   The FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including, but not limited to, "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have," "[r]epresenting that goods or

services are of a particular standard, quality, or grade . . . if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," *id.* §§ 10-1-393(b)(5), (7) & (9).

191.    By failing to disclose the defective nature of the Class Vehicles to Plaintiff Chandler-Ward and Georgia Subclass Members, Porsche violated the FBPA.

192.    Porsche represented that the Class Vehicles had characteristics and benefits that they do not have (including that they were safe, had specified battery capacities and ranges, and were fit for their intended purpose) and represented that the Class Vehicles were of a particular standard, quality, or grade (including that they were safe and of high-quality) when they were of another. *See* O.C.G.A. §§ 10-1-393(b)(5) & (7).

193.    Porsche also advertised the Class Vehicles as safe, of high quality, and as having certain advertised battery capacities and ranges, when in fact Porsche knew the vehicles were dangerous, had material defects, and did not have the ranges and battery capacities that Porsche had advertised; Porsche acted with the intent not to sell the Class Vehicles as advertised. O.C.G.A. § 10-1-393(b)(9).

194.    Porsche's unfair and deceptive acts or practices occurred repeatedly in Porsche's course of trade or business, were material, were capable of deceiving (and did deceive) the purchasing public, and as a result, caused economic harm to owners

and purchasers of the Class Vehicles, including Plaintiff Chandler-Ward and Georgia Subclass Members.

195. Before the sale of the Class Vehicles (including the vehicle sold to Plaintiff Chandler-Ward), Porsche knew that the Class Vehicles' batteries suffered from a material safety defect, which would cause the batteries to lose power or short circuit, rendering the Class Vehicles unsafe to operate and unsuitable for their intended use.

196. Before the sale of the Class Vehicles (including the vehicle sold to Plaintiff Chandler-Ward), Porsche had exclusive knowledge of material facts concerning the existence of the Battery Defect in its Class Vehicles. Additionally, Porsche actively concealed this defect from consumers by misrepresenting either directly or through its agents working at authorized Porsche dealerships to Plaintiff Chandler-Ward and Georgia Subclass Members who presented their vehicles for repair the nature, cause, and scope of the issues they had encountered with the batteries in their Class Vehicles.

197. Porsche was under a duty to Plaintiff Chandler-Ward and Georgia Subclass Members to disclose the Battery Defect, as well as the costs of replacing the defective battery and returning the Class Vehicles to a safe condition because:

>    a.    Porsche was in a superior position to know the true state of facts about the Battery Defect in the Class Vehicles;

b.　Plaintiff Chandler-Ward and Georgia Subclass Members could not reasonably have been expected to learn or discover that the Class Vehicles had the Battery Defect until, at the latest, the battery had already manifested signs of the defect by failing or short circuiting; and

c.　Porsche knew that Plaintiff Chandler-Ward and Georgia Subclass Members could not reasonably have been expected to learn or discover the Battery Defect prior to its manifestation.

198.　Porsche knew or should have known that its conduct violated the FBPA.

199.　In failing to disclose the defective nature of the Class Vehicles, and/or denying and misleading as to the true nature of the Battery Defect present in the Class Vehicles, Porsche knowingly and intentionally concealed material facts from Plaintiff Chandler-Ward and Georgia Subclass Members and breached its duty to them not to conceal material facts.

200.　The facts that Porsche concealed from Plaintiff Chandler-Ward and Georgia Subclass Members are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase a Class Vehicle. Moreover, a reasonable consumer would consider the Battery Defect to be an undesirable quality, as Plaintiff Chandler-Ward and Georgia Subclass Members

have done upon learning of it. Had Plaintiff Chandler-Ward and Georgia Subclass Members known that the Class Vehicles had the Battery Defect, they would not have purchased their Class Vehicles, or would have paid less for them.

201.   Plaintiff Chandler-Ward and Georgia Subclass Members did not expect their vehicles' batteries to be subject to failure and/or short circuiting.

