# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MIODRAG KUKRIKA, CeWYON
CHANDLER-WARD, TIMOTHY
WILLIAMS, JOSHUA PALEFSKY,
and GREGG LANEZ, individually
and on behalf of all others similarly
situated,

               Plaintiffs,

v.

Porsche Cars N.A., Inc.,

               Defendant.

Case No. 1:24-cv-05492-ELR

## DEFENDANT PORSCHE CARS NORTH AMERICA, INC.'S BRIEF IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' <u>AMENDED CLASS ACTION COMPLAINT</u>

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................1

II.     FACTUAL BACKGROUND...............................................4

III.    LEGAL STANDARD ..........................................................8

IV.     CHOICE OF LAW ..............................................................9

V.      ARGUMENT........................................................................13

 A. Counts I, II, and III Should Be Dismissed as to Kukrika and Lanez..13

  1. Counts I and II are Barred by the Economic Loss Rule. ..........13

  2. Counts I and II Also Fail Because There is No Special Relationship and No Duty to Disclose.....................................15

  3. Counts II and III Should be Dismissed as Time-Barred by the Applicable Statutes of Limitation. ......................................16

 B. Count III Should Be Dismissed as to Williams and Palefsky Because They Were Not in Privity with PCNA..................................21

 C. Count II Should Be Dismissed as to Chandler-Ward, Williams, and Palefsky Because They Only Assert Omissions Were Made. ............24

 D. Count VII Should Be Dismissed as to All Plaintiffs...........................25

  1. Design Defects are not Covered by the Express Warranty. .....25

  2. Plaintiffs Failed to Give PCNA Pre-Suit Notice and a Reasonable Opportunity to Cure the Alleged Defect. ..............25

 E. Count I Fails Because Plaintiffs Fail to Sufficiently Plead Facts Demonstrating PCNA's Intent to Defraud..........................................26

 F. Counts II and VI Fail Because Plaintiffs Do Not Sufficiently Allege Reliance on Any Misrepresentation by PCNA. ..................................28

 G. Counts I, IV, and V Fail Because Plaintiffs Do Not Sufficiently Allege PCNA's Presale Knowledge....................................................29

 H. Plaintiffs' Request for Injunctive and Equitable Relief Should be Dismissed Under the Doctrine of Primary Jurisdiction. .....................38

VI.     CONCLUSION....................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ali v. Fleet Fin., Inc. of Ga.*,
  500 S.E.2d 914 (Ga. Ct. App. 1998)....................................................25

*Am. Apparel USA, Ltd. Liab. Co. v. Forsythe Cosm. Grp., Ltd.*,
  2011 U.S. Dist. LEXIS 77537 (S.D.N.Y. July 7, 2011)....................27

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)........................................................................8, 9

*Baker v. City of Madison*,
  67 F.4th 1268 (11th Cir. 2023) .......................................................6, 8

*Baker v. GOSI Enters.*,
  830 S.E.2d 765 (Ga Ct. App. 2019)....................................................18

*Ball v. Kuenz GmbH*,
  742 F. Supp. 3d 1264 (N.D. Ga. 2024)...............................................20

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) .............................................36

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................8

*Bhatt v. Mercedes-Benz USA, LLC*,
  2018 U.S. Dist. LEXIS 214401, at *7 (C.D. Ca. April 16, 2018).....................24

*Bily v. Arthur Young & Co.*,
  3 Cal. 4th 370 (1992) .........................................................................28

*Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*,
  135 F.3d 750 (11th Cir. 1998) .............................................................9

*Bolling v. Mercedes-Benz USA, LLC*,
  713 F. Supp. 3d 1376 (N.D. Ga. 2024)...........................................9, 26

*Browning v. Am. Honda Motor Co.*,
  2022 U.S. Dist. LEXIS 48555 (N.D. Cal. Mar. 18, 2022) .................35

*Brunner v. Util. Fleet Sales, Ltd.*,
   2019 Pa. Dist. & Cnty. Dec. LEXIS 3713 (Ct. Comm. Pls. Oct. 2, 2019).........16

*Burr v. Sherwin Williams Co.*,
   42 Cal. 2d 682 (1954) ...................................................................................24

*Bussian v. DaimlerChrysler Corp.*,
   411 F. Supp. 2d 614 (M.D.N.C. 2006) ...............................................................40

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
   169 Cal. App. 4th 116 (2008) ........................................................................22

*Cho v. Hyundai Motor Co.*,
   636 F. Supp. 3d 1149 (C.D. Cal. 2022) .............................................................34

*Clemens v. DaimlerChrysler Corp.*,
   534 F.3d 1017 (9th Cir. 2008) .......................................................................21

*Coe v. Proskauer Rose, LLP*,
   878 S.E.2d 235 (Ga. 2022) ...........................................................................17

*Cohen v. Subaru of Am., Inc.*,
   2022 U.S. Dist. LEXIS 42511 (D.N.J. Mar. 10, 2022) .....................................16

*Crown Ford, Inc. v. Crawford*,
   473 S.E.2d 554 (Ga Ct. App. 1996)..................................................................28

*Curry v. TD Ameritrade, Inc.*,
   2015 U.S. Dist. LEXIS 191684 (N.D. Ga. June 29, 2015)..........................18, 19

*D'Addario v. Johnson & Johnson*,
   2023 U.S. Dist. LEXIS 8483 (D.N.J. Jan. 18, 2023)...........................................9

*Dantzler v. FCA U.S. LLC*,
   2022 U.S. Dist. LEXIS 202909 (D.N.J. Jan. 31, 2022)......................................27

*Deras v. Volkswagen Grp. of Am., Inc.*,
   2018 U.S. Dist. LEXIS 83553 (N.D. Cal. May 17, 2018).................................36

*Diaz v. FCA US LLC*,
   2022 U.S. Dist. LEXIS 158865 (D. Del. Sept. 2, 2022)....................................32

*Elfaridi v. Mercedes-Benz USA,*
    LLC, 2018 U.S. Dist. LEXIS 145196 (E.D. Mo. Aug. 27, 2018) ...............36, 37

*Frank Briscoe Co. v. Ga. Sprinkler Co.,*
    713 F.2d 1500 (11th Cir. 1983) ...................................................................10, 11

*Friedman v. Mercedes Benz USA LLC,*
    2013 U.S. Dist. LEXIS 187268 (C.D. Cal. June 12, 2013) ...............................29

*Garcia v. GM LLC,*
    2019 U.S. Dist. LEXIS 41955 (E.D. Cal. Mar. 14, 2019) ...........................27, 28

*Gibbs v. Ernst,*
    647 A.2d 882 (Pa. 1994) ..................................................................................30

*Goldston v. Bank of Am. Corp.,*
    577 S.E.2d 864 (Ga. Ct. App. 2003)..................................................................18

*Grodzitsky v. Am. Honda Motor Co.,*
    2013 U.S. Dist. LEXIS 33387 (C.D. Cal. Feb. 19, 2013) ................................31

*Hanlon v. Thornton,*
    462 S.E.2d 154 (Ga. Ct. App. 1995)..................................................................27

*Hanover Ins. Co. v. Ryan,*
    619 F. Supp. 2d 127 (E.D. Pa. 2007)..................................................................9

*Hindsman v. GM LLC,*
    2018 U.S. Dist. LEXIS 92319 (N.D. Cal. June 1, 2018)....................................25

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.,*
    2018 U.S. Dist. LEXIS 121185 (N.D. Ga. July 19, 2018) ....................19, 21, 25

*In re Carrier IQ, Inc., Consumer Priv. Litig.,*
    78 F. Supp. 3d 1051 (N.D. Cal. 2015)..........................................................23, 24

*In re Sony PS3 Other OS Litig.,*
    2011 U.S. Dist. LEXIS 16024 (N.D. Cal. Feb. 17, 2011)..................................23

*In re Subaru Battery Drain Prods. Liab. Litig.,*
    2021 U.S. Dist. LEXIS 62373 (D.N.J. Mar. 31, 2021) ......................................14

- iv -

*In re Takata Airbag Prods. Liab. Litig.*,
   396 F. Supp. 3d 1101 (S.D. Fla. 2019) ................................................................40

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices,*
   *& Prods. Liab. Litig.*,
   754 F. Supp. 2d 1145 (C.D. Cal. 2010) ..............................................................24

*Intellicig United States v. CN Creative, Ltd.*,
   2017 U.S. Dist. LEXIS 235128 (N.D. Ga. Mar. 6, 2017) ...................................25

*Jones v. Gen. Motors LLC*,
   2023 U.S. Dist. LEXIS 63757 (N.D. Ga. March 8, 2023) ...................................20

*Kaufman v. i-Stat Corp.*,
    754 A.2d 1188 (N.J. 2000) .................................................................................28

*Keegan v. Am. Honda Motor Co.*,
   838 F. Supp. 2d 929 (C.D. Cal. 2012) ................................................................29

*Kemp v. Bell-View, Inc.*,
   346 S.E.2d 923 (Ga. Ct. App. 1986).....................................................................18

*King v. Akima Glob. Servs., LLC*,
   775 F. App'x 617 (11th Cir. 2019) .........................................................................8

*Krise v. Sei/Aaron's, Inc.*,
   2017 U.S. Dist. LEXIS 133818 (N.D. Ga. Aug. 18, 2017) ...........................12, 16

*Lewis v. Mercedes-Benz U.S.*,
   530 F. Supp. 3d 1183 (S.D. Fla. 2021) ................................................................31

*Lopez v. Nissan N. Am., Inc.*,
   201 Cal. App. 4th 572 (2011) ..............................................................................24

*Lucker Mfg. v. Milwaukee Steel Foundry*,
   777 F. Supp. 413 (E.D. Pa. 1991).........................................................................13

*Manuel v. Convergys Corp.*,
   2004 U.S. Dist. LEXIS 29879 (N.D. Ga. Oct. 18, 2004) ....................................13

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013)............................................................17, 26

*McMahon v. Volkswagen Aktiengesellschaft*,
  2023 U.S. Dist. LEXIS 105309 (D.N.J. June 16, 2023)........................30, 35, 37

*Miller v. Allstate Ins. Co.*,
  489 F. Supp. 2d 1133 (S.D. Cal. 2007)...................................................9