202.   As a result of Porsche's misconduct, Plaintiff Chandler-Ward and Georgia Subclass Members have been harmed and suffered actual damages, including in that the Class Vehicles have batteries that are or are likely to fail or short circuit, rendering the Class Vehicles unsuitable for their intended purpose.

203.   As a direct and proximate result of Porsche's unfair or deceptive acts or practices, Plaintiff Chandler-Ward and Georgia Subclass Members received goods that are unreasonably dangerous and have substantially impaired value, and they have suffered incidental, consequential, and other damages, including out-of-pocket costs required to return their Class Vehicles to a safe condition, the costs of necessary present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determined at trial.

204.   Porsche's violations present a continuing risk of harm to Plaintiff Chandler-Ward, Georgia Subclass Members, and the general public. Porsche's unlawful acts and practices complained of herein affect the public interest.

205. Porsche received proper notice of its alleged violations of the FBPA pursuant to O.C.G.A. § 10-1-399(b), via a letter sent to Porsche's counsel on January 13, 2025. On February 11, 2025, counsel for Porsche responded to Plaintiff Chandler-Ward's letter, declining to provide any remedy to Plaintiff Chandler-Ward and Georgia Subclass Members beyond the October 2024 recall, described above, which is inadequate to remedy the injuries caused to Plaintiffs for the reasons set out herein.

206. Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiff Chandler-Ward and Georgia Subclass Members seek an order enjoining Porsche's unfair, unlawful, and/or deceptive practices, declaratory relief, actual and statutory damages, attorneys' fees and expenses, and treble damages and punitive damages, as permitted by the FBPA.

## COUNT VII – BREACH OF EXPRESS WARRANTY

207. Plaintiffs hereby reallege and incorporate by reference, as though fully set forth herein, the allegations contained in Paragraphs 1 through 98.

208. Porsche is and was at all relevant times a "merchant" with respect to motor vehicles and specifically the Class Vehicles.

209. The Class Vehicles are and were at all relevant times "goods."

210. Plaintiffs and Class Members bought Class Vehicles that Porsche manufactured, marketed to them, and intended to be purchased by consumers.

211. Porsche expressly warranted the Class Vehicles against defect, including the Battery Defect.

212. Specifically, Porsche provided Plaintiffs and Class Members a new vehicle warranty that covered the Class Vehicles' high-voltage batteries for a period of eight years or 100,000 miles, whichever came first.

213. Pursuant to the Warranty and Customer Information booklets for the Class Vehicles, Porsche warranted to the original and each subsequent owner that the "[t]he Porsche Taycan high-voltage battery is covered against defects in materials or workmanship for a period of 8 years/100,000 miles and against excessive loss of Capacity[.]"

214. Porsche's express warranties formed a basis of the bargain that was struck when Plaintiffs and Class Members purchased their Class Vehicles.

215. As described above, however, the high-voltage batteries in the Class Vehicles are defective.

216. As described above, the Battery Defect was present in the Class Vehicles at the time of production.

217. The Battery Defect substantially impairs the use, value, and safety of the Class Vehicles to reasonable consumers, including Plaintiffs and Class Members.

218. Porsche breached its express warranties by supplying the Class Vehicles to Plaintiffs and Class Members with the Battery Defect.

219. Porsche knew of the Battery Defect, and that this defect poses a serious safety risk to consumers like Plaintiffs and Class Members, when it expressly warranted against the defect, wrongfully and fraudulently concealed material facts regarding the defect, and induced Plaintiffs and Class Members to purchase the Class Vehicles under false and/or fraudulent pretenses.

220. Porsche is obligated, under the terms of its express warranties, to repair or replace the defective battery to return the battery to at least the "Warranted Value" net battery capacity as outlined in the warranty.

221. Porsche breached the express warranty to repair the Battery Defect in the Class Vehicles because it failed to replace or repair the high-voltage batteries equipped in the Plaintiffs' Class Vehicles in accordance with the terms of the new-vehicle high-voltage battery warranty.

222. Porsche was provided with appropriate notice and has been on notice of the Battery Defect and of its breach of express written warranties from various sources.

223. The Class Vehicles were under express warranty when they exhibited the Battery Defect and when Plaintiffs sought repair or replacement of their Class Vehicle batteries.