*Nader v. Allegheny Airlines, Inc.*,
  426 U.S. 290 (1976)...........................................................................39

*nVision Global Tech. Sols., Inc. v. Cardinal Health 5, LLC*,
  887 F. Supp. 2d 1240 (N.D. Ga. 2012)................................................9

*Omnipol, A.S. v. Multinational Def. Servs., LLC*,
  32 F.4th 1298 (11th Cir. 2022) ..........................................................9

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999)...........................................................................13

*Osborne v. Subaru of Am., Inc.*,
  198 Cal. App. 3d 646 (1988) .............................................................22

*Oxford Asset Mgmt., Ltd. v. Jaharis*,
  297 F.3d 1182 (11th Cir. 2002) ...........................................................9

*Parker v. Perdue Foods, LLC*,
  2024 U.S. Dist. LEXIS 155882 (M.D. Ga. Aug. 29, 2024) .........................11, 12

*Paws Holdings v. Daikin Indus.*,
  2017 U.S. Dist. LEXIS 24684 (S.D. Ga. Feb. 22, 2017)...................................18

*Peterson v. Aaron's, Inc.*,
  2017 U.S. Dist. LEXIS 10117 (N.D. Ga. Jan. 24, 2017).........................11, 12, 16

*Ponzio v. Mercedes-Benz USA, LLC*,
  447 F. Supp. 3d 194 (D.N.J. 2020)...................................................14

*Quashie v. Olympus Am., Inc.*,
  315 F. Supp. 3d 1329 (N.D. Ga. 2018)...............................................9

*Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*,
  133 F.3d 1405 (11th Cir. 1998) .........................................................10

*Reilly Foam Corp. v. Rubbermaid Corp.*,
  206 F. Supp. 2d 643 (E.D. Pa. 2002) ............................................................14, 15

*Resnick v. Hyundai Motor Am., Inc.*,
  2016 U.S. Dist. LEXIS 160179 (C.D. Cal. Nov. 14, 2016) ...............................30

*Robertson v. Robertson*,
  778 S.E.2d 6 (Ga. Ct. App. 2015) ......................................................................18

*Roe v. Ford Motor Co.*,
  2021 U.S. Dist. LEXIS 114890 (E.D. Mich. June 21, 2021) .............................14

*Ruffin v. Fleetwood Motor Homes*,
  1997 U.S. Dist. LEXIS 19374 (E.D. Pa. Dec. 3, 1997)......................................25

*Saltiel v. GSI Consultants, Inc.*,
  788 A.2d 268 (N.J. 2002) ...................................................................................15

*Scattaglia v. Mercedes-Benz USA, LLC*,
  2021 U.S. Dist. LEXIS 239889 (D.N.J. Dec. 15, 2021)......................................26

*Schechter v. Hyundai Motor Am.*,
  2019 U.S. Dist. LEXIS 126021 (D.N.J. July 29, 2019) ......................................30

*Schechter v. Hyundai Motor Am.*,
  2020 U.S. Dist. LEXIS 55598 (D.N.J. Mar. 31, 2020) .......................................16

*Sevin v. Kelshaw*,
  611 A.2d 1232 (Pa. Super. Ct. 1992)..................................................................27

*Silvas v. GM, LLC*,
  2014 U.S. Dist. LEXIS 52979 (S.D. Tex. Apr. 17, 2014)............................39, 40

*Slade v. Chrysler Corp.*,
  36 F. Supp. 2d 1370 (M.D. Ga. 1998) ................................................................17

*Smith v. GM LLC*,
  988 F.3d 873 (6th Cir. 2021) .......................................................................31, 32

*Smith v. Ocwen Fin.*,
  488 F. App'x 426 (11th Cir. 2012) .....................................................................28

*Snowdy v. Mercedes-Benz USA, LLC*,
    2024 U.S. Dist. LEXIS 59302 (D.N.J. Apr. 1, 2024)......................31, 32, 35, 36

*Szep v. GM LLC*,
    491 F. Supp. 3d 280 (N.D. Ohio 2020) ..........................................................32, 35

*Tavistock Freebirds LLC v. Coca-Cola Co.*,
    883 S.E.2d 388 (Ga. Ct. App. 2023)....................................................................28

*Tharpe v. Hyundai Motor Am., Inc.*,
    2023 U.S. Dist. LEXIS 45613 (C.D. Cal. Mar. 16, 2023)...................................29

*Tijerina v. Volkswagen Grp. of Am., Inc.*,
    2023 U.S. Dist. LEXIS 187865 (D.N.J. Oct. 19, 2023) ......................................25

*Toto v. Bank of Am., N.A.*,
    2014 U.S. Dist. LEXIS 193001 (N.D. Ga. Nov. 7, 2014)....................................21

*United States v. Western Pac. R.R. Co.*,
    352 U.S. 59 (1956)..........................................................................................38, 39

*Vockie v. Gen. Motors Corp..*,
    66 F.R.D. 57 (E.D. Pa. 1975)................................................................................1

*Ward-Richardson v. FCA US LLC*,
    690 F. Supp. 3d 1372 (N.D. Ga. 2023)......................................................7, 33, 38

*Webb v. Volvo Cars of N.A., LLC*,
    2018 U.S. Dist. LEXIS 49095 (E.D. Pa. Mar. 26, 2016) ...................................28

*Weston v. Subaru of Am., Inc.*,
    2022 U.S. Dist. LEXIS 95799 (D.N.J. May 26, 2002)........................................15

*Whitaker v. Herr Foods, Inc.*,
    198 F. Supp. 3d 476 (E.D. Pa. 2016)..............................................................14, 15

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .............................................................................31

*Wilson v. Phillips*,
    495 S.E.2d 904 (Ga. Ct. App. 1998)....................................................................19

*Wiseberg v. Toyota Motor Corp.*,
  2012 U.S. Dist. LEXIS 45849 (D.N.J. Mar. 30, 2012) ......................................37

*Wong v. Am. Honda Motor Co.*,
  2024 U.S. App. LEXIS 3423 (9th Cir. Feb. 14, 2024)......................................24

*Zarrella v. Pac. Life Ins. Co.*,
  809 F. Supp. 2d 1357 (Aug. 22, 2011) .................................................................9

**RULES**

Fed. R. Civ. P. 23 ................................................................................................13

Fed. R. Evid. 201(b) .............................................................................................8

Local Rule 5.1B ...................................................................................................42

Local Rule 7.1D ...................................................................................................42

Fed. R. Civ. P. 9 ...............................................................................................9, 28

Fed. R. Civ. P. 12 .................................................................................................8

**STATUTES**

13 Pa. Cons. Stat. Ann. § 2313 *et seq.* .................................................................11

California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* .2, 9, 10,
  11

California's Unlawful Competition Law, Cal. Bus. & Prof. Code § 17200, *et
  seq.* ................................................................................................2, 9, 10, 11

Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.* .......3, 10, 11, 28

Motor Vehicle Safety Act, 49 U.S.C. § 30101 *et seq.* .............................................39

N.J. Stat. § 12A:2-313 *et seq.* ..............................................................................11

O.C.G.A. § 9-3-31 ...............................................................................................17

O.C.G.A. § 9-3-96 ..........................................................................................18, 19

O.C.G.A. § 11-2-313 *et seq.* ................................................................................11

O.C.G.A. § 23-2-58 ................................................................................................. 19

**OTHER AUTHORITIES**

49 C.F.R. § 577.1 *et seq.* ......................................................................................... 39

## I.   __INTRODUCTION__

Voluntary recalls of vehicles serve an important function: ensuring that manufacturers of motor vehicles investigate and address potential issues in their vehicles. *See, e.g.*, *Vockie v. Gen. Motors Corp.*, 66 F.R.D. 57, 61 (E.D. Pa. 1975) ("Manufacturers should not be inhibited in, or prejudiced by, a good faith effort to protect the public safety and comply with their statutory duty."). Significantly, this putative class action has not been filed against the entity that designed, developed, and manufactured the allegedly defective Taycan, nor the entity that supplied the allegedly defective 800V lithium-ion batteries, nor the independently-owned and operated dealers who sold those vehicles to the Plaintiffs.[1] Rather, Plaintiffs have sued Porsche Cars North America, Inc. ("PCNA"), the exclusive U.S. importer of the Taycan, and of relevance here, the entity implementing the ongoing voluntary recalls supervised by the National Highway Traffic Safety Administration ("NHTSA") related to Taycan batteries potentially short-circuiting. *See* Amended Class Action Complaint ("FAC"), Dkt. 24.

Plaintiffs bring this putative nationwide class action alleging PCNA "actively concealed," "failed to disclose," and "omitted material information about" the vehicles subject to these recalls. (FAC ¶¶ 60, 67; *see also* Part 573 Safety Recall

---

[1] Dr. Ing. h.c. F. Porsche AG ("Porsche AG") designs, develops, and manufactures Porsche vehicles, and LG Energy Solution WROCLAW sp. z o.o. supplied the allegedly defective battery modules used in Taycan vehicles.

Report ("Recall Report"), attached hereto as Ex. A, at p. 1). Because the recall remedy moots Plaintiffs' claims, in whole or in part, Plaintiffs **speculate** that the recall remedy is (and will be) insufficient. But Plaintiffs' desire to have the recall remedy of their choice rather than the NHTSA-approved recall offered by non-party Porsche AG, does not constitute a viable legal claim.

Plaintiffs incorrectly assert that this recall "do[es] not involve affirmatively replacing the Defective Battery or a definitive repair or replacement of battery modules in all the Class Vehicles now or on a specific date." (FAC ¶ 60). This is patently false: Any affected battery modules showing anomalies will be replaced through the recall, and software will be installed to monitor for any future anomalies. (Ex. A, Recall Report at p. 3). But even accepting Plaintiffs' allegations as true, they have failed to state a claim for relief.