224. Plaintiffs and Class Members gave Porsche a reasonable opportunity to cure its failures with respect to its warranties, and Porsche failed to do so free of charge or at all.

225. Alternatively, affording Porsche a reasonable opportunity to cure its breach of written warranties was unnecessary and futile here. When Plaintiffs and other Class Members provided such notice and sought relief under the warranty, Porsche refused to provide such relief and simply advised Plaintiffs and Class Members to only charge their vehicles to 80% capacity.

226. To the extent any express warranties do not by their terms cover the defects alleged in this Complaint, and to the extent the contractual remedy is in any other respect insufficient to make Plaintiffs and Class Members whole, the warranties fail of their essential purpose and, accordingly, recovery by Plaintiffs and Class Members is not restricted to the promises in those written warranties, and they seek all remedies that may be allowed.

227. Porsche has breached the terms of its express warranties with Plaintiffs and the Class Members.

228. As a direct and proximate result of Porsche's breach of Plaintiffs and the Class Members' express warranties, Plaintiffs and Class Members have suffered damages, including incidental, consequential, and other damages, including out-of-pocket costs required to return their Class Vehicle to a safe

condition, the costs of needed present and future repairs, an inability to use the Class Vehicles for their intended purpose, and diminution of resale value, in an amount to be determined at trial, and have received goods that are unreasonably dangerous and have substantially impaired value.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully request that this Court enter judgment against Defendant and in favor of Plaintiffs and the Class, and award the following relief:

A. An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as the representatives of the Class, and Plaintiffs' counsel as counsel for the Class;

B. Injunctive and equitable relief in the form of a comprehensive program to adequately repair or replace the batteries in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all members of the Class for all costs and economic losses;

C. Any other appropriate injunctive and equitable relief;

D. An order awarding compensatory damages for economic loss, overpayment, and out-of-pocket costs in an amount to be determined at trial;

E.     An order awarding restitution, disgorgement, punitive damages, treble damages, and exemplary damages, as permitted under applicable law;

F.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded, as required by applicable law;

G.     An award of costs, expenses and attorneys' fees as permitted by law; and

H.     Such other or further relief as the Court may deem appropriate, just, and equitable.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Respectfully submitted this 19th day of February, 2025.

*/s/ T. Brandon Waddell*
Michael A. Caplan
Georgia Bar No. 601039
T. Brandon Waddell
Georgia Bar No. 252639
Ashley C. Brown
**CAPLAN COBB LLC**
75 Fourteenth Street NE, Suite 2700
Atlanta, Georgia 30309
Tel: (404) 596-5600
Fax: (404) 596-5604
mcaplan@caplancobb.com
bwaddell@caplancobb.com
abrown@caplancobb.com

Rosemary M. Rivas
(*admitted pro hac vice*)
David Stein
(*admitted pro hac vice*)
Rosanne L. Mah
(*admitted pro hac vice*)
**GIBBS LAW GROUP LLP**
1111 Broadway, Suite 2100
Oakland, California 94607
Telephone: (510) 350-9700
Facsimile: (510) 350-9701
rmr@classlawgroup.com
ds@classlawgroup.com
rlm@classlawgroup.com

Kevin Landau
(*Pro hac vice forthcoming*)
Evan Rosin
(*Pro hac vice forthcoming*)
**TAUS, CEBULASH & LANDAU, LLP**
123 Williams Street, Suite 1900A
New York, New York 10038
Tel: (212) 931-0704
klandau@tcllaw.com
erosin@tcllaw.com

*Attorneys for Plaintiffs Miodrag Kukrika,
CeWyon Chandler-Ward, Timothy Williams,
Joshua Palefsky, and Gregg Lanez and the
Putative Class*

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

This 19th day of February, 2025.

/s/ T. Brandon Waddell
T. Brandon Waddell
Georgia Bar No. 252639

*Attorney for Plaintiffs Miodrag Kukrika, CeWyon Chandler-Ward, Timothy Williams, Joshua Palefsky, and Gregg Lanez and the Putative Class*