Plaintiffs bring the following claims:

| Count I | Fraudulent concealment and omission |
|---|---|
| Count II | Negligent misrepresentation/omission |
| Count III | Breach of the implied warranty of merchantability |
| Count IV | California's Unlawful Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* (on behalf of Plaintiffs Williams and Palefsky only) |
| Count V | California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* (on behalf of Plaintiffs Williams and Palefsky only) |
| Count VI | Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-390 *et seq.* (on behalf of Plaintiff Chandler-Ward only) |
| Count VII | Breach of express warranty |

These claims fail for the following reasons:

*First*, Counts I, II, and III should be dismissed as to Plaintiffs Kukrika and Lanez because: (1) Counts I and II are barred by the economic loss rule; (2) Counts I and II fail because there is no special relationship between PCNA and these Plaintiffs and no duty to disclose; and (3) Counts II and III are time-barred by the applicable statutes of limitation.

*Second*, Count III should be dismissed as to Plaintiffs Williams and Palefsky because they were not in privity with PCNA.

*Third*, Count II should be dismissed as to Plaintiffs Chandler-Ward, Williams, and Palefsky because they only assert omissions, not affirmative misrepresentations.

*Fourth*, Count VII should be dismissed because: (1) the express warranty does not cover design defects and (2) Plaintiffs failed to give PCNA pre-suit notice and a reasonable opportunity to cure.

*Fifth*, Count I fails because Plaintiffs fail to sufficiently plead facts demonstrating PCNA's intent to defraud.

*Sixth*, Counts II and VI should be dismissed because Plaintiffs fail to sufficiently allege reliance on any misrepresentation by PCNA.

*Seventh*, Counts I, IV, and V should be dismissed because Plaintiffs do not sufficiently allege that PCNA knew of the alleged defect before Plaintiffs purchased their vehicles.

***Eighth***, Plaintiffs' request for injunctive and equitable relief "in the form of a comprehensive program to adequately repair or replace the batteries in all Class Vehicles, and/or buyback all Class Vehicles" (FAC at p. 87), should be dismissed in deference to NHTSA's ongoing recall under the doctrine of primary jurisdiction.

Thus, because these claims fail[2] and any further attempts at amendment would be futile, PCNA respectfully requests that the Court dismiss them with prejudice.

## II.    <u>FACTUAL BACKGROUND</u>

PCNA imports and distributes Porsche vehicles to be sold through a network of independent dealers in the United States, including the all-electric Taycan. (*See* FAC ¶ 19; *id.* at 7 n.6 (noting that PCNA "is the exclusive U.S. importer of" of Porsche vehicles)).  PCNA does not sell vehicles directly to consumers.

Plaintiff Miodrag Kukrika ("Kukrika"), a resident and citizen of Pennsylvania, alleges he purchased a new 2020 Taycan 4S on June 26, 2020, from Autohaus Lancaster, an independent Porsche dealership in Pennsylvania. (FAC ¶¶ 10, 69). Kukrika asserts that before buying his car, he spoke with the salesperson at the dealership about the Taycan's features who "never disclosed the Battery Defect to him or that the Battery Defect would materially affect his vehicle's capabilities or advertised features[.]" (*Id.* ¶ 69). Kukrika claims that in June 2024, an error message

---

[2] PCNA seeks dismissal of all claims except for Chandler-Ward's claim for breach of implied warranty of merchantability.

displayed in his vehicle, and he arranged for the vehicle to be taken to Porsche's facilities in Lancaster, where Porsche replaced cells in the battery. (*Id.* ¶¶ 71–72).

Plaintiff CeWyon Chandler-Ward ("Chandler-Ward"), a resident and citizen of Georgia, alleges she purchased a new 2022 Taycan, which was delivered on January 29, 2022, from Porsche Atlanta Perimeter, an independent Porsche dealership in Georgia. (*Id.* ¶¶ 11, 75). Plaintiff Timothy Williams ("Williams") and Joshua Palefsky ("Palefsky") (collectively "California Plaintiffs") are residents and citizens of California. (*Id.* ¶¶ 12–13). Williams alleges he purchased a certified pre-owned 2020 Taycan in June 2024 from Porsche Ontario, an independent Porsche dealership in California. (*Id.* ¶ 81). Palefsky alleges that he leased on June 28, 2024, and then purchased on November 9, 2024, a new 2023 Taycan from Porsche Marin, an independent Porsche dealership in California. (*Id.* ¶ 86). Plaintiff Gregg Lanez ("Lanez"), a resident and citizen of New Jersey, alleges he purchased a new 2020 Taycan 4S on September 5, 2020, from Jack Daniels Porsche, an independent Porsche dealership in New Jersey. (*Id.* ¶¶ 14, 93). Plaintiffs Chandler-Ward, Lanez, and the California Plaintiffs each claim that prior to purchase, they "researched and reviewed the representations and promotional materials . . . on the Internet, including the Porsche website, regarding [their vehicle's] advertised features." (*Id.* ¶¶ 76, 82, 87, 94). They also allege they contacted the independent Porsche dealers in their respective states to address the Battery Defect. (*Id.* ¶¶ 79, 84, 91, 97).

The Taycan is Porsche's first fully electric sports car. (*Id.* ¶ 19). The battery of a Taycan is made up of modules, which are groups of battery cells connected together to provide a higher voltage and capacity. (*Id.* ¶ 27). Plaintiffs allege that "[b]ecause [lithium-ion batteries] can store significant amounts of energy, they can overheat, which can result in a fire or explosion," and that "[o]verheating can result from short circuiting in a battery cell within the battery's module." (*Id.* ¶ 34). They allege the "Battery Defect in the Class Vehicles causes the modules to fail or short circuit" and "a short circuit . . . increases the risk of a fire or thermal event." (*Id.* ¶ 35). They further allege the Battery Defect is a "manufacturing defect present in the vehicles before they leave the plant and are ever driven." (*Id.* ¶ 44).

PCNA has initiated five recalls related to the risk of Taycan high-voltage batteries experiencing short circuits within the battery modules. (*See id.* ¶¶ 55–61). PCNA submitted the most recent recall (hereinafter "Recall No. ARB6/ARB7") to NHTSA—the federal agency responsible for managing vehicle recalls in the United States—on October 1, 2024. (*See* Ex. A, Recall Report).[3] Recall No. ARB6/ARB7

---

[3] Courts may consider documents incorporated into the complaint by reference and matters of which a court may take judicial notice. *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023). Plaintiffs discuss this recall in the First Amended Complaint, and it is central to their claims. (*See, e.g.*, FAC ¶¶ 60–61). PCNA also requests that the Court take judicial notice of this document. *See Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1375 n.2 (N.D. Ga. 2023) (taking judicial notice of certain documents created and distributed as part of a vehicle recall).

supplements the previous voluntary recalls initiated by PCNA (*id.* at 1–2) and is the recall applicable to the Plaintiffs' vehicles (FAC ¶¶ 74, 78, 83, 89–90, 96).

Pursuant to Recall No. ARB6/ARB7, on-board diagnostic software will be installed to detect any future battery module anomalies. (Ex. A, Recall Report at p. 3). Prior to installing the on-board diagnostic software, the high-voltage battery modules will be analyzed. (*Id.*). If this analysis shows anomalies, then the affected high-voltage battery module will be replaced prior to the installation of the on-board diagnostic software. (*Id.*). The on-board diagnostic software will use data analytics to detect future anomalies in high-voltage battery modules. (*Id.*).  If an anomaly is detected, the vehicle will display a warning message and will limit the high-voltage battery charging capacity, and PCNA will replace the affected high-voltage battery modules. (*Id.*). As the high-voltage battery consists of several modules, it is possible that some modules need replacement, but not others. (*Id.*).

The express warranty applicable to Plaintiffs' vehicles is outlined in the Warranty and Customer Information Booklet for the Model Year 2020 Taycan ("Warranty Booklet"), attached hereto as Ex. B.[4] The express warranty states:

---

[4] The Court may consider this document because it is referenced by Plaintiffs in the Complaint and central to their claims for breach of express warranty and breach of the implied warranty of merchantability. (*See* FAC ¶ 161 (alleging PCNA extended an express warranty to Plaintiffs and Class members); *id.* ¶¶ 207–228 (alleging PCNA breached the express warranty)); *see also Baker*, 67 F.4th at 1276. Additionally, PCNA requests that the Court consider this document by taking

> PCNA requires that you first provide PCNA itself with direct written notice of any alleged unrepaired defect or malfunction, or any other dissatisfaction you have experienced with your vehicle so that PCNA itself has the opportunity to cure the problem or dissatisfaction. Giving PCNA itself this direct notice and opportunity to cure enables us to supplement prior efforts by our authorized dealers so any ongoing problem can be resolved or the dissatisfaction addressed by us.

(*Id.* at p. 1). The express warranty also states that it "does not cover defects based on design." (*Id.* at p. 4).

## III.  <u>LEGAL STANDARD</u>

In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "[t]wo working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. "[C]onclusory allegations, unwarranted deductions of facts or

---

judicial notice of it. *See King v. Akima Glob. Servs., LLC*, 775 F. App'x 617, 621 (11th Cir. 2019) ("A court may take judicial notice of a fact that is not subject to reasonable dispute when . . . [it] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. (citing Fed. R. Evid. 201(b))).

legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Additionally, "[t]o survive a motion to dismiss, claims [sounding in] fraud must satisfy the requirements of Rule 9(b)." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1307 (11th Cir. 2022). That means Plaintiffs "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see also Bolling v. Mercedes-Benz USA, LLC*, 713 F. Supp. 3d 1376, 1402 (N.D. Ga. 2024). Rule 9(b)'s heightened pleading standard applies to Plaintiffs' claims for fraudulent concealment or omission,[5] negligent misrepresentation/omission,[6] and violations of the CLRA and UCL.[7]

## IV.    CHOICE OF LAW

Federal courts sitting in diversity apply the forum state's choice-of-law rules. *nVision Global Tech. Sols., Inc. v. Cardinal Health 5, LLC*, 887 F. Supp. 2d 1240, 1271 (N.D. Ga. 2012) (citing *Boardman Petrol., Inc. v. Federated Mut. Ins. Co.*, 135 F.3d 750, 752 (11th Cir. 1998)). Here, applying Georgia's choice of law rules, the

---

[5] *See, e.g.*, *Omnipol*, A.S., 32 F.4th at 1307.

[6] *See, e.g.*, *Quashie v. Olympus Am., Inc.*, 315 F. Supp. 3d 1329, 1340 n.7 (N.D. Ga. 2018); *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 142 (E.D. Pa. 2007); *D'Addario v. Johnson & Johnson*, 2023 U.S. Dist. LEXIS 8483, at *16 (D.N.J. Jan. 18, 2023); *Miller v. Allstate Ins. Co.*, 489 F. Supp. 2d 1133, 1139 (S.D. Cal. 2007).

[7] *See Bolling*, 713 F. Supp. 3d at 1411 (applying Rule 9(b) to CLRA claim); *Zarrella v. Pac. Life Ins. Co.*, 809 F. Supp. 2d 1357, 1365 n.4 (Aug. 22, 2011) (applying Rule 9(b) to UCL claim).

laws of Plaintiffs' states of residence will govern their claims. Below is a chart outlining the law that should apply to each claim:

| COUNT | Kukrika | Chandler-Ward | Williams & Palefsky | Lanez |
|---|---|---|---|---|
| **Count I: Fraudulent Concealment and Omission** | Pennsylvania | Georgia | California | New Jersey |
| **Count II: Negligent Misrepresentation/ Omission** | Pennsylvania | Georgia | California | New Jersey |
| **Count III: Breach of the Implied Warranty of Merchantability** | Pennsylvania | Georgia | California | New Jersey |
| **Count IV: UCL** | N/A | N/A | California | N/A |
| **Count V: CLRA** | N/A | N/A | California | N/A |
| **Count VI: GFBPA** | N/A | Georgia | N/A | N/A |
| **Count VII: Breach of Express Warranty** | Pennsylvania | Georgia | California | New Jersey |

In analyzing choice of law, Georgia courts apply the rules of *lex loci contractus* (contract disputes are governed by the "substantive law of the state where the contract was made") and *lex loci delecti* (tort disputes are "governed by the substantive law of the state where the tort was committed"). *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1409 (11th Cir. 1998). Georgia's choice-of-law analysis is unique, however, in that, typically, "the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes." *Frank Briscoe Co. v. Ga. Sprinkler Co.*, 713 F.2d 1500, 1503 (11th Cir. 1983). But, while "Georgia law is the default" for claims arising under common law,

- 10 -

"that does not end the analysis." *Parker v. Perdue Foods, LLC*, 2024 U.S. Dist.
LEXIS 155882, at *17 (M.D. Ga. Aug. 29, 2024). Georgia courts will refrain from
applying Georgia law if its application would be inconsistent with due process. *See
id.; Peterson v. Aaron's, Inc.*, 2017 U.S. Dist. LEXIS 10117, at *14 (N.D. Ga. Jan.
24, 2017).

Counts III through VII are all created by statute:

| COUNT | Statute(s) |
|---|---|
| **Count III: Breach of Implied Warranty of Merchantability** | 13 Pa. Cons. Stat. Ann. § 2314; O.C.G.A. § 11-2-314; Cal. Com. Code § 2314; N.J. Stat. § 12A:2-314. |
| **Count IV: UCL** | Cal. Bus. & Prof. Code § 17200 *et seq.* |
| **Count V: CLRA** | Cal. Civ. Code § 1750 *et seq.* |
| **Count VI: GFBPA** | O.C.G.A. § 10-1-390 *et seq.* |
| **Count VII: Breach of Express Warranty** | 13 Pa. Cons. Stat. Ann. § 2313 *et seq.*; O.C.G.A. § 11-2-313 *et seq.*; Cal. Com. Code § 2313 *et seq.*; N.J. Stat. § 12A:2-313 *et seq.* |

Accordingly, each Plaintiff's home state's law applies to these claims. *See Frank
Briscoe Co.*, 713 F.2d at 1503; (FAC ¶¶ 10–14 (Plaintiffs' states of residence)).

Plaintiffs' common law claims (Counts I and II) are likewise governed by the
laws of each Plaintiff's home state because it would violate due process to apply
Georgia law to the claims of the non-Georgia plaintiffs. To apply Georgia law
consistent with due process, Georgia must have "significant contact or significant
aggregation of contacts to the claims asserted by each [member of the plaintiff class],
contacts creating state interests, in order to ensure that the choice of [Georgia] law

- 11 -

is not arbitrary or unfair." *See Krise v. Sei/Aaron's, Inc.*, 2017 U.S. Dist. LEXIS 133818, at *23 (N.D. Ga. Aug. 18, 2017). It is not sufficient that PCNA maintains its headquarters in Georgia. *See, e.g.*, *Peterson*, 2017 U.S. Dist. LEXIS 10117, at *15. Instead, for Georgia law to apply to the non-Georgia Plaintiffs, they must show that they "interacted with Georgia in a significant way, in relation to the underlying claims." *Parker*, 2024 U.S. Dist. LEXIS 155882, at *19.

Here, Georgia law can permissibly be applied to the claims of Chandler-Ward, who is a resident and citizen of Georgia, purchased her vehicle in Georgia, and contacted a dealership in Georgia to repair her battery. (*See* FAC ¶¶ 11, 75, 79). But the claims of the non-Georgia Plaintiffs have no connection to Georgia and instead center in their states of residence. These Plaintiffs reside in and are citizens of California, New Jersey, and Pennsylvania; viewed and/or relied on materials or statements in those states; purchased their vehicles in those states; and contacted dealers in those states to address the alleged defect. (*See* FAC ¶¶ 10, 12–14, 64–65, 67, 81, 84, 86, 91, 93, 97). Moreover, there are no allegations that the vehicles or batteries were designed, developed, or manufactured in Georgia, nor could there be because PCNA did not design, develop, or manufacture the vehicles or batteries at issue. Because all the conduct relevant to the non-Georgia Plaintiffs' claims occurred outside of Georgia, the application of Georgia law would be inconsistent with due process, arbitrary, and unfair. *See Krise*, 2017 U.S. Dist. LEXIS 133818, at *23–24.

Further, applying Georgia law to these non-Georgia Plaintiffs' claims would offend the public policy against forum-shopping by improperly allowing them to take advantage of more favorable laws that have no connection to their claims. *See Manuel v. Convergys Corp.*, 2004 U.S. Dist. LEXIS 29879, at *9 (N.D. Ga. Oct. 18, 2004) (holding forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action). Accordingly, each Plaintiff's home state's laws govern Counts I and II.[8]

## V.   ARGUMENT

### A. Counts I, II, and III Should Be Dismissed as to Kukrika and Lanez

#### 1.   Counts I and II are Barred by the Economic Loss Rule.

Both Pennsylvania and New Jersey adhere to the economic loss rule. Under Pennsylvania's economic loss rule, where a product injured only itself, and not any person or other property, the loss was purely economic, and any claim arising out of the loss sounded in contract—not tort. *See Lucker Mfg. v. Milwaukee Steel Foundry*, 777 F. Supp. 413, 414 (E.D. Pa. 1991). Similarly, under New Jersey law, the economic loss rule "preclude[s] plaintiffs from recovering under fraud and other

---

[8] To the extent the Court disagrees, given that no discovery has occurred, PCNA respectfully requests that the Court's choice of law ruling be without prejudice to PCNA's right to argue at a later stage of the case (including at summary judgment and/or class certification) that the laws of the states of residence of the Plaintiffs (and putative class members) apply. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845 (1999) (holding that, under the Rules Enabling Act, Fed. R. Civ. P. 23 cannot "abridge, enlarge or modify any substantive right") (internal quotation marks omitted).

intentional tort theories of liability where the tort claims are based on the same facts as the breach of contract claims." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194 , 236 (D.N.J. 2020).

Under this doctrine, courts applying Pennsylvania and New Jersey law routinely dismiss fraudulent concealment and negligent misrepresentation/omission claims. *See, e.g.*, *Whitaker v. Herr Foods, Inc.*, 198 F. Supp. 3d 476, 490–92 (E.D. Pa. 2016) (dismissing fraud and negligent misrepresentation claims); *In re Subaru Battery Drain Prods. Liab. Litig.*, 2021 U.S. Dist. LEXIS 62373, at *87 (D.N.J. Mar. 31, 2021) (dismissing fraudulent concealment claim); *Roe v. Ford Motor Co.*, 2021 U.S. Dist. LEXIS 114890, at *34 (E.D. Mich. June 21, 2021) (explaining that, based on New Jersey case law, "the economic-loss doctrine bars negligent-misrepresentation claims") (collecting cases). The same result follows here, because Kukrika and Lanez seek purely economic damages and do not allege personal injury or damage to other property. (*See* FAC ¶¶ 133, 152 (alleging Plaintiffs' economic losses under Counts II and III)).

There is an exception to Pennsylvania's economic loss rule where "a defendant committed fraud to induce another to enter a contract." *See Reilly Foam Corp. v. Rubbermaid Corp.*, 206 F. Supp. 2d 643, 658 (E.D. Pa. 2002). This inducement exception does not save Kukrika's claims, however, because it is only available when a party makes a representation ***extraneous*** to the contract; it is not

applicable when the representations **_concern the subject matter of the contract_** or the party's performance. *See id.* at 659. All of PCNA's alleged misrepresentations and omissions concern the subject matter of the express warranty, so the inducement exception does not apply. *See Whitaker*, 198 F. Supp. 3d at 491 ("Plaintiff's economic losses are therefore based on and flow from his loss of the benefit of his bargain and his disappointed expectations as to the products he purchased. This harm is precisely that which a warranty action seeks to redress.").

New Jersey recognizes an exception to the economic loss rule for affirmative fraudulent misrepresentations, but that exception does not apply to claims of fraudulent concealment or omission. *Weston v. Subaru of Am., Inc.*, 2022 U.S. Dist. LEXIS 95799, at *19 (D.N.J. May 26, 2002). Because Lanez only alleges fraudulent concealment—not affirmative fraudulent misrepresentations—this exception does not apply. (*See* FAC ¶¶ 115–33). Additionally, while a tort remedy may arise from a contractual relationship under New Jersey law where the breaching party owes an independent duty imposed by law, Lanez has failed to sufficiently plead that PCNA owed him any duty independent of the express warranty. *See Saltiel v. GSI Consultants, Inc.*, 788 A.2d 268, 280 (N.J. 2002).

### 2. Counts I and II Also Fail Because There is No Special Relationship and No Duty to Disclose.

Both New Jersey and Pennsylvania courts have expressly precluded negligent misrepresentation claims absent a "special relationship." *See Schechter v. Hyundai*

*Motor Am.*, 2020 U.S. Dist. LEXIS 55598, at *45–46 (D.N.J. Mar. 31, 2020); *see also Brunner v. Util. Fleet Sales, Ltd.*, 2019 Pa. Dist. & Cnty. Dec. LEXIS 3713, *14–15 (Pa. Ct. Comm. Pls. Oct. 2, 2019). As courts in these states recognize, there is no "special relationship" between a buyer and seller (let alone distributor) of a product. *See Schechter*, 2020 U.S. Dist. LEXIS 55598, at *48. Similarly, New Jersey and Pennsylvania fraudulent concealment claims require a fiduciary or confidential relationship to impose a duty to disclose, which does not exist in arms-length transactions. *Cohen v. Subaru of Am., Inc.*, 2022 U.S. Dist. LEXIS 42511, at *53–54, *64 (D.N.J. Mar. 10, 2022) (dismissing fraudulent concealment claim under New Jersey and Pennsylvania law).

### 3. Counts II and III Should be Dismissed as Time-Barred by the Applicable Statutes of Limitation.

"Under Georgia choice of law, foreign statutes of limitations are procedural in nature. Thus, a federal court sitting in diversity applies the applicable Georgia statute of limitations and tolling provision." *See Krise*, 2017 U.S. Dist. LEXIS 133818, at *16 n.89 (citations omitted).[9] Georgia's statutes of limitation for negligent misrepresentation and breach of implied warranty claims are four years

---

[9] PCNA reserves its right to challenge the application of Georgia's statutes of limitations to the putative nationwide class. *See, e.g.*, *Peterson*, 2017 U.S. Dist. LEXIS 10117, at *14–15, *18 (holding that foreign states' substantive law applied to non-Georgia class members and pointing to different limitations periods as an example of state law variations precluding a finding of predominance).

after the right of action accrues. *See* O.C.G.A. §§ 9-3-31 (negligent misrepresentation), 11-2-725 (implied warranty). "The cause of action accrues when a plaintiff could ***first*** institute and maintain her action to a successful result." *Slade v. Chrysler Corp.*, 36 F. Supp. 2d 1370, 1372 (M.D. Ga. 1998) (emphasis added).

Kukrika and Lanez assert that their claims arise from PCNA's alleged conduct before or at the time they purchased their vehicles, and that they would not have purchased their vehicles (or would have paid less for them) had the omitted information been disclosed. (FAC ¶¶ 77, 95). As a result, Kukrika's and Lanez's negligent misrepresentation and breach of implied warranty claims accrued on the date they purchased their vehicles. *See Coe v. Proskauer Rose, LLP*, 878 S.E.2d 235, 243 (Ga. 2022) (holding that negligent misrepresentation claim accrued at the time the plaintiff did not receive the benefit of his bargain as a result of the misrepresentation); *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1361 (N.D. Ga. 2013) ("[I]mplied-warranty claims accrued when their vehicles were first sold").

Kukrika, who purchased his vehicle on June 26, 2020 (FAC ¶ 10), had until June 26, 2024, to file suit on these causes of action. Lanez purchased his vehicle on September 5, 2020 (*id.* ¶ 14), and had until September 5, 2024, to file these causes of action. But the original Complaint was not filed until November 29, 2024. (Dkt. 1). Accordingly, these claims are presumptively time-barred. *See Baker v. GOSI Enters.*, 830 S.E.2d 765, 769–70 (Ga Ct. App. 2019) (negligent misrepresentation

claim time-barred); *Paws Holdings v. Daikin Indus.*, 2017 U.S. Dist. LEXIS 24684, at *41 (S.D. Ga. Feb. 22, 2017) (implied warranty claim time-barred).

Moreover, the statute of limitations was not tolled. Under Georgia law, "[i]f the defendant [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." *See* O.C.G.A. § 9-3-96. Georgia courts have consistently held that this tolling exception must be "strictly construed." *See Kemp v. Bell-View, Inc.*, 346 S.E.2d 923, 924 (Ga. Ct. App. 1986). Where the underlying action is ***not*** a claim of fraud, such as claims for negligence or breach of warranty, the limitations period may be tolled ***only where*** the plaintiff shows: "(1) [a separate and independent] actual fraud involving moral turpitude, or (2) a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence." *Curry v. TD Ameritrade, Inc.*, 2015 U.S. Dist. LEXIS 191684, at *47 (N.D. Ga. June 29, 2015) (citing *Goldston v. Bank of Am. Corp.*, 577 S.E.2d 864, 868–69 (Ga. Ct. App. 2003)). The party alleging fraud has the "burden of showing the existence of facts that would toll the statute of limitation." *See Robertson v. Robertson*, 778 S.E.2d 6, 10 (Ga. Ct. App. 2015). Furthermore, these allegations must be pleaded with particularity. *See In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2018 U.S. Dist. LEXIS 121185, at *13 (N.D. Ga. July 19, 2018). Because Kukrika and Lanez do not allege a confidential relationship

between themselves and PCNA or facts to support the conclusion that such relationship exists,[10] they must establish a separate and independent actual fraud involving moral turpitude to toll the statute of limitation for Counts II and III. *See Curry*, 2015 U.S. Dist. LEXIS 191684, at *47 (citation omitted). Their allegations are insufficient.

They allege that any statutes of limitations for their claims are "tolled by Defendant's knowing and active concealment of the Battery Defect in the Class Vehicles." (FAC ¶ 100). But concealing a cause of action, even if done with fraudulent intent, does not amount to a separate and independent actual fraud. "To establish a separate and independent actual fraud, Plaintiff must show that the defendant concealed information by an ***intentional act***—something ***more than a mere failure, with fraudulent intent, to disclose*** such conduct." *Curry*, 2015 U.S. Dist. LEXIS 191684, at *47–48 (emphasis added) (citation omitted).[11] Here, Kukrika and Lanez do not point to even one specific example of an intentional or

---

[10] *See* O.C.G.A. § 23-2-58 (defining confidential relationships as those "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as . . . fiduciary relationships").

[11] *See also Wilson v. Phillips*, 495 S.E.2d 904, 905 (Ga. Ct. App. 1998) ("Moreover, to toll the statute of limitation under O.C.G.A. § 9-3-96, the concealment of a cause of action ***must be by positive affirmative act, not by mere silence***.") (emphasis added); *Ball v. Kuenz GmbH*, 742 F. Supp. 3d 1264, 1269 (N.D. Ga. 2024) ("Plaintiff's allegations that the Kuenz Defendants concealed risks associated with the crane do not constitute actual fraud.").

affirmative act to conceal on the part of PCNA, and their unsupported and conclusory allegations that PCNA's concealment was "knowing and active" are not enough to show actual fraud. Instead, these allegations are precisely the types of "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" which do not suffice to state a claim which is plausible on its face. *See Jones v. Gen. Motors LLC*, 2023 U.S. Dist. LEXIS 63757, at *10 (N.D. Ga. March 8, 2023) (finding statute of limitations was not tolled) (citations omitted).

Moreover, even if Kukrika and Lanez had pled a separate and independent actual fraud, they still needed to "show how this alleged fraud concealed [their] cause[s] of action." *Ball*, 742 F. Supp. 3d at 1270. To constitute concealment of a cause of action, "some trick or artifice must be employed to prevent inquiry or elude investigation, or to mislead and hinder the party who has the cause of action from obtaining information, and the acts relied on must be of an affirmative character and fraudulent." *Id.* But here, Kukrika and Lanez do not allege that PCNA used any such "trick or artifice" to conceal their causes of action, nor do they describe how any alleged actual fraud on the part of PCNA concealed their causes of action. They claim PCNA "kept Plaintiff and all Class members ignorant of vital information essential to the pursuant of their claim," (FAC ¶ 100), but the FAC is devoid of any factual allegations showing how PCNA's alleged conduct deterred or debarred them from discovering the acts on which their causes of action are based. Absent such

allegations, they have failed to meet their burden to establish that the statutes of limitations should be tolled.

Because Kukrika and Lanez have failed to allege with any preciseness the intentional or affirmative acts that PCNA undertook to conceal the alleged defect, their "allegations fall far short of pleading the alleged fraud with the required particularity, and thus are insufficient to toll the statute of limitations. This is especially true given the fact that this exception to statute of limitations is narrowly construed." *In re Atlas Roofing Corp.*, 2018 U.S. Dist. LEXIS 121185, at *14; *see also Toto v. Bank of Am., N.A.*, 2014 U.S. Dist. LEXIS 193001, at *10 (N.D. Ga. Nov. 7, 2014). Accordingly, for the reasons stated above, Counts I, II, and III should be dismissed as to Kukrika and Lanez.

### B. Count III Should Be Dismissed as to Williams and Palefsky Because They Were Not in Privity with PCNA.

Under California law, a plaintiff asserting a claim for breach of implied warranty must be in vertical privity with the defendant. *See, e.g.*, *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). California Plaintiffs' breach of implied warranty claims fail because there is no privity between them and PCNA since PCNA is the distributor and not the manufacturer. (FAC at 7 n.6); *see also Osborne v. Subaru of Am., Inc.*, 198 Cal. App. 3d 646, 656 n.6 (1988) ("The term vertical privity refers to links in the chain of distribution of goods . . . the

distributor is normally in vertical privity with the manufacturer, and the ultimate retail buyer is normally in vertical privity with the dealer.").

California Plaintiffs allege that they are in privity with PCNA (or that privity is not required) because: (1) they had sufficient direct dealings with PCNA or its agents; (2) PCNA provided express warranties to Plaintiffs; (3) PCNA made direct representations to Plaintiffs regarding the safety of Class Vehicles; (4) Plaintiffs are intended third-party beneficiaries; and (5) the Class Vehicles are dangerous instrumentalities. (*See* FAC ¶¶ 159–63). While California recognizes various exceptions to the privity requirement for implied warranty claims, California Plaintiffs' allegations are insufficient to qualify for any of these exceptions.

***First***, California Plaintiffs do not meet the direct dealings exception. While "direct dealings between a purchaser and manufacturer after the purchase are generally insufficient to create an exception to the privity requirement," where the manufacturer "essentially adopts and benefits from the initial sales negotiations and there are ***numerous direct dealings*** between the parties, the requisite privity can be established." *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 143 (2008) (emphasis added). Although California Plaintiffs allege that they have had "sufficient direct dealings" to establish privity of contract (FAC ¶ 159), they do not allege how many direct dealings they had, nor that there were numerous direct dealings as required by California law. Further, they fail to allege any facts regarding

their supposed "direct dealings" with PCNA nor any of the factual elements for agency to establish their allegation that they have had "sufficient direct dealings" with PCNA's agents. (FAC ¶ 159); *see also In re Carrier IQ, Inc., Consumer Priv. Litig.*, 78 F. Supp. 3d 1051, 1105–06 (N.D. Cal. 2015)

***Second***, California Plaintiffs' allegations that they are in privity with PCNA because of the warranties PCNA agreed to and extended to them (FAC ¶¶ 160–61), do not save this claim. California's privity requirement for an implied warranty claim is not "relaxed" simply because Plaintiffs also assert an express warranty claim. *In re Sony PS3 Other OS Litig.*, 2011 U.S. Dist. LEXIS 16024, at *13 (N.D. Cal. Feb. 17, 2011) (explaining that relaxing the privity requirement where a plaintiff alleged reliance on an express warranty is "not consistent with clear California precedent that privity remains a requirement in implied warranty claims").

***Third***, California Plaintiffs' allegation that PCNA made direct representations to them regarding the safety of Class Vehicles (FAC ¶ 161) does not excuse the privity requirement. Not only is this allegation conclusory, but the only alleged representation regarding safety pled in the FAC is in PCNA's advertising. (*See* FAC ¶ 28). And although there is an advertising exception to the privity requirement, the California Supreme Court has explicitly held that this exception is "only applicable to express warranties." *Bhatt v. Mercedes-Benz USA, LLC*, 2018 U.S. Dist. LEXIS

214401, at *7 (C.D. Cal. Apr. 16, 2018) (citing *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 696 (1954)).

**Fourth**, California Plaintiffs' allegation that privity is not required because they are the intended third-party beneficiaries (FAC ¶ 162) fails because they do not allege the facts of the underlying putative contracts of which they purport to be intended third-party beneficiaries. *See Carrier IQ*, 78 F. Supp. 3d at 1106; *see also Wong v. Am. Honda Motor Co.*, 2024 U.S. App. LEXIS 3423, at *3 (9th Cir. Feb. 14, 2024).

**Fifth**, California Plaintiffs' allegation that privity is not required under the dangerous instrumentality exception (FAC ¶ 163) fails because they have only alleged economic losses and no personal injuries. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185–86 (C.D. Cal. 2010) (declining to apply "dangerous instrumentalities" exception in economic loss case involving alleged defects in plaintiffs' vehicles). Thus, Count III must be dismissed as to the California Plaintiffs.

### C. Count II Should Be Dismissed as to Chandler-Ward, Williams, and Palefsky Because They Only Assert Omissions Were Made.

Under California law, a "negligent misrepresentation claim 'requires a positive assertion,' not merely an omission." *Lopez v. Nissan N. Am., Inc.*, 201 Cal. App. 4th 572, 596 (2011). Federal courts have interpreted Georgia law to require the same. *See Intellicig U.S. v. CN Creative, Ltd.*, 2017 U.S. Dist. LEXIS 235128, at

*24 n.6 (N.D. Ga. Mar. 6, 2017); *Ali v. Fleet Fin., Inc. of Ga.*, 500 S.E.2d 914, 915 (Ga. Ct. App. 1998). Because no California or Georgia Plaintiff cites a specific assertion PCNA made concerning the alleged Battery Defect, their negligent misrepresentation claims fail as a matter of law.

### D. <u>Count VII Should Be Dismissed as to All Plaintiffs.</u>

#### 1. Design Defects are not Covered by the Express Warranty.

The express warranty "does not cover defects based on design." (Ex. B, Warranty Booklet at p. 4). Therefore, to the extent Plaintiffs are asserting a design defect, it should be dismissed as disclaimed by the express warranty. *See Ruffin v. Fleetwood Motor Homes*, 1997 U.S. Dist. LEXIS 19374, at *16 (E.D. Pa. Dec. 3, 1997); *In re Atlas Roofing Corp.*, 2018 U.S. Dist. LEXIS 121185, at *5–6; *Hindsman v. GM LLC*, 2018 U.S. Dist. LEXIS 92319, at *23–24 (N.D. Cal. June 1, 2018); *Tijerina v. Volkswagen Grp. of Am., Inc.*, 2023 U.S. Dist. LEXIS 187865, at *39 (D.N.J. Oct. 19, 2023).

#### 2. Plaintiffs Failed to Give PCNA Pre-Suit Notice and a Reasonable Opportunity to Cure the Alleged Defect.

Plaintiffs' breach of express warranty claims should be dismissed because they failed to provide PCNA with direct written notice and a reasonable opportunity to cure as required by the express warranty. The express warranty states: "PCNA requires that you first provide PCNA itself with direct written notice of any alleged unrepaired defect or malfunction, or any other dissatisfaction you have experienced

with your vehicle so that PCNA itself has the opportunity to cure the problem or dissatisfaction." (Ex. B, Warranty Booklet at p. 1). Courts addressing virtually identical language have concluded that plaintiffs must give direct notice to the defendant before filing suit for breach of warranty. *See, e.g.*, *Bolling*, 713 F. Supp. 3d at 1395–96 ("Since the Plaintiffs Dedman and Phlegar have not alleged that they informed MBUSA (as opposed to their dealers) of the defect prior to this lawsuit, the Court will dismiss those Plaintiffs' express warranty claim."); *Scattaglia v. Mercedes-Benz USA, LLC*, 2021 U.S. Dist. LEXIS 239889, at *28–29 (D.N.J. Dec. 15, 2021).

None of the Plaintiffs allege that they provided PCNA with direct written notice of the alleged defect so that PCNA had an opportunity to cure the problem. And notifying an authorized dealer is not sufficient notice to PCNA. *See, e.g., Bolling*, 713 F. Supp. 3d at 1395 ("The notion that notifying an authorized dealer is sufficient to notify MBUSA of the defect has been 'considered and rejected.'"); *McCabe*, 948 F. Supp. 2d at 1359-60. Therefore, the Court should dismiss Plaintiffs' breach of express warranty claims.

### E. **Count I Fails Because Plaintiffs Fail to Sufficiently Plead Facts Demonstrating PCNA's Intent to Defraud.**

To state a claim for fraudulent concealment, Plaintiffs must allege intent to defraud. *Hanlon v. Thornton*, 462 S.E.2d 154, 156 (Ga. Ct. App. 1995); *Sevin v. Kelshaw*, 611 A.2d 1232, 1236 (Pa. Super. Ct. 1992); *Garcia v. GM LLC*, 2019 U.S.

Dist. LEXIS 41955, at *20–21 (E.D. Cal. Mar. 14, 2019); *Dantzler v. FCA U.S. LLC*, 2022 U.S. Dist. LEXIS 202909, at *8 (D.N.J. Jan. 31, 2022). While intent may be pled generally, to survive a motion to dismiss, a plaintiff must still have "pleaded facts demonstrating . . . intent to defraud." *Garcia*, 2019 U.S. Dist. LEXIS 41955, at *16 (citation omitted). In the absence of specific factual allegations establishing motive and opportunity, which Plaintiffs have not adequately alleged here, a plaintiff must allege "facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Am. Apparel USA, Ltd. Liab. Co. v. Forsythe Cosm. Grp., Ltd.*, 2011 U.S. Dist. LEXIS 77537, at *8 (S.D.N.Y. July 7, 2011).

In *Garcia*, for example, the court rejected conclusory, "boilerplate language pleading GM's intent to defraud," which was "not supported with sufficient factual bases." 2019 U.S. Dist. LEXIS 41955, at *17, *27–28, *30. Here too, Plaintiffs have not alleged any specific facts that would demonstrate PCNA's intent to defraud. Plaintiffs also have not alleged strong circumstantial evidence of "conscious misbehavior" on PCNA's part. Instead, as in *Garcia*, Plaintiffs repeatedly rely on conclusory allegations that PCNA "knowingly" concealed facts with the "intent to deceive." (FAC ¶¶ 101, 126, 171, 199). These formulaic labels and conclusions are insufficient to transform Plaintiffs' disappointed expectations with their vehicles into a fraudulent scheme. *See Garcia*, 2019 U.S. Dist. LEXIS 41955, at *17, *27–28, *30.

**F. Counts II and VI Fail Because Plaintiffs Do Not Sufficiently Allege Reliance on Any Misrepresentation by PCNA.**

Under Pennsylvania, California, New Jersey, and Georgia law, reliance is a necessary element for a negligent misrepresentation claim. *See Webb v. Volvo Cars of N.A., LLC*, 2018 U.S. Dist. LEXIS 49095, at *17 (E.D. Pa. Mar. 26, 2016); *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 413 (1992); *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195 (N.J. 2000); *Tavistock Freebirds LLC v. Coca-Cola Co.*, 883 S.E.2d 388, 392 (Ga. Ct. App. 2023). And, as an allegation of fraud, negligent misrepresentation is subject to a heightened pleading standard under Federal Rule of Civil Procedure 9(b). *See, e.g., Smith v. Ocwen Fin.*, 488 F. App'x 426, 428 (11th Cir. 2012) (per curiam). Additionally, justifiable reliance is an essential element of GFBPA claims. *See, e.g., Crown Ford, Inc. v. Crawford*, 473 S.E.2d 554, 557 (Ga. Ct. App. 1996).

Plaintiffs Chandler-Ward's, Williams', Palefsky's, and Lanez's vague allegations about reading promotional materials do not establish reliance.[12] Plaintiffs describe and quote from various promotional materials (FAC ¶¶ 21–29), but they do not allege that any Plaintiff actually viewed those advertisements, specify what they allegedly reviewed, or provide any details other than to say they reviewed things regarding the "Taycan's advertised features." (*See* FAC ¶¶ 76, 82, 87, 94). These

---

[12] Plaintiff Kukrika does not allege that he relied on any promotional materials. (*See* FAC ¶ 69 (alleging only conversations with the dealership)).

cursory and ill-defined references to advertisements are not enough to establish reliance. *See, e.g.*, *Tharpe v. Hyundai Motor Am., Inc.*, 2023 U.S. Dist. LEXIS 45613, at \*24 (C.D. Cal. Mar. 16, 2023).

Plaintiffs also cannot rely on communications with dealers to establish reliance. (*See* FAC ¶¶ 69, 76, 82, 87, 94 (alleging that their dealers did not disclose the alleged defect)). Plaintiffs attempt to impute vaguely alleged statements made by Porsche dealers to PCNA by claiming such dealers acted as Porsche's agents. But an agency relationship cannot just be assumed—rather, specific facts must be pled. *Friedman v. Mercedes Benz USA LLC*, 2013 U.S. Dist. LEXIS 187268, at \*19 (C.D. Cal. June 12, 2013); *Keegan v. Am. Honda Motor Co.*, 838 F. Supp. 2d 929, 953 (C.D. Cal. 2012). And, even if agency had been sufficiently alleged, Plaintiffs have not alleged with particularity who they spoke to at the dealer, when those discussions occurred, or what specifically was said or concealed. This claim must be dismissed.

### G. Counts I, IV, and V Fail Because Plaintiffs Do Not Sufficiently Allege PCNA's Presale Knowledge.

For Plaintiffs to prevail on their fraudulent concealment claim (Count I) and for California Plaintiffs to prevail on their statutory claims (Counts IV and V), they must plausibly allege that PCNA had knowledge that the alleged Battery Defect existed in their vehicles at the time Plaintiffs purchased. *See Resnick v. Hyundai Motor Am., Inc.*, 2016 U.S. Dist. LEXIS 160179, at \*41, \*49 (C.D. Cal. Nov. 14, 2016) (California fraud, UCL, and CLRA claims); *Schechter v. Hyundai Motor Am.*,

2019 U.S. Dist. LEXIS 126021, at *26–27 (D.N.J. July 29, 2019) (New Jersey law fraudulent concealment claims); *Gibbs v. Ernst*, 538 Pa. 193, 207 (1994) (Pennsylvania fraud claim); *ReMax N. Atlanta v. Clark*, 244 Ga. App. 890, 894 (2000) (Georgia fraudulent omission claim).

Plaintiffs allege PCNA had knowledge of the defect based on: (1) presale testing; (2) complaints directed at PCNA, dealers, NHTSA, and/or posted online, and warranty claims; (3) three alleged instances of vehicle fires and the recalls issued by PCNA; and (4) litigation to which PCNA was not a party. (*See* FAC ¶ 39). For the reasons outlined below, these allegations, individually and collectively, fall short of showing PCNA had the requisite knowledge of the defect.

**Presale Testing.** Plaintiffs first allege that "concerns regarding the design and durability of the Taycan's battery system should have been revealed to Porsche" during presale testing. (FAC ¶¶ 39–44). Plaintiffs point to several test procedures but fail to allege that those procedures were performed on the specific vehicle types and model years at issue, nor do they allege why those tests "would likely result in knowledge of the defect." *McMahon v. Volkswagen Aktiengesellschaft,* 2023 U.S. Dist. LEXIS 105309, at *31 (D.N.J. June 16, 2023). Courts throughout the country (applying the laws of the named Plaintiffs in this case) have consistently rejected circular and conclusory allegations claiming awareness of a defect based on

unsupported assertions of assumed product testing.[13] That is particularly true here, where Plaintiffs appear to bring a manufacturing defect claim. (*See* FAC ¶ 44). Manufacturing defects occur during the production of the vehicles—***after*** the preproduction testing is complete. Unlike a design defect claim where an alleged defect is inherent in every vehicle and therefore necessarily present during the presale testing period, that is not the case for a manufacturing defect.

**Customer Complaints.** Customer complaints in and of themselves do not support an inference that a manufacturer was aware of a defect—instead, complaints "merely establish the fact that some consumers were complaining." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012). Moreover, complaints directed to dealers or NHTSA (or posted online) do not sufficiently allege

---

[13] *See, e.g., Lewis v. Mercedes-Benz U.S.*, 530 F. Supp. 3d 1183, 1221 (S.D. Fla. 2021) ("To accept Plaintiffs' general allegations about [Defendants]' internal testing . . . is to create a presumption of knowledge on the part of any large manufacturer of any alleged defect in its product line, and more than that, to assume that knowledge from some unknown time after the product has been on the market."); *Snowdy v. Mercedes-Benz USA, LLC*, 2024 U.S. Dist. LEXIS 59302, at *64 (D.N.J. Apr. 1, 2024) ("Plaintiffs cannot establish pre-sale knowledge based on collaboration and testing where they have alleged no facts to support the inference that the collaboration and testing necessarily revealed the defect."); *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387, at *19 (C.D. Cal. Feb. 19, 2013) ("Plaintiffs' generalized assertion that unspecified 'pre-release testing data' and 'aggregate data from Honda dealers' fails to suggest how this information could have informed Defendant of the alleged defect at the time of sale."); *Smith v. GM LLC*, 988 F.3d 873, 885 (6th Cir. 2021) (holding that "theoretical results from pre-production tests without accompanying verification that the tests occurred and revealed a safety defect" cannot survive a motion to dismiss).

knowledge where there are no allegations indicating that the defendant "actually received, tracked, or was otherwise made aware of the complaints." *Szep v. GM LLC*, 491 F. Supp. 3d 280, 294 (N.D. Ohio 2020). And merely alleging that PCNA reads online message boards and scours the NHTSA complaint database is speculative at best. *Smith*, 988 F.3d at 885; *Snowdy*, 2024 U.S. Dist. LEXIS 59302, at *67 (rejecting argument that manufacturer "regularly monitors consumer complaints to NHTSA about its vehicles"). Finally, post-sale complaints should receive no weight, since they logically could not provide presale knowledge. *See Snowdy*, 2024 U.S. Dist. LEXIS 59302, at *68. Applying these principles, the FAC fails to sufficiently allege PCNA's presale knowledge.

As an initial matter, ***none of the cited complaints describe a high-voltage battery catching fire***, the thrust of Plaintiffs' alleged battery defect. (*See* FAC ¶¶ 36, 38 (quoting complaints submitted to NHTSA and posted online about vehicles with various electrical error messages)). These complaints, at best, describe purported symptoms of the alleged defect, not the actual defect alleged, which is not enough to establish knowledge. *See Diaz v. FCA US LLC*, 2022 U.S. Dist. LEXIS 158865, at *78 (D. Del. Sept. 2, 2022) (explaining that to establish knowledge, "the complaints must identify or describe the defect alleged, not merely identify some

symptoms"). Moreover, the symptoms described in all of but one these complaints,[14] relate to an entirely separate and previously resolved issue.[15] Indeed, half of the cited NHTSA complaints were explicitly considered by NHTSA in connection with this separate investigation that NHTSA has since closed.[16] It strains credulity to suggest that complaints concerning a separate issue not involving battery fires or short-circuits that was investigated and resolved could provide knowledge that Plaintiffs' vehicles had a defect that could result in the high-voltage batteries catching fire.

---

[14] With the exception of one complaint that relates to an issue that arose while charging the vehicle (*see* FAC ¶ 36 (citing NHTSA ID No. 11476601)), all of cited complaints all refer to versions of the same error message: "Electrical System Error – Park Vehicle in a Safe Space." (*See id.* ¶¶ 36, 38).

[15] Specifically, on May 17, 2021, NHTSA opened a Preliminary Evaluation ("PE21-013") related to complaints that some 2020–2021 Taycan electric vehicles lost power and displayed a warning message to "Stop vehicle in a safe place." (*See* Closing Resume for Investigation PE21-013, NHTSA Off. of Defects Investigation ("NHTSA PE21-013 Closing Resume"), available at https://static.nhtsa.gov/odi/inv/2021/INCLA-PE21013-6727.PDF (last visited Apr. 7, 2025), attached hereto as Ex. C). NHTSA closed PE21-013 on December 23, 2021, after PCNA issued a recall to correct a software malfunction and made production changes going forward. *Id.* While Plaintiffs did not attach the documents relating to PE21-013 to their Complaint, they rely on complaints that were investigated as part of PE21-013, and it is well established that this Court can take judicial notice of documents on NHTSA's website. *See Ward-Richardson v. FCA US LLC*, 690 F. Supp. 3d 1372, 1375 n.2 (N.D. Ga. 2023) (taking judicial notice of NHTSA documents created and distributed as part of recall referenced in complaint).

[16] *Compare* Ex. C, NHTSA PE21-013 Closing Resume (listing NHTSA complaints that led to the opening of PE21-013) *with* FAC ¶ 36 (citing to NHTSA ID Nos. 11419735; 11433960; 11435775; 11418935; 11422463; 11404336; 11427688; 11429897; and 11431568).

A close look at the 18 NHTSA complaints reveals that they are insufficient to establish knowledge of the alleged defects in Plaintiffs' vehicles at the time Plaintiffs purchased them.[17] ***First***, Plaintiffs do not cite to any NHTSA complaints submitted before Kukrika or Lanez purchased their vehicles. ***Second***, Plaintiffs do not cite to any NHTSA complaints concerning Kukrika's, Lanez's, or Palefsky's specific vehicles. It is not sufficient to establish presale knowledge by pointing to complaints regarding ***any*** Taycan, where, as here, the FAC is devoid of allegations that all model years and variants shared an identical design and were manufactured in the same way. *See, e.g.*, *Cho v. Hyundai Motor Co.*, 636 F. Supp. 3d 1149, 1171 (C.D. Cal. 2022). ***Third***, the cited NHTSA complaints that relate to Chandler-Ward's vehicle model (2022 Taycan) postdate the purchase of her vehicle and therefore cannot show presale knowledge. ***Fourth***, with respect to Williams, half of the eight complaints concerning the 2020 Taycan were explicitly investigated and addressed in the separate investigation noted above, and it would be unreasonable to infer knowledge from only four complaints regarding his vehicle model (none of which involved battery fires and all of which related to the issue investigated in PE21-013).

Plaintiffs also quote various online complaints (FAC ¶ 38), but the dates of these online posts are not provided, so they cannot establish PCNA's presale

---

[17] To aid the Court, attached as Ex. D is a chart detailing the customer complaints alleged in the FAC compared to the date of each Plaintiff's date of purchase and specific model/model year purchased.

knowledge. Moreover, although Plaintiffs allege that PCNA monitors internet complaints (*id.* ¶ 46), there is no allegation that PCNA "actually received, tracked, or was otherwise made aware of the[se] complaints." *Szep*, 491 F. Supp. 3d at 294–95. While one complaint mentions contacting a "Porsche NA" representative, it does not plead the content of the complaint made, or more importantly, when it was made, making it impossible to discern what PCNA was allegedly told prior to the sales of Plaintiffs' vehicles. *See Browning v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 48555, at *46 (N.D. Cal. Mar. 18, 2022). Nor is it sufficient that some of these complaints reference discussions with dealers, because Plaintiffs do not allege that PCNA actually received any of these complaints from the dealers. *See Snowdy*, 2024 U.S. Dist. LEXIS 59302, at *69–70.

In total, Plaintiffs point to 21 customer complaints (FAC ¶¶ 36, 38) but given the large quantity of vehicles sold by PCNA, 21 customer complaints are not an "unusually high number of complaints" that would allow the Court to infer that PCNA knew of the battery defect. *McMahon*, 2023 U.S. Dist. LEXIS 105309, at *33–34 (finding that 30 complaints was not an unusually high number of complaints that could indicate that the defendants knew of the alleged defect). This is particularly true here, where at least nine of those complaints (and likely more) raise an unrelated issue that was investigated and closed by NHTSA long before this case was initiated.

**Field Reports, and Warranty Data.** Plaintiffs allege PCNA analyzes field data and requires dealers to submit information to substantiate warranty claims (FAC ¶¶ 46–48), but they have not "sufficiently alleged how any of these quality control mechanisms placed Defendants on notice that there was a possible [battery] defect in their vehicles." *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 U.S. Dist. LEXIS 83553, at *12–15 (N.D. Cal. May 17, 2018) (citation omitted).[18] Nor do they allege any facts explaining what this data showed or when any problematic reports or claims were made. Plaintiffs have not sufficiently alleged, with particularity, any facts showing PCNA knew from this data that Plaintiffs' vehicles may contain the alleged defect prior to their sale. *See Snowdy*, 2024 U.S. Dist. LEXIS 59302, at *69–70.

**Isolated Reports and the Recalls Issues by PCNA.** Plaintiffs contend that statements in the Part 573 Report submitted on March 20, 2024 demonstrate PCNA's presale knowledge. (FAC ¶ 51). As an initial matter, construing recall documents or associated technical bulletins as potential admissions of fraudulent concealment— rather than recognizing that they are a good faith attempt to remedy problems that may have arisen—would "discourage manufacturers from responding to their

---

[18] *See also Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 753 (E.D. Mich. 2017) (finding NHTSA monitoring to meet reporting requirements under federal law insufficient to establish knowledge); *Elfaridi v. Mercedes-Benz USA*, LLC, 2018 U.S. Dist. LEXIS 145196, at *4 (E.D. Mo. Aug. 27, 2018) (finding allegations Mercedes monitors NHTSA for information insufficient to establish knowledge).

customers" in the first place. *Wiseberg v. Toyota Motor Corp.*, 2012 U.S. Dist. LEXIS 45849, at *12 n.2 (D.N.J. Mar. 30, 2012). In any event, the statements in that recall report, as well as the three incidents described in the FAC, cannot establish knowledge. In total, Plaintiffs point to three alleged incidents of fires involving Taycans. (FAC ¶¶ 49–52). PCNA disputes that these fires were caused by Taycan batteries, but even if they were, three is far too few to establish knowledge.[19] *See, e.g.*, *McMahon*, 2023 U.S. Dist. LEXIS 105309, at *32.

**Unrelated Litigation.** Finally, Plaintiffs attempt to rely on litigation involving a different brand of electric vehicles to establish PCNA's presale knowledge of a defect in its vehicles (FAC ¶ 53), but "an investigation into another automaker's vehicle is insufficient to establish defendants' knowledge." *See Elfaridi*, 2018 U.S. Dist. LEXIS 145196, at *13 (citation omitted). Additionally, NHTSA investigated whether there was a common defect in high voltage batteries manufactured by LG Energy Solutions and elected to close its Equipment Query after submissions explaining that the batteries supplied to different manufacturers

---

[19] For Kukrika and Lanez, only the alleged February 2020 incident occurred prior to their purchases. (*See* FAC ¶¶ 10, 14, 49). And for Chandler-Ward, only the February 2020 and October 2021 alleged incidents occurred prior to her purchase. (FAC ¶¶ 11, 49–50).

are "customized" and "unique" to each vehicle model and the recalls of LG batteries were not due to the same root cause.[20]

In short, Plaintiffs' allegations of presale knowledge—individually and collectively—are insufficient to plausibly allege that PCNA had knowledge of a defect in each Plaintiff's vehicle at the time that they purchased. Counts I, IV, and V should be dismissed.

### H. **Plaintiffs' Request for Injunctive and Equitable Relief Should be Dismissed Under the Doctrine of Primary Jurisdiction.**

Primary jurisdiction applies whenever enforcement of a claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. *See United States v. Western Pac. R.R. Co.*, 352 U.S. 59, 63–64 (1956) (citation omitted). The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. *See id.* at 63.

---

[20] On April 1, 2022, NHTSA opened a Preliminary Evaluation ("EQ 22-001") to contact and obtain information from LG Energy Solutions and its purchasers that received the same or similar high voltage batteries as identified in recalls for Mercedes Benz 20V107, Hyundai 20V630, General Motors 20V701 and 21V650, Hyundai 21V127, Stellantis 22V077, and Volkswagen 22V162. (*See* Closing Resume for Investigation EQ 22-001, NHTSA Off. Of Defects Investigation, available at https://static.nhtsa.gov/odi/inv/2022/INCLA-EQ22001-15210.pdf (last visited April 7, 2025), attached here to as Ex. E. While Plaintiffs did not attach documents relating to EQ 22-001 to their FAC, it is well established that this Court can take judicial notice of government websites, including NHTSA. *See Ward-Richardson*, 690 F. Supp. 3d at 1375 n.2.

There is no fixed formula for applying this doctrine, and the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. *See id.* at 64.

The Supreme Court has held that it may be appropriate to refer specific issues to an agency where that procedure "would secure uniformity and consistency in the regulation of business entrusted to a particular agency." *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–04 (1976) (citations omitted). "Our government has largely entrusted the safety of the nation's roadways—in the macro sense—to the National Highway Transportation Safety Administration (NHTSA), which is responsible for administering the Motor Vehicle Safety Act (MVSA), 49 U.S.C. § 30101 *et seq.*; 49 C.F.R. §§ 1.2, 501.1, 501.2." *Silvas v. GM, LLC*, 2014 U.S. Dist. LEXIS 52979, at *4–5 (S.D. Tex. Apr. 17, 2014).[21]

The remedy outlined in the voluntary recall that PCNA submitted to NHTSA will fix high-voltage battery modules where an anomaly is detected and provides for the installation of on-board diagnostic software to monitor for any future anomalies. (Ex. A, Recall Report at p. 3). This NHTSA-supervised recall remedy more than satisfies Plaintiffs' request for injunctive and equitable relief "in the form of a comprehensive program to adequately repair or replace the batteries in all Class

---

[21] The MVSA and its interpretive regulations contain numerous provisions that NHTSA applies in the context of an automotive recall. *See id.* at *5 (citing MVSA § 30118–20, 49 C.F.R. § 577.1 *et seq.*).

- 39 -

Vehicles, and/or buyback all Class Vehicles." (FAC at 87). If Plaintiffs' requested relief is granted, it will be redundant of and directly conflict with the recall that NHTSA is already in the process of administering. *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1133 (S.D. Fla. 2019) (plaintiffs agreed "not to seek recall-related injunctive relief that would interfere with NHTSA's [Coordinated Remedy Order]").

The Court should dismiss Plaintiffs' request for injunctive and equitable relief "in the form of a comprehensive program to adequately repair or replace the batteries in all Class Vehicles, and/or buyback all Class Vehicles" in deference to NHTSA's ongoing recall pursuant to the doctrine of primary jurisdiction. *See Silvas*, 2014 U.S. LEXIS 52979, at *8 ("NHTSA is far better equipped than this Court to address the broad and complex issues of automotive safety and the regulation of automotive companies in connection with a nationwide recall."); *see also Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627–29 (M.D.N.C. 2006).

## VI.    <u>CONCLUSION</u>

For the reasons outlined above, PCNA requests that the Court grant its partial motion to dismiss in its entirety.

Respectfully submitted this 7th day of April, 2025.

_/s/ Cari K. Dawson_
Cari K. Dawson
Georgia Bar No.  213490
Kara F. Kennedy
Georgia Bar No.  926006
Kaylan M. Meaza
Georgia Bar No. 209159
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree Street
Atlanta, GA 30309-3424
Telephone: 404-881-7000
Facsimile:  404-881-7777
cari.dawson@alston.com
kara.kennedy@alston.com

_Counsel for Defendant Porsche Cars_
_North America, Inc._

## RULE 7.1D CERTIFICATE

The undersigned hereby certifies that the foregoing Defendant Porsche Cars North America, Inc.'s Brief in Support of its Motion to Dismiss Class Action Complaint was prepared using 14-point Times New Roman font, in accordance with Local Rule 5.1B.

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing **DEFENDANT PORSCHE CARS NORTH AMERICA, INC.'S PARTIAL BRIEF IN SUPPORT OF ITS MOTION TO DISMISS CLASS ACTION COMPLAINT** with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

Dated this 7th day of April, 2025.

/s/ Cari K. Dawson
Cari K. Dawson
Georgia Bar No. 213490

*Counsel for Defendant Porsche Cars North America, Inc.